# EXHIBIT 1

<u>Settlement Agreement</u>

1.      Alumina & Bauxite Company Ltd. (Albaco) consents to substitution of

Oldendorff Carriers GmbH & Co. KG, (Oldendorff) as owners in the place and instead of

Mercury Shipping & Trading Ltd. (Mercury) and Oldendorff agrees and consents to

assume performance of the following four Contracts of Affreightment instead of

Mercury:

a)      <u>C/P dated 17 July 2003</u>:
        Voyage:                 Conakry to Guinea to Dneprobugskiy or Poti
        Cargo Quantity:         Up to 3,000,000 M/T per annum
        Initial Period:         2005 – 2011
        Initial Freight Rate:   $14.50 Dneprobugskiy Poti
                                $13.50 per MT Dneprobugskiy
                                $14.50  per MT Poti

b)      <u>C/P dated 7 August 2003</u>:
        Voyage:                 Conakry, Guinea to St. Petersburg or Murmansk
        Cargo Quantity:         Up to 350,000 M/T to 500,000 MT per annum
                                (2004-2008)
        Initial Period:         2003 – 2008
        Initial Freight Rate:   $19.0 per MT

c)      <u>C/P dated 7 December 2005</u>:
        Voyage:                 New Amsterdam, Guyana to Dneprobugskiy
                                or Constanza
        Cargo Quantity:         2007      – 400,000/600,000 M/T
                                2008/9    – 800,000/1,400,000 M/T
                                2010 –     800,000/1,500,000 M/T
        Initial Period:         2006 – 2010
        Initial Freight Rate:   $26.25 to $27.25 depending upon discharge port

d)      <u>C/P dated 6 September 2006</u>:
        Voyage:                 Weipa, Australia to Dneprobugskiy
                                or Constanza
        Cargo Quantity:         720,000/840,000 M/T
        Period:                 2007
        Initial Freight Rate:   $39.75 MT

6244696.2

Furthermore, Oldendorff consents to the substitution of Albaco in each such contract by another 100% subsidiary of United Company RUSAL Limited ("Rusal") upon written request of Rusal and to execute such documents as may be necessary to affect such substitution.

The undersigned agree that such C/Ps, taking into account the substitution referred to above and as otherwise amended herein, shall be the sole agreement among the relevant parties and their affiliates regarding their subject matter and supersede all prior arrangements among the parties and their affiliates regarding such matters (except as otherwise expressly set forth herein).

   2.   The C/Ps dated 7 August 2003, 7 December 2005 and 6 September 2006 shall be performed as per their original terms, as amended. The freight rate in the C/P dated 17 July 2003 shall be increased and amended as of from November 1, 2007 as follows:

   US $ 19.50 pmt FIOT

   Demurrage rate US$40,000 per day

   Annual Quantity: between 2.3 mm and 3.0 mm tons

   provided that the rates referred to in clause 2 of the Addendum No. 9 to the C/P dated 17 July 2003, shall continue to apply during the year 2007 only and clauses 5 and 6 of such Addendum No. 9 are hereby excluded.

   3.   Oldendorff, Rusal Marketing GmbH and Albaco consent and agree that the following Charter Parties shall be cancelled and performance thereunder shall be deemed performance pursuant to the assumed COAs between Oldendorff and Albaco referred to above in paragraph 1, as amended by the agreement.

62446962

> "The three (3) charter parties (which dates, subject to verification are believed to be 26 October 2007, 29 October 2007 and 31 October 2007), concluded between Rusal Marketing GmbH, Zug, Switzerland guaranteed by UC Rusal, Jersey and Oldendorff within the period 26 October 2007 until November 1, 2007."

4.    (a) The pending lawsuit in United States District Court for the Southern District of New York entitled Alumina & Bauxite Company Ltd. v. Oldendorff Carriers GmbH & Co. KG, Mercury Shipping & Trading Ltd., Dmitry Osipov, Natica Shipping Ltd., John Does 1-5 (fictitious) and John Does, Inc. 1-5 (fictitious), Docket # 07 Civ. 9647 (DB) shall be dismissed with prejudice and without costs to either party and, without waiting for same, Albaco shall immediately cease and desist service of the attachment order, notify the banks served to date that it is ceasing and desisting service, identify to Oldendorff any funds attached to date, and with respect to any funds attached to date, cooperate with Oldendorff, banks, and Court to arrange for the prompt release of the funds to such persons as Oldendorff may direct.  Albaco and Rusal further undertake to refrain from taking any action in any other jurisdiction whatsoever with respect to the facts and claims made in the New York action above, including, but not limited to, arresting, attaching, or otherwise interfering with property of Oldendorff or its affiliate.

(b) It is specifically agreed and understood that Oldendorff does not admit and this Agreement shall not be deemed an admission of any allegation in the Verified Complaint.

5.    (a) Albaco and Rusal on behalf of themselves and Rual Trade Ltd. (BVI), hereby release Mercury, and (b) Oldendorff, Mercury, Osipov and Natica hereby release Albaco, Rusal and their parent, subsidiaries and affiliates from all claims arising out of or relating to the following COAs save as relate to the performance of such COAs, as

6244696.2

3

amended hereby and taking into account the substitution of parties set forth in paragraph

1.

> C/P dated 17 July 2003
> C/P dated 7 August 2003
> C/P dated 7 December 2005
> C/P dated 6 September 2006

6.    Albaco and Rusal, on behalf of themselves and each Rusal controlled

entity, release Osipov and Natica in respect of all claims including fraud arising out of or

in connection with the COAs referred to in clause 5 as well as any other past or present

agreements entered into by a Rusal controlled entity and any third party which he

controls or controlled, directly or indirectly, or of which he is or was a director (an

"Osipov Agreement") upon satisfaction of the following conditions:

> a)    full disclosure within seven (7) days by Osipov of all current
> Osipov Agreements.

> b)    arrangements are made by Osipov to cause any third party entity
> which he controls directly or indirectly to transfer its contractual rights to
> Rusal or a Rusal controlled entity so as to enable it to have a direct
> contract with the real party in interest and performing party, if such relates
> to an Osipov Agreement.

7.    The relevant parties shall execute within seven days appropriate addenda

to the COAs referred to in clause 1 confirming the substitution of the party referred to

their in and the amendments referred to in clause 2.  Furthermore, the parties agree to

provide or cause to be provided whatever consents or documentation is needed to

implement the terms of this agreement.

8.    Egon Oldendorff oHG and Rusal (or any successor to Rusal or transferee

of substantially all of its assets) (each a "Guarantor"), by executing this agreement,

respectively hereby guarantees full payment of any amounts due to be paid under this

Agreement by Oldendorff Carriers GmbH & Co. KG and Alumina & Bauxite Company Ltd., respectively, and full and complete performance of any other obligations of Oldendorff Carriers GmbH & Co. KG and Alumina & Bauxite Company Ltd., respectively, under this agreement. This guaranty is absolute and unconditional. No default on the part of Oldendorff Carriers GmbH & Co. KG or Alumina & Bauxite Company Ltd. shall be a precondition to enforcement of this guaranty by Alumina & Bauxite Co. Ltd. or Oldendorff Carriers GmbH & Co. KG, respectively, and no notice of any default by Alumina & Bauxite Co. Ltd. or Oldendorff Carriers GmbH & Co. KG shall be required prior to the commencement of enforcement action against the relevant Guarantor.

Law and Arbitration

9.      (a) This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extend necessary to give effect to the provisions of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.  The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and give notice that it has done so within the 14 days specified.  If the other party does

not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly.  The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

(b) Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.  In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time, when the arbitration proceedings are commenced.

Dated: London, England
     November 2, 2007-11-02

Oldendorff Carriers GmbH & Co. KG

By_____
       Peter Twiss

Alumina & Bauxite Co. Ltd.

By_____
       Pavel Ovchinnikov

Mercury Shipping & Trading Ltd.

By_____
       Dmitry Osipov

Natica Shipping Ltd.

By_____
       Dmitry Osipov

Dmitry Osipov

_____

U. C. Rusal

By_____
       Pavel Ovchinnikov

6244696.2

Egon Oldendorff oHG

By _____
          Peter Twiss

# EXHIBIT 2

THIS IS EXHIBIT........*7 A*....
ATTACHED TO THE AFFIDAVIT
OF..*Dmitry   Evgenievich  Osipov*
DATED............*23/08/2011*
                                                            Moscow, 8th November, 2007



    I, Dmitry Osipov, hereby deliver the following documents in full disclosure of all current Osipov Agreements in accordance with and as per the Settlement Agreement dated on the 2nd of November, 2007 :

1) C/P dated 17 July 2003
2) Addendum No.9 dated 21 December 2006 to the C/P dated 17 July 2003
3) C/P dated 7 August 2003
4) Addendum No.2 dated 1 December 2005 to the C/P dated 21 October 2005
5) Addendum No.3 dated 7 December 2005 to the C/P dated 21 October 2005
6) C/P dated 6 September 2006
7) Fixture Note to C/P dated 6 September 2007 (no original C/P issued/signed yet)
8) C/P dated 26 September 2006
9) C/P dated 8 December 2006
10) C/P dated 23 August 2005

    I further confirm that in addition to the terms agreed in the Settlement Agreement all arrangements are being made to cause any third party entity which I control directly or indirectly to transfer its contractual rights to RUSAL or RUSAL controlled entity so as to enable it to have a direct contract with the real party in interest and performing party, if such relates to an Osipov Agreement.

Signed:

_____
Dimitry Osipov

Signed and acknowledged: *as to receipt of documents only:*

Alumina & Bauxite Co. Ltd.

_____
Pavel Ovchinnikov

Signed and acknowledged: *as to receipt of documents only:*

U.C. Rusal

_____
Pavel Ovchinnikov

EXHIBIT 3

From: Ardatova Galina <galina_ardatova@rusal_ru>
To: "Dima" <dima@natica_ru>
Date: Monday, August 13, 2007 9:31:14 AM
Subject: FW: RTI
Folder: Dima_Natica/Dima

Дима+Ольга/Галина

Настоящим сообщаю, что с 1 сентября 2007 компании Rual Ltd и ALBACO прекращают свою деятельность. До указанного срока все контракты с этих компаний должны быть переведены на RTI Ltd. Новые контракты также необходимо заключать с RTI Ltd

Best Regards

_____ NOD32 2456 (20070813) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

13.08.2007

From: Ardatova Galina (RUSAL)
To: Dima and Olga (Natica)

TRANSLATION
============

Dima (me) + Olga / Galina

Hereby I inform you, that starting from the 1st of September, 2007 the companies
Rual Ltd and ALBACO stop their business. All the CoAs with these companies
must be transferred to RTI Ltd until that date. All new Contracts must be also
concluded with RTI Ltd. only.

Best Regards


+ + +

Comments:

- Rual Ltd  stands for RUAL Trade Ltd.

- ALBACO stands for Alinima & Bauxite Company Ltd.

# EXHIBIT 4

ΑΝΤΙΓΡΑΦΟ ΠΡΩΤΟΚΟΛΛΟΥ
COPY FOR REGISTER

Τράπεζα Κύπρου
Bank of Cyprus

Our Ref. No. ▮▮▮▮▮▮▮   Thur Ref. No. 20070831136118

**INTERNATIONAL**
Κατ/μα/Branch
Tel:25856637 LIMASSOL   03/09/07

Δικαιούχος / Beneficiary
0385 A/C OF
MERCURY SHIPPING & TRADING LTD
P.O.BOX 54060
3720 LIMASSOL
3720 AG. NICOLAOS POST OFFICE

Σας πληροφορούμε ότι το προϊόν της εντολής αυτής
(σφαρμόζονται τα πιο κάτω που σημειώνονται με Χ)
Kindly note that the amount of this transfer
(the following clauses marked with X apply)

Αρ. Λογαριασμού / A/C No. ▮▮▮▮▮▮▮

☐ βρίσκεται στη διάθεσή σας και παρακαλούμε να έχουμε τις οδηγίες σας
   is being held at your disposal and we shall be glad we have your instructions

☒ πιστώθηκε στο λογαριασμό σας
   has been credited to your account ▶

Τύπος/εία Αποστολής / Sending Bank
LATVIAN TRADE BANK
RIGA

Ποσό / Amount Remitted   USD
1.259.272,98

Εντολοδότρια Τράπεζα / Ordering Institution

Ισάξιο σε Κ£ / Equivalent in   C£:

@                                    £

Πληρώτρια Τράπεζα / Paying Bank
Μείον / Less:                              0,00
Προμήθεια / Commission                     0,00    DEUTSCHE BANK TRUST COMPANY AMERICAS
Κόστος Ειδοποίησης / Cost of Advice        0,00    (EX: BANKERS TRUST CO.), P.O.BOX 318,
Telex charges                              0,00    CHURCH ST.STATION
Processing Expenses                        0,00    NEW YORK NY 10008-0318, U.S.A

Αξία / Value                        USD            Κατ' εντολή / By order
03/09/07             £   1.259.272,98             ALUMINA AND BAUXITE COMPANY LTD.
                                                   COK. TRUST LTD DRAKE CHAMBERS, ROAD
Ποσό ολογράφως / Amount in words  in USD           TOWN,TORTOLA, VIRG.ISL.(BRITISH)
One Million
Two Hundred Fifty Nine Thousand
Two Hundred Seventy Two and 98/100

Αιτιολογήσεις / Particulars
Remittance Info. :PMT UNDER MV 'HAWK' INV.251/07 DD   24.08.07, 'ZEPHYRIOS' INV.254/07 DD
                 28.08.07, FREIGHT

Instructed Amount:        USD   1259272.58

**COPY**

ΤΡΑΠΕΖΑ ΚΥΠΡΟΥ ΔΗΜΟΣΙΑ ΕΤΑΙΡΙΑ ΛΤΔ          1133//070831        Reprinted
BANK OF CYPRUS PUBLIC COMPANY LTD            (    377051)

ΑΝΤΙΓΡΑΦΟ ΠΡΩΤΟΚΟΛΛΟΥ
COPY FOR REGISTER

Τράπεζα Κύπρου
Bank of Cyprus

Their Ref. No.
55330256409AETC1

Our Ref. No. ▮▮▮▮▮▮▮▮

Κατ/μα/Branch  INTERNATIONAL
Tel:25855637 LIMASSOL      14/09/07

Δικαιούχος / Beneficiary
0385 A/C OF
MERCURY SHIPPING & TRADING LTD
P.O.BOX 54050
3720 LIMASSOL
3720 AG. NICOLAOS POST OFFICE

Σας πληροφορούμε ότι το ποσόν της εντολής αυτής
(εφαρμόζονται το πιο κάτω που σημειώνονται με X)
Kindly note that the amount of this transfer
(the following clauses marked with X apply)

Αρ. Λογαριασμού / A/C No.

[ ] Βρίσκεται στη διάθεσή σας και παρακαλούμε να έχουμε τις οδηγίες σας
It is being held at your disposal and we shall be glad, if we have your instructions

[X] Πιστώθηκε στο λογαριασμό σας
has been credited to your account ▶

Τράπεζα Αποστολής / Sending Bank
NATIXIS (EX NATEXIS BANQUES
PARIS

Ποσό / Amount Remitted    USD
1.361.368,53

Εντολοδότρια Τράπεζα / Ordering Institution

Ισόξιο σε ΚΕ / Equivalent in C£:

@                              £
Μείον / Less:
Προμήθεια / Commission
Κόστος Ειδοποίησης / Cost of Advice

Πληρώτρια Τράπεζα / Paying Bank
JPMORGAN CHASE BANK, N.A.
270 PARK AVENUE
NEW YORK, N.Y. 10017
U.S.A.

Αξία / Value                USD
14/09/07          £    1.361.368,53

Κατ' εντολή / By order
ALUMINA BAUXITE COMPANY LTD
C/O MIDDLE OFFICE FKP
DCMS/HEDGCE METAL COMMO. A57

Ποσόν ολογράφως / Amount in words  in USD
One Million
Three Hundred Sixty One Thousand
Three Hundred Sixty Eight and 53/100

Λεπτομέρειες / Particulars
Remittance Info. :PHT UNDER INV MV SHINYO INTEGRITY  INV 275/07 DD 12 09 07 MV MADRISA
INV 278/07 DD 12 09 07

Instructed Amount:      USD  1361368.53

COPY

ΤΡΑΠΕΖΑ ΚΥΠΡΟΥ ΔΗΜΟΣΙΑ ΕΤΑΙΡΙΑ ΛΤΔ
BANK OF CYPRUS PUBLIC COMPANY LTD.

3928//070913
(    405789)      Reprinted

ΑΝΤΙΓΡΑΦΟ ΠΡΩΤΟΚΟΛΛΟΥ
COPY FOR REGISTER

Τράπεζα Κύπρου
Bank of Cyprus

Our M/T No.

Their Ref. No. 20070911136085

Κατ/μα / Branch   INTERNATIONAL
Cel.25856637 LIMASSOL   12/09/07

Δικαιούχος / Beneficiary
0385 A/C OF
MERCURY SHIPPING & TRADING LTD.
P.O.BOX 56050
3720 LIMASSOL
3720 AG. NICOLAOS POST OFFICE

Σας πληροφορούμε οτι το ποσον της εντολης αυτής
(εφαρμόζονται τα πιο κατω που σημειώνονται με X)
Kindly note that the amount of this transfer
(the following clauses marked with X apply)

Αρ. Λογαριασμού / A/C No.

☐ Βρίσκεται στη διάθεσή σας και παρακαλούμε να λάβετε τις οδηγίες σας
Is being held at your disposal and we shall be glad if we have your instructions

☒ πιστώθηκε στο λογαριασμό σας
has been credited to your account   ▶

Τράπεζα Αποστολης / Sending Bank
LATVIAN TRADE BANK
RIGA

Ποσό / Amount Remitted   USD
2.139.245,63

Εντολοδότρια Τραπεζα / Ordering Institution

Ισόξιο  σε ΚΕ / Equivalent  in  C£:

@   £

Μέλαν / Less:   0,00
Προμήθεια / Commission   0,00
Κήρτος Ειδοποίησης / Cost of Advice   0,00
Telex charges   0,00
Processing Expenses

Πληρώστρια Τραπεζα / Paying Bank
JPMORGAN CHASE BANK, N.A.
270 PARK AVENUE
NEW YORK, N.Y. 10017
U.S.A.

Αξία / Value   USD
12/09/07   £   2.139.245,63

Κατ' εντολή / By order
ALUMINA AND BAUXITE COMPANY LTD.
COM. TRUST LTD DRAKE CHAMBERS, ROAD
TOWN,TORTOLA, VIRG.ISL.(BRITISH)

Ποσό ολογράφως / Amount in words  in USD
Two Million
One Hundred Thirty Nine Thousand
Two Hundred Forty Five and 63/100

Λεπτομέρειες / Particulars
Remittance Info.  :PMT UNDER COSTS.CF/RT-888/0906 MV  HEBEI DIAMOND INV,276/07 FREIGHT
Instructed Amount:  USD   2139245,63

COPY

ΤΡΑΠΕΖΑ ΚΥΠΡΟΥ ΔΗΜΟΣΙΑ ΕΤΑΙΡΙΑ ΛΤΔ
BANK OF CYPRUS PUBLIC COMPANY LTD

F3405//070911
(   398707)   Reprinted

Τράπεζα Κύπρου
Bank of Cyprus

ΑΝΤΙΓΡΑΦΟ ΠΡΩΤΟΚΟΛΛΟΥ
COPY FOR REGISTER

Our M/T No. ⬛⬛⬛

That Ref. No. 2007081511610?

Κστ/μα/Branch   INTERNATIONAL
Τεl : 25856637 LIMASSOL        16/08/07

Σας πληροφορούμε ότι το προϊόν της εντολής αυτής
(εφαρμόζονται τα πιο κάτω που σημειώνονται με Χ)
Kindly note that the amount of this transfer
(the following clauses marked with X apply)

☐  βρίσκεται στη διάθεση σας και παρακαλούμε να έχουμε τις οδηγίες σας
    is being held at your disposal and we shall be glad if we have your instructions

☒  πιστώθηκε στο λογαριασμό σας
    has been credited to your account  ▶

Δικαιούχος / Beneficiary
0385 A/C 02
MERCURY SHIPPING & TRADING LTD
P.O. BOX 54060
3720 LIMASSOL
3720 AG. NICOLAOS POST OFFICE

Αρ. Λογαριασμού / A/C No.  ⬛⬛⬛

Τράπεζα Αποστολής / Sending Bank
LATVIAN TRADE BANK
RIGA

Ποσόν / Amount Remitted   USD
1.604.795,84

Εντολοδότρια Τράπεζα / Ordering Institution

Ισάξιο σε ΛΚ / Equivalent in CL:

                                              £
Μείον / Less:                              0,00
Προμήθεια / Commission                     0,00
Κόστος Ειδοποίησης / Cost of Advice        0,00
Telex Charges                              0,00
Processing Expenses

Πληρώτρια Τράπεζα / Paying Bank
DEUTSCHE BANK TRUST COMPANY AMERICAS
(EX: BANKERS TRUST CO.), P.O. BOX 318,
CHURCH ST STATION
NEW YORK NY 10008-0318, U.S.A.

⬛⬛⬛

Αξία / Value                       USD
16/08/07         £     1.604.795,84

in USD

Κατ' εντολή / By order
ALUKINA AND BAUXITE COMPANY LTD.
COM. TRUST LTD DRAKE CHAMBERS, ROAD
TOWN, TORTOLA, VIRG. ISL. (BRITISH)

Ποσόν ολογράφως / Amount in words
One Million
Six Hundred Four Thousand
Seven Hundred Ninety Five and 84/100

Λεπτομέρειες / Particulars
Remittance Info. :PMT UNDER INV.237/07 BAY RANGER,   235/07 DORIC SAMURAI, 233/07 SEA
                  LANTANA, 239/07 DUBEN, 241/07,     FREIGHT

Instructed Amount:  - USD   1604795.84

COPY

ΤΡΑΠΕΖΑ ΚΥΠΡΟΥ ΔΗΜΟΣΙΑ ΕΤΑΙΡΙΑ ΛΤΔ
BANK OF CYPRUS PUBLIC COMPANY LTD

F3405//070815
(    342145)       Reprinted

**Standard Chartered** ⚘

Date 日期          :  08 Aug 2007
Our Ref. 參考編號    :  PTS/XP0180/20070809

WCH  WCHE81
MAGUIRE INTERNATIONAL LIMITED
C/O MR F L CHEUNG
7/F ALLIED KAJIMA BUILDING
138 GLOUCESTER ROAD
WAN CHAI HK
HONG KONG                         003045

Dear Customer,
親愛的客戶，

## Inward Payment Customer Advice
## 匯入匯款通知書

Please be advised that we have received a payment in your favour with details as follows:
本行已代閣下收取以下之匯款，細則如下：

Reference No.          :  ███████████
參考編號

Remitting Bank         :  DEUTSCHE BK TR CO AMERICA N Y
承匯銀行

Remitting Bank Reference :  ███████████
承匯銀行編號

Remitter/Ordering Bank :  ALUMINA  AND  BAUXITE COMPANY LTD.
匯款人                     COM. TRUST LTD DRAKE CHAMBERS, ROAD

Details of Payment     :  PMT UNDER MV 'JIN ACE' INV. DL-0039   DD 06.08.07, MV 'KATE' INV. DL-0038
匯款資料                   DD 06.08.07, FREIGHT

Transaction Type Code  :
交易類別

In accordance with the instruction given, your account has been credited as below:
根據有關指示，本行已將款項存入閣下之戶口，詳情如下：

Account Number         :  (USD)  ███████████
戶口號碼

| | | | | | |
|---|---|---|---|---|---|
| Remittance Amount 匯入金額 | : | USD | 2,015,162.66 | Instructed Amount 本金 | : USD  2,015,162.66 |
| Less: Service Fee 匯款手續費（於款額內扣除） | : | USD | 7.02 | Sender Bk Charges 匯款銀行手續費 | : |
| Net Proceeds 扣除手續費後之款額 | : | USD | 2,015,155.64 | | |
| Exchange Rate 匯率 | : | | 0.0000 | Sender Bk Exchange Rate 匯款銀行匯率 | : |
| Credited Amount 存入款項 | : | USD | 2,015,155.64 | | |

We are always pleased to be of service to you. If you have any enquiries, please call 2886 8868 and then press 2,*,4. For corporate customers have an access code, you can call 2802 7888 + access code for assistance.
本行隨時樂意為閣下提供一切所需之服務。如有任何查詢，請致電下列號碼：2886   8868（個人客戶按1、*、4。普通話按3、*、4）：如公司客戶持有專用號碼，
敬可致電2802   7888＋操用號碼。
N.B.  Standard Chartered Bank (HK) Ltd accepts no responsibility for any delay, error or omission which may occur in the transmission of the message or from its misinterpretation when received.
備註：本行恕不因遲延出載錯誤或遺漏或於收取電訊時誤釋而負上任何責任。
This is a system generated advice and requires no signature.
此乃電腦編印信件，本行毋須簽署。

Standard Chartered Bank (Hong Kong) Limited 渣打銀行（香港）有限公司

**Standard Chartered** 

Date 日期    : 27 Jul 2007
Our Ref. 參考編號   : PTS/XP0180/20070728

WCH  WCHE81
MAGUIRE INTERNATIONAL LIMITED
C/O MR F L CHEUNG
7/F ALLIED KAJIMA BUILDING
138 GLOUCESTER ROAD
WAN CHAI HK
HONG KONG
           003166

Dear Customer,
親愛的客戶

**Inward Payment Customer Advice**
**匯入匯款通知書**

Please be advised that we have received a payment in your favour with details as follows:
本行已代閣下收取以下之匯款，細則如下：

| | | |
|---|---|---|
| Reference No.<br>參考編號 | : | ▉▉▉▉▉▉▉ |
| Remitting Bank<br>承匯銀行 | : | DEUTSCHE BK TR CO AMERICA N Y |
| Remitting Bank Reference<br>承匯銀行編號 | : | ▉▉▉▉▉▉ |
| Remitter/Ordering Bank<br>匯款人 | : | ALUMINA  AND  BAUXITE COMPANY LTD.<br>COM. TRUST LTD DRAKE CHAMBERS, ROAD |
| Details of Payment<br>匯款資料 | : | PMT UNDER CONTR.CP/RT-894/1206, MV  'KITA DAKE' INV. DL-0037 DD 25.07.0<br>7, FREIGHT |
| Transaction Type Code<br>交易類別 | : | |

In accordance with the instruction given, your account has been credited as below:
根據有關指示，本行已將款項存入閣下之戶口，詳情如下：

| | | | | | |
|---|---|---|---|---|---|
| Account Number<br>戶口號碼 | : | (USD) ▉▉▉▉▉ | | | |
| Remittance Amount<br>匯入金額 | : USD | 798,900.13 | Instructed Amount<br>本金 | : USD | 798,900.13 |
| Less: Service Fee<br>匯款手續費（於款額內扣除） | : USD | 6.39 | Sender Bk Charges<br>匯款銀行手續費 | : | |
| Net Proceeds<br>扣除手續費後之款額 | : USD | 798,893.74 | | | |
| Exchange Rate<br>匯率 | : | 0.0000 | Sender Bk Exchange Rate<br>匯款銀行匯率 | : | |
| Credited Amount<br>存入款項 | : USD | 798,893.74 | | | |

We are always pleased to be of service to you. If you have any enquiries, please call 2886 8868 and then press 2,*,4. For corporate customers have an access code,
you can call 2802 7688 + access code for assistance.
本行隨時樂意為閣下提供一切所需之服務，如有任何查詢，請致電下列號碼：2886  8868（廣東話按 1、*、4，普通話按 3、*、4）；如公司客戶持有專用號碼，
請致電 2802  7688 加上所用號碼。
N.B. : Standard Chartered Bank (HK) Ltd accepts no responsibility for any delay, error or omission which may occur in the transmission of the message or from its
misinterpretation when received.
備註：本行並不須就發出電訊而因此延宕及收發訊號誤解而引至上任何責任。
This is a system generated advice and requires no signature.
此乃電腦輸出信件。本行毋須簽署。

Standard Chartered Bank (Hong Kong) Limited  渣打銀行(香港)有限公司

# Standard Chartered

Date 日期 : 19 Jul 2007
Our Ref. 參考編號 : PTS/XP0180/20070720

WCH   WCHE81

RANS CHARTERING LTD
C/O MR F L CHEUNG
7/F ALLIED KAJIMA BUILDING
138 GLOUCESTER ROAD
WAN CHAI HK
HONG KONG

003140

Dear Customer,
親愛的客戶:

## Inward Payment Customer Advice
## 匯入匯款通知書

Please be advised that we have received a payment in your favour with details as follows:
本行已代閣下收取以下之匯款，細則如下:

| | | |
|---|---|---|
| Reference No.<br>參考編號 | : | ████████ |
| Remitting Bank<br>承匯銀行 | : | DEUTSCHE BK TR CO AMERICA N Y |
| Remitting Bank Reference<br>承匯銀行編號 | : | ████████ |
| Remitter/Ordering Bank<br>匯款人 | : | ALUMINA AND BAUXITE COMPANY LTD.<br>COM. TRUST LTD DRAKE CHAMBERS, ROAD |
| Details of Payment<br>匯款資料 | : | PMT UNDER CONTR.N.CP/RT-824/0805 DD  23.08.05 MV 'MAN HAI' INV. 20070701<br>7 DD 17.07.07, FREIGHT |
| Transaction Type Code<br>交易知別 | : | |

In accordance with the instruction given, your account has been credited as below:
根據有關指示，本行已將款項存入閣下之戶口，詳情如下:

| | | | | | |
|---|---|---|---|---|---|
| Account Number<br>戶口號碼 | : | (USD) | ████████ | | |
| Remittance Amount<br>匯入金額 | : | USD | 972,636.13 | Instructed Amount<br>本金 | : USD  972,636.13 |
| Less: Service Fee<br>匯款手續費（於款額內扣除） | : | USD | 6.39 | Sender Bk Charges<br>匯款銀行手續費 | : |
| Net Proceeds<br>扣除手續費後之款額 | : | USD | 972,629.74 | | |
| Exchange Rate<br>匯率 | : | | 0.0000 | Sender Bk Exchange Rate<br>匯款銀行匯率 | : |
| Credited Amount<br>存入款項 | : | USD | 972,629.74 | | |

We are always pleased to be of service to you. If you have any enquiries, please call 2886 8868 and then press 2,*,4. For corporate customers have an access code, you can call 2802 7888 + access code for assistance.
本行隨時候命為閣下提供一切所需之服務。如有任何查詢，請致電下列號碼：2886  8868（索票話按1、*、4，客通路按3、*、4）；如企司客戶持有咭用號碼，請致電2802  7888＋咭用號碼。

N.B.  Standard Chartered Bank (Hk) Ltd accepts no responsibility for any delay, error or omission which may occur in the transmission of the message or from its misinterpretation when received.
鑑注：本行就不與因發出現凡訊圍而產生延誤錯誤或收爲屬閣解譯而負上任何責任。

This is a system generated advice and requires no signature.
此乃電腦印發件。本行毋須簽署。

Standard Chartered Bank (Hong Kong) Limited  渣打銀行(香港)有限公司

**Standard Chartered** 

Date 日期          : 18 Sep 2007
Our Ref. 參考編號 : PTS/XP0180/20070919

WCHE81

RANS CHARTERING LTD
C/O MR F L CHEUNG
7/F ALLIED KAJIMA BUILDING
138 GLOUCESTER ROAD
WAN CHAI HK
HONG KONG

A002559

Dear Customer,
親愛的客戶：

**Inward Payment Customer Advice**
**匯入匯款通知書**

Please be advised that we have received a payment in your favour with details as follows:
本行已代閣下收取以下之匯款，細則如下：

| | | |
|---|---|---|
| Reference No.<br>參考編號 | : | |
| Remitting Bank<br>來匯銀行 | : | DEUTSCHE BK TR CO AMERICA N Y |
| Remitting Bank Reference<br>來匯銀行編號 | : | |
| Remitter/Ordering Bank<br>匯款人 | : | ALUMINA AND BAUXITE COMPANY LTD.<br>COM. TRUST LTD DRAKE CHAMBERS, ROAD |
| Details of Payment<br>匯款資料 | : | PMT UNDER CONTR.CP/RT-824/0805 DD 2  3.08.05 MV TUO HAI INV. 200709013 D<br>D 13.09.07 FREIGHT |
| Transaction Type Code<br>交易類別 | : | |

In accordance with the instruction given, your account has been credited as below:
根據有關指示，本行已將款項存入閣下之戶口，詳情如下：

| | | | | | |
|---|---|---|---|---|---|
| Account Number<br>戶口號碼 | : | (USD) | | | |
| Remittance Amount<br>匯入金額 | : USD | 968,885.05 | Instructed Amount<br>本金 | : USD | 968,885.05 |
| Less: Service Fee<br>匯款手續費（於款額內扣除） | : USD | 7.05 | Sender Bk Charges<br>匯款銀行手續費 | : | |
| Net Proceeds<br>扣除手續費後之款額 | : USD | 968,878.00 | | | |
| Exchange Rate<br>匯率 | : | 0.0000 | Sender Bk Exchange Rate<br>匯款銀行匯率 | : | |
| Credited Amount<br>存入款項 | : USD | 968,878.00 | | | |

We are always pleased to be of service to you. If you have any enquiries, please call 2886 8868 and then press 2,*,4. For corporate customers have an access code,
you can call 2802 7888 + access code for assistance.
本行隨時歡迎為閣下提供一切所需之服務。如有任何疑問，請致電下列號碼：2886   8868（其次請按1、*、4，後請按接3、*、4）；如企業客戶持有專用號碼，
歡迎致電2802  7888+號碼。
N.B.   Standard Chartered Bank (HK) Ltd accepts no responsibility for any delay, error or omission which may occur in the transmission of the message or from its
       misinterpretation when received.
備註：本行並不能因發出或傳訊而產生延誤或收取訊時發生誤傳而因在上任何責任。
*This is a system generated advice and requires no signature.*
此乃系統製作發出。本行恕不簽署。

Standard Chartered Bank (Hong Kong) Limited  渣打銀行(香港)有限公司                                      P002559

12. JUL. 2012  8:55      INDER: BUS. CENTER          NO. 907   P. 1

# ΕΛΛΗΝΙΚΗ ΤΡΑΠΕΖΑ
# HELLENIC BANK

ΠΡΟΣ/ΤΟ: ALDI MARINE LTD A/C B
C/O HELLENIC BANK LTD
3505 240 OFFSHORE BANKING UNIT
LIMASSOL

| | |
|---|---|
| ΗΜΕΡΟΜΗΝΙΑ/DATE | : 06/07/2007 |
| ΑΝΑΦΟΡΑ ΜΑΣ/OUR REF.NO.: | |
| ΑΝΑΦ.ΑΠΟΣΤ./REL.REF.NO. | : |
| ΛΟΓΑΡΙΑΣΜΟΣ/ACCOUNT | : |
| ΝΟΜΙΣΜΑ/CURRENCY | : USD |
| ΑΡΙΘΜΟΣ ΙΒΑΝ/IBAN NO. | : |

## ΕΙΣΕΡΧΟΜΕΝΟ ΕΜΒΑΣΜΑ SWIFT - ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ
## SWIFT INCOMING PAYMENT - CREDIT NOTIFICATION

Αγαπητοί Κύριοι/Dear Sirs,

Σας ενημερώνουμε ότι ο λογαριασμός σας/Please note that your account ▮▮▮▮▮▮ πιστωθεί με το ποσό των/will be credited with the amount of USD 2,370,916.43 με ημερομηνία αξίας/value date 06/07/2007 με δικαίωμα αντιλογισμού ή/και ζήτησα από την Τράπεζα/under recourse.

ΛΕΠΤΟΜΕΡΕΙΕΣ ΠΛΗΡΩΜΗΣ / DETAILS OF PAYMENT (ημερομηνίας παραλαβής/received on 05/07/2007)

| Αρ. Αναφοράς Reference No. | Ποσό Μεταφοράς Transfer Amount | Νόμισμα Currency | Συναλλαγμ. Ισοτιμία Exch. Rate | Ισόποσο Equivalent Amount | Νόμισμα Currency |
|---|---|---|---|---|---|
| | 2,370,916.43 | USD | 1.0000 | 2,370,916.43 | USD |
| Μείον Έξοδα Διεκπεραίωσης/Less Handling Charges.................................... | | | | 13.00 | USD |
| Μείον Προμήθεια Μετατροπής/Less Exchange Commission............................ | | | | 0.00 | USD |

| | | |
|---|---|---|
| Εντολέας/Ordering Customer | : | CALIBRE PROPERTIES WORLDWIDE  LIMITED 197 MAIN STREET PALM CHAMBERS, ROAD TOWN,TORTOLA, VIRG.ISL.(BRITISH) ( LV72LATC0501092460010 |
| Ποσό Εντολής/Instructed Amount | : | 2,370,916.43     USD |
| Ένδειξη Εξόδων/Details of Charges | : | SHA |
| Έξοδα που Αφαιρέθηκαν από Τράπεζες/ Charges Deducted by Previous Banks | : | |
| Αποστέλλουσα Τράπεζα/Sending Bank | : | LATCLV22   AS EXPOBANK (FORMERLY AS LTB BANK)   LATVIA |
| Τράπεζα Εντολέα/Ordering Bank | : | |
| Πληροφορίες/Remittance Information 1 | : | PMT UNDER CONTR.©P/RT/-934/0507 DD |
| Πληροφορίες/Remittance Information 2 | : | 21.05.07 MV LOWLANDS-SAGUENAY INV.2 |
| Πληροφορίες/Remittance Information 3 | : | -290607 DD 29.06.07-FREIGHT |

Ε. & Ο.Ε. Η ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ ΔΕΝ ΧΡΕΙΑΖΕΤΑΙ ΥΠΟΓΡΑΦΗ / THIS ADVICE REQUIRES NO SIGNATURE

ΣΗΜΕΙΩΣΗ: Εάν εντός πέντε εργασίμων ημερών από την ημερομηνία της παρούσας ειδοποίησης δεν διαφωνήσετε με την πιο πάνω πίστωση, θα θεωρηθεί ότι έχει γίνει αποδεκτή από εσάς.

NOTE:  If within five working days following the date of the present notification you do not object to the above credit, it will be deemed to have been accepted by you.

HELLENIC BANK PUBLIC COMPANY LIMITED
Public Company, Company Number: 6771
Registered Office: Corner Lemesos Ave. & 200 Athalassas Ave.,
2025 Strovolos, Nicosia, Cyprus, Swift: HEBACY2N

Service Line: 6000 9999 - International Calls: +357 22 743843
E-mail: incomingpayments@hellenicbank.com,
http://www.hellenicbank.com

12. JUL. 2012  8:55       INDER: BUS. CENTER          NO. 907    P. 2

## ΕΛΛΗΝΙΚΗ ΤΡΑΠΕΖΑ
## HELLENIC BANK

| | |
|---|---|
| ΠΡΟΣ/ΤΟ: ALDI MARINE LTD A/C B | ΗΜΕΡΟΜΗΝΙΑ/DATE         : 11/07/2007 |
| C/O HELLENIC BANK LTD | ΑΝΑΦΟΡΑ ΜΑΣ/OUR REF.NO.: |
| 3505 240 OFFSHORE BANKING UNIT | ΑΝΑΦ.ΑΠΟΣΤ./REL.REF.NO. : |
| LIMASSOL | ΛΟΓΑΡΙΑΣΜΟΣ/ACCOUNT |
| | ΝΟΜΙΣΜΑ/CURRENCY        : USD |
| | ΑΡΙΘΜΟΣ ΙΒΑΝ/ΙΒΑΝ NO.   : |

### ΕΙΣΕΡΧΟΜΕΝΟ ΕΜΒΑΣΜΑ SWIFT- ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ
### SWIFT INCOMING PAYMENT – CREDIT NOTIFICATION

Αγαπητοί Κύριοι/Dear Sirs,

Σας ενημερώνουμε ότι ο λογαριασμός σας/Please note that your account ▮▮▮▮▮ θα πιστωθεί με το ποσό των/will be credited with the amount of USD 2,318,022.80 με ημερομηνία αξίας/value date 11/07/2007 με δικαίωμα αντιλογισμού ή/και ζήτησης από την Τράπεζα/under recourse.

ΛΕΠΤΟΜΕΡΕΙΕΣ ΠΛΗΡΩΜΗΣ / DETAILS OF PAYMENT (ημερομηνίας παραλαβής/received on 10/07/2007)

| Αρ. Αναφοράς Reference No. | Ποσό Μεταφοράς Transfer Amount | Νόμισμα Currency | Συναλλαγμ. Ισοτιμία Exch. Rate | Ισόποσο Equivalent Amount | Νόμισμα Currency |
|---|---|---|---|---|---|
| ▮▮▮▮▮ | 2,318,022.80 | USD | Άκυρο | 2,318,022.80 | USD |

Μείον Έξοδα Διεκπεραίωσης/Less Handling Charges................................................ 13.00 USD
Μείον Προμήθεια Μετατροπής/Less Exchange Commission.......................................... 0.00 USD

| | | |
|---|---|---|
| Εντολέας/Ordering Customer | : | CALIBRE PROPERTIES WORLDWIDE  LIMITED 197 MAIN STREET PALM CHAMBERS, ROAD TOWN, TORTOLA, VIRG.ISL.(BRITISH) ( LV72LATC0501092460010 |
| Ποσό Εντολής/Instructed Amount | : | 2,318,022.80    USD |
| Ένδειξη Εξόδων/Details of Charges | : | SHA |
| Έξοδα που Αφαιρέθηκαν από Τράπεζες/ Charges Deducted by Previous Banks | : | |
| Αποστέλλουσα Τράπεζα/Sending Bank | : | LATCLV22    AS EXPOBANK (FORMERLY AS LTB BANK)    LATVIA |
| Τράπεζα Εντολέα/Ordering Bank | : | |
| Πληροφορίες/Remittance Information 1 | : | PMT UNDER CONTR.CP/RT-938/0607 MV ' |
| Πληροφορίες/Remittance Information 2 | : | GENCO TRADER' INV.2-090707 DD |
| Πληροφορίες/Remittance Information 3 | : | 09.07.07 FREIGHT |

Ε. & Ο.Ε. Η ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ ΔΕΝ ΧΡΕΙΑΖΕΤΑΙ ΥΠΟΓΡΑΦΗ / THIS ADVICE REQUIRES NO SIGNATURE

ΣΗΜΕΙΩΣΗ: Εάν εντός πέντε εργάσιμων ημερών από την ημερομηνία της παρούσας ειδοποίησης δεν διαφωνήσετε με την πιο πάνω πίστωση, θα θεωρηθεί ότι έχει γίνει αποδεκτή από εσάς.

NOTE:  If within five working days following the date of the present notification you do not object to the above credit, it will be deemed to have been accepted by you.

HELLENIC BANK PUBLIC COMPANY LIMITED
Public Company, Company Number: 6771
Registered Office: Corner Lemesos Ave. & 200 Athalassas Ave.,
2025 Strovolos, Nicosia, Cyprus.  Swift HEBACY2N

Service Line: 8000 9999 – International Calls: +357 22 743843
E-mail: incomingpayments@hellenicbank.com,
http://www.hellenicbank.com

12. JUL. 2012  8:55     INDER: BUS. CENTER          VO. 907   ᵖ. 3

ΕΛΛΗΝΙΚΗ ΤΡΑΠΕΖΑ
HELLENIC BANK

ΠΡΟΣ/ΤΟ: ALDI MARINE LTD A/C B
C/O HELLENIC BANK LTD
3505 240 OFFSHORE BANKING UNIT
LIMASSOL

ΗΜΕΡΟΜΗΝΙΑ/DATE          : 19/07/2007
ΑΝΑΦΟΡΑ ΜΑΣ/OUR REF.NO.:
ΑΝΑΦ.ΑΠΟΣΤ./REL.REF.NO. :
ΛΟΓΑΡΙΑΣΜΟΣ/ACCOUNT
ΝΟΜΙΣΜΑ/CURRENCY        : USD
ΑΡΙΘΜΟΣ ΙΒΑΝ/IBAN NO.   :

ΕΙΣΕΡΧΟΜΕΝΟ ΕΜΒΑΣΜΑ SWIFT- ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ
SWIFT INCOMING PAYMENT - CREDIT NOTIFICATION

Αγαπητοί Κύριοι/Dear Sirs,

Σας ενημερώνουμε ότι ο λογαριασμός σας/Please note that your account ██████████ θα πιστωθεί με το ποσό των/will be credited with the amount of USD 3,144,843.90 με ημερομηνία αξίας/value date 19/07/2007 με δικαίωμα αντιλογισμού ή/και ζήτησης από την Τράπεζα/under recourse.

ΛΕΠΤΟΜΕΡΕΙΕΣ ΠΛΗΡΩΜΗΣ / DETAILS OF PAYMENT (ημερομηνίας παραλαβής/received on 18/07/2007)

| Αρ. Αναφοράς Reference No. | Ποσό Μεταφοράς Transfer Amount | Νόμισμα Currency | Συναλλαγμ. Ισοτιμία Exch. Rate | Ισότιμο Equivalent Amount | Νόμισμα Currency |
|---|---|---|---|---|---|
| ████████ | 3,144,843.90 | USD | 1.0000 | 3,144,843.90 | USD |
| Μείον Έξοδα Διεκπεραίωσης/Less Handling Charges............ | | | | 13.00 | USD |
| Μείον Προμήθεια Μετατροπής/Less Exchange Commission.......... | | | | 0.00 | USD |

Εντολέας/Ordering Customer        : MONT CERVIN CONSULTADORIA E SERVICO  S LDA. AVENIDA ARRIAGA 77 EDIFICIO MARINA FORUM 6-605,SE FUNCHAL,PORTUGAL ( LV55LATC0501022950010 )
Ποσό Εντολής/Instructed Amount    : 3,144,843.90    USD
Ένδειξη Εξόδων/Details of Charges : SHA
Έξοδα που Αφαιρέθηκαν από Τράπεζα/
Charges Deducted by Previous Banks :
Αποστέλλουσα Τράπεζα/Sending Bank  : LATCLV22   AS EXPOBANK (FORMERLY AS LTB BANK)   LATVIA
Τράπεζα Εντολέα/Ordering Bank
Πληροφορίες/Remittance Information 1 : PMT, UNDER CONTR.N.CP/RT-939/0607
Πληροφορίες/Remittance Information 2 : DD 28.06.07, UNDER INV. 2-170707 DD
Πληροφορίες/Remittance Information 3 : 17.07.07 FOR FREIGHT

Ε. & Ο.Ε. Η ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ ΔΕΝ ΧΡΕΙΑΖΕΤΑΙ ΥΠΟΓΡΑΦΗ / THIS ADVICE REQUIRES NO SIGNATURE

ΣΗΜΕΙΩΣΗ: Εάν εντός πέντε εργασίμων ημερών από την ημερομηνία της παρούσας ειδοποίησης δεν διαφωνήσετε με την πιο πάνω πίστωση, θα θεωρηθεί ότι έχει γίνει αποδεκτή από εσάς.

NOTE: If within five working days following the date of the present notification you do not object to the above credit, it will be deemed to have been accepted by you.

HELLENIC BANK PUBLIC COMPANY LIMITED
Public Company, Company Number: 6771
Registered Office: Corner Lemesos Ave. & 200 Athalassas Ave.,
2025 Strovolos, Nicosia, Cyprus.  Swift: HEBACY2N

Service Line: 8000 9999 - International Calls: +357 22 743843
E-mail: incomingpayments@hellenicbank.com,
http://www.hellenicbank.com

12. JUL. 2012  8:56     INDER: BUS. CENTER                      NO. 907    P. 4

# ΕΛΛΗΝΙΚΗ ΤΡΑΠΕΖΑ
# HELLENIC BANK

ΠΡΟΣ/ΤΟ: ALDI MARINE LTD A/C B
C/O HELLENIC BANK LTD
3505 240 OFFSHORE BANKING UNIT
LIMASSOL

| | |
|---|---|
| ΗΜΕΡΟΜΗΝΙΑ/DATE | : 22/10/2007 |
| ΑΝΑΦΟΡΑ ΜΑΣ/OUR REF.NO. | |
| ΑΝΑΦ.ΑΠΟΣΤ./REL.REF.NO. | : |
| ΛΟΓΑΡΙΑΣΜΟΣ/ACCOUNT | |
| ΝΟΜΙΣΜΑ/CURRENCY | : USD |
| ΑΡΙΘΜΟΣ IBAN/IBAN NO. | |

## ΕΙΣΕΡΧΟΜΕΝΟ ΕΜΒΑΣΜΑ SWIFT- ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ
## SWIFT INCOMING PAYMENT - CREDIT NOTIFICATION

Αγαπητοί Κύριοι/Dear Sirs,

Σας ενημερώνουμε ότι ο λογαριασμός σας/Please note that your account ▓▓▓▓▓▓▓ θα πιστωθεί με το ποσό των/will be credited with the amount of USD 2,299,473.34 με ημερομηνία αξίας/value date 22/10/2007 με δικαίωμα αντιλογισμού ή/και ζήτησης από την Τράπεζα/under recourse.

ΛΕΠΤΟΜΕΡΕΙΕΣ ΠΛΗΡΩΜΗΣ / DETAILS OF PAYMENT (ημερομηνίας παραλαβής/received on 19/10/2007)

| Αρ. Αναφοράς Reference No. | Ποσό Μεταφοράς Transfer Amount | Νόμισμα Currency | Συναλλαγμ. Ισοτιμία Exch. Rate | Ισότιμο Equivalent Amount | Νόμισμα Currency |
|---|---|---|---|---|---|
| ▓▓▓▓▓▓ | 2,299,473.34 | USD | 1.0000 | 2,299,473.34 | USD |
| Μείον Έξοδα Διεκπεραίωσης/Less Handling Charges................................................. | | | | 13.00 | USD |
| Μείον Προμήθεια Μετατροπής/Less Exchange Commission........................................ | | | | 0.00 | USD |

| | | |
|---|---|---|
| Εντολέας/Ordering Customer | : | CALIBRE PROPERTIES WORLDWIDE   LIMITED 197 MAIN STREET PALM CHAMBERS, ROAD TOWN, TORTOLA, VIRG.ISL.(BRITISH) ( LV72LATC0501092460010 |
| Ποσό Εντολής/Instructed Amount | : | 2,299,473.34   USD |
| Ένδειξη Εξόδων/Details of Charges | : | SHA |
| Έξοδα που Αφαιρέθηκαν από Τράπεζες/ Charges Deducted by Previous Banks | : | |
| Αποστέλλουσα Τράπεζα/Sending Bank | : | LATCLV22   AS EXPOBANK (FORMERLY AS LTB BANK)   LATVIA |
| Τράπεζα Εντολέα/Ordering Bank | : | |
| Πληροφορίες/Remittance Information 1 | | PMT UNDER CONTR.CP/RT-976/0907 DD |
| Πληροφορίες/Remittance Information 2 | | 18.08.07, INV. 2-181007 DD 18.10.07 |
| Πληροφορίες/Remittance Information 3 | | MV LACERTA, FREIGHT |

Ε. & Ο.Ε. Η ΠΙΣΤΩΤΙΚΗ ΣΗΜΕΙΩΣΗ ΔΕΝ ΧΡΕΙΑΖΕΤΑΙ ΥΠΟΓΡΑΦΗ / THIS ADVICE REQUIRES NO SIGNATURE

ΣΗΜΕΙΩΣΗ: Εάν εντός πέντε εργάσιμων ημερών από την ημερομηνία της παρούσας ειδοποίησης δεν διαφωνήσετε με την πιο πάνω πίστωση, θα θεωρηθεί ότι έχει γίνει αποδεκτή από εσάς.

NOTE: If within five working days following the date of the present notification you do not object to the above credit, it will be deemed to have been accepted by you.

HELLENIC BANK PUBLIC COMPANY LIMITED
Public Company, Company Number: 6771
Registered Office: Corner Lemesos Ave. & 200 Athalassas Ave.,
2025 Strovolos, Nicosia, Cyprus.  Swift: HEBACY2N

Service Line: 8000 9999 - International Calls: +357 22 743843
E-mail: incomingpayments@hellenicbank.com,
http://www.hellenicbank.com

# EXHIBIT 5

<u>**ΚΛΙΜΑΚΑ: €500.000 - €2.000.000**</u>

ΣΤΟ ΕΠΑΡΧΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΛΕΥΚΩΣΙΑΣ

Αρ. Αγωγής 3582/2011

Μεταξύ:

    1. RUAL TRADE LTD

    2. ALUMINA & BAUXITE COMPANY LTD

    3. CALIBRE PROPERTIES WORLDWIDE LTD

    4. MONT CERVIN - CONSULTADORIA E SERVICOS SOCIEDADE UNIPESSOAL, LDA

Εναγόντων/Αιτητών

και

    1. ANDREI RAIKOV (ANDREY RAYKOV)

    2. ALDI MARINE LTD

    3. DMITRY OSIPOV (DMITRI EVGENIEVICH OSIPOV)

    4. NATICA SHIPPING LTD

    5. NATICA SHIPPING & TRADING LTD

    6. ΕΛΛΗΝΙΚΗ ΤΡΑΠΕΖΑ ΔΗΜΟΣΙΑ ΕΤΑΙΡΕΙΑ ΛΤΔ

Εναγόμενων/Καθ᾽ ων η Αίτηση

--------------------------------------------------------------------------------

**ΥΠΕΡΑΣΠΙΣΗ ΕΝΑΓΟΜΕΝΩΝ 2 – 5**

--------------------------------------------------------------------------------

1.    Οι Εναγόμενοι 2 – 5 (στο εξής όλοι μαζί καλούμενοι ως «οι Εναγόμενοι») αρνούνται όλους τους ισχυρισμούς που εκτίθενται στην Έκθεση Απαίτησης των Εναγόντων ως αν να αρνούντο καθέν᾽ από αυτούς χωριστά, πλην όσους ρητά παραδέχονται.

2

2.      Οι Εναγόμενοι αρνούνται τους ισχυρισμούς που εκτίθενται στην παράγραφο
1 της Έκθεσης Απαίτησης και ειδικότερα αρνούνται ότι:

2.1    Οι Ενάγουσες είναι εκ των θυγατρικών εταιρειών του Ομίλου
Εταιρειών της UC Rusal Group ("UCR").

2.2    Οι Ενάγουσες ασχολούνται με την παροχή στις μονάδες παραγωγής
της UCR των πρώτων υλών και αλουμίνας που αγοράζουν από
προμηθευτές στο εξωτερικό. Οι Εναγόμενοι ισχυρίζονται ότι από την
1η Σεπτεμβρίου 2007 όλα τα συμβόλαια προμήθειας (Contracts of
Affreightment) των πρώτων υλών και αλουμίνας που η UCR αγοράζει,
συνάπτονται από την εταιρεία RTI Ltd του Jersey και όχι από τις
Ενάγουσες.

Οι Εναγόμενοι ισχυρίζονται περαιτέρω ότι η UCR είναι αποτέλεσμα συγχώνευσης
της εταιρείας Russian Aluminium Company ("Rusal") με τις εταιρείες Siberian –
Urals Aluminium Company ("Sual") και Glencore International Plc ("Glencore")
το Μάρτη του 2007. Μέχρι τότε οι Εναγόμενοι 2 και 4 συνεργάζονταν με την
εταιρεία Rusal.

3.      Οι Εναγόμενοι εκτός του ότι παραδέχονται ότι στα πλαίσια των
δραστηριοτήτων τους οι Ενάγουσες συνήθιζαν να ναυλώνουν πλοία για τη
μεταφορά των πρώτων υλών και/ή βωξίτη και/ή υπο-προϊόντων (π.χ. αλουμίνα)
από τους προμηθευτές προς τις μονάδες παραγωγής, αγνοούν και συνεπώς
αρνούνται το υπόλοιπο περιεχόμενο της παραγράφου 2 της Έκθεσης Απαίτησης.

4.      Οι Εναγόμενοι αρνούνται το περιεχόμενο της παραγράφου 3 της Έκθεσης
Απαίτησης και ισχυρίζονται ότι την ευθύνη λήψης διοικητικών αποφάσεων εκ
μέρους των Εναγουσών αναφορικά με εργασίες ναυλομίσθωσης (chartering) είχε
σε όλους τους ουσιώδεις χρόνους στο Διοικητικό Συμβούλιο της Rusal το οποίο
αποφάσιζε μετά από σχετική παρουσίαση/εισήγηση του Τμήματος Μεταφορών και
Διαδικασιών (Transport and Logistics Department) της Rusal

3

5.    Οι Εναγόμενοι εκ του περιεχομένου της παραγράφου 4 της Έκθεσης Απαίτησης παραδέχονται μόνο ότι ο Εναγόμενος 1 υπήρξε ο Γενικός Διευθυντής της Russian Aluminum Management ("RAM").

6.    Οι Εναγόμενοι παραδέχονται την παράγραφο 5 της Έκθεσης Απαίτησης αλλά ισχυρίζονται ότι ο Εναγόμενος 3 δεν είναι ούτε αξιωματούχος ούτε εγγεγραμμένος μέτοχος των Εναγομένων 2 αλλά ήταν καθ' όλους τους ουσιώδεις χρόνους ένας από τους απώτερους δικαιούχους ( ultimate beneficial owner) των μετοχών της Εναγόμενης 2.

7.    Οι Εναγόμενοι αρνούνται ότι ο Εναγόμενος 3 υπήρξε οποτεδήποτε αντισυμβαλλόμενος των Εναγόντων ή της UCR ή της Rusal σε οποιεσδήποτε συμφωνίες ναύλωσης ή μεσίτης πλοίων των Ομίλου UCR με βάση τη Συμφωνία μεταξύ της RAM και της Εναγόμενης 4.   Αντισυμβαλλόμενος της RAM ήταν η Εναγόμενη 4 και των Εναγουσών, με βάση διάφορες Συμφωνίες Ναύλωσης, η Εναγόμενη                                                                                           2.


Περαιτέρω, οι Εναγόμενοι ισχυρίζονται ότι η Εναγόμενη 4 δεν υπήρξε στην πράξη ο μοναδικός και αποκλειστικός μεσίτης πλοίων της UCR.

Οι Εναγόμενοι ισχυρίζονται ότι άνκαι η Εναγόμενη 4 θα έπρεπε να ήταν αποκλειστικός μεσίτης πλοίων της Rusal από τον Οκτώβρη 2003 μέχρι τον Ιανουάριο 2008 με βάση σχετικές συμφωνίες μεταξύ της και της RAM τουλάχιστον για φορτία βωξίτη και αλουμίνας, η Rusal δεχόταν προσφορές απευθείας από συγκεκριμένους πλοιοκτήτες ακόμα και αναφορικά με αυτά τα φορτία, χωρίς τη μεσολάβηση των Εναγομένων 4.   Εντούτοις, η Rusal επέλεγε τις πιο πολλές φορές την προσφορά της Εναγόμενης 4 επειδή ήταν χαμηλότερη.

Κατά την περίοδο 2004 – 2007 η Εναγόμενη 4 συμμετείχε σε προσφορές για ναύλωση πλοίων για άλλα φορτία πρώτων υλών της Rusal όπως καυστική σόδα, πετρέλαιο, χημικό βωξίτη καθώς και για φορτία τελικού προϊόντος αλουμινίου

4

προς τις Η.Π.Α (που τύγχαναν χειρισμού από χωριστό τμήμα της Rusal) που κάποτε η Εναγόμενη 4 κέρδιζε και κάποτε έχανε

8.    Οι Εναγόμενοι παραδέχονται το περιεχόμενο της παραγράφου 7 της Έκθεσης Απαίτησης.

9.    Οι Εναγόμενοι παραδέχονται το περιεχόμενο της παραγράφου 8 της Έκθεσης Απαίτησης πλην όμως ισχυρίζονται ότι οι Εναγόμενοι 5 δεν διεξάγουν οποιεσδήποτε εργασίες από το 1998 και/ή δεν αποκαλύπτεται οποιαδήποτε αιτία αγωγής εναντίον τους

10.    Οι Εναγόμενοι αγνοούν και αρνούνται το περιεχόμενο της παραγράφου 9 της Έκθεσης Απαίτησης σε ότι αφορά τις θέσεις του Εναγόμενου 1 στη Rusal.    Σε ότι αφορά τον ισχυρισμό ότι ο Εναγόμενος 1 είχε την ευθύνη της οργάνωσης της παροχής βωξίτη και αλουμινίου στις μονάδες παραγωγής του Ομίλου, οι Εναγόμενοι ισχυρίζονται ότι αυτή η ευθύνη δεν περιλάμβανε τη μεταφορά δια θαλάσσης των υλικών αυτών ή τη ναύλωση πλοίων για το σκοπό αυτό, ευθύνη που ανήκε στο Τμήμα Μεταφορών και Διαδικασιών (Transport and Logistics Department) της Rusal στο οποίο ουδέποτε απασχολήθηκε ο Εναγόμενος 1.

11.    Οι Εναγόμενοι αρνούνται το περιεχόμενο της παραγράφου 10 της Έκθεσης Απαίτησης. Ο Εναγόμενος 1 ουδέποτε ασχολήθηκε και/ή οι Εναγόμενοι δεν είχαν αλληλογραφία με τον Εναγόμενο 1 ακόμα και κατά τα έτη 2000 – 2003 σχετικά με το θέμα της μεταφοράς δια θαλάσσης των πρώτων υλών και/ή της ναύλωσης πλοίων γι' αυτό το σκοπό, επειδή ο Εναγόμενος 1 ασχολείτο μόνο τον καθορισμό των αναγκαίων ποσοτήτων των πρώτων υλών.  Από τον Ιούλιο 2007 ο Εναγόμενος 1 σταμάτησε να εργάζεται στη UCR.

12.    Οι Εναγόμενοι  αρνούνται το περιεχόμενο της παραγράφου 11 της Έκθεσης Απαίτησης.   Οι Εναγόμενοι αρνούνται ιδίως ότι ο Εναγόμενος 3 συμβλήθηκε οποτεδήποτε με τις Ενάγουσες.

5

Οι Εναγόμενοι ισχυρίζονται ότι με σειρά αποφάσεων Διευθυντών Τμημάτων της Rusal, η Εναγόμενη 4 διορίστηκε αποκλειστικός μεσίτης πλοίων για τη RAM Ltd για ένα έτος από τον Οκτώβρη 2003 με συμφωνία Μεσιτείας (Brokerage Agreement) ημερομηνίας 7.10.2003 που υπογράφτηκε για λογαριασμό της RAM από τον Εναγόμενο 1 και η οποία ανανεώνταν ετήσια από άλλους διευθυντές της RAM και/ή της Rusal μέχρι και το Μάρτη 2007 που η Rusal συγχωνεύθηκε με τη Sual και της Glencor, οπότε και ανανεώθηκε πλέον από την UCR.

13.   Εκ του περιεχόμενου της παραγράφου 12 της Έκθεσης Απαίτησης, οι Εναγόμενοι παραδέχονται ότι η Εναγόμενη 4 συνήψε με τη RAM Ltd.   Συμφωνία Μεσιτείας ημερομηνίας 7.10.2003 διάρκειας ενός έτους μετά από πρόταση τριών στελεχών της Rusal μεταξύ των οποίων και ο Εναγόμενος 1.

14.   Οι Εναγόμενοι αρνούνται το περιεχόμενο της παραγράφου 13 της Έκθεσης Απαίτησης και ισχυρίζονται ότι σε όλες τις περιπτώσεις η σύναψη συμβολαίων ναύλωσης γινόταν μετά από υποβολή προσφορών από τους συνεργαζόμενους με τη Rusal πλοιοκτήτες, από το δε 2007 όλες οι αποφάσεις ναύλωσης λαμβάνονταν αποκλειστικά από το Διοικητικό Συμβούλιο της UCR.

15.   Οι Εναγόμενοι αρνούνται το περιεχόμενο της παραγράφου 14 της Έκθεσης Απαίτησης, επαναλαμβάνουν το περιεχόμενο της παραγράφου 14 της Υπεράσπισης τους και ισχυρίζονται περαιτέρω ότι η Εναγόμενη 4 ήταν υποχρεωμένη να ζητά προσφορές μόνο από τους μεταφορείς που ήταν εγκεκριμένοι από τη Rusal και οι αποφάσεις ναύλωσης λαμβάνονταν από 5 διαφορετικούς διευθυντές της Rusal που ενήργησαν διαδοχικά και με συμμετοχή 10 διαφορετικών τμημάτων της Rusal.   Οι Εναγόμενοι ισχυρίζονται ότι τα Συμβόλαια Ναύλωσης (Fixture Notes), συνάπτονταν το 2007 με την Εναγόμενη 2 ως ένας από τους εγκεκριμένους μεταφορείς των Rusal σύμφωνα με τα αντίστοιχα Συμβόλαια Μεταφοράς (Contracts of Affreightment) με τις διάφορες θυγατρικές της Rusal.

6

16.1   Εκ του περιεχομένου της παραγράφου 15 της Έκθεσης Απαίτησης οι
       Εναγόμενοι παραδέχονται μόνο ότι η UCR τερμάτισε κατά/ή περί τις
       23.1.2008 τη Συμφωνία Μεσιτείας (Brokerage Agreement) που ίσχυε
       τότε ημερομηνίας 7.10.2003 και ότι η Ενάγουσα 2 καταχώρισε την
       αναφερόμενη καταγγελία κατά/ή περί τις 30.10.2007 η οποία
       διευθετήθηκε στις 2.11.2007 με πλήρη ικανοποίηση   όλων των
       μερών.

16.2   Οι Εναγόμενοι περαιτέρω ισχυρίζονται ότι στις 8.11.2007 ο
       Εναγόμενος 3 συμμορφώθηκε πλήρως με την υποχρέωση πλήρους
       αποκάλυψης όλων των τρεχουσών συμφωνιών που προέβλεπε η
       Συμφωνία Διευθέτησης (Settlement Agreement) ημερομηνίας
       2.11.2007 και περαιτέρω μερίμνησε για την εκχώρηση όλων των
       τρεχουσών συμφωνιών κάθε εταιρείας υπό τον έλεγχο του σε Εταιρεία
       υπό τον έλεγχο της UCR προς πλήρη ικανοποίηση της Ενάγουσας 2
       και/ή της UCR.

16.3   Οι Εναγόμενοι ισχυρίζονται ότι η Συμφωνία Διευθέτησης (Settlement
       Agreement) ημερομηνίας 2.11.2007 προνοούσε ότι η Ενάγουσα 2 και
       η Rusal απάλλασσαν τους Εναγόμενους 3 και 4 από κάθε αξίωση
       περιλαμβανομένης αξίωσης για απάτη σε σχέση με Συμβόλαια
       Μεταφοράς (Contracts of Affreightment), καθώς και από αξιώσεις σε
       σχέση με οποιεσδήποτε συμφωνίες μεταξύ νομικού προσώπου
       ελεγχόμενου από τη Rusal και τρίτου προσώπου ελεγχόμενου άμεσα
       ή έμμεσα από τον Εναγόμενο 3, (ως ήταν καθ' όλους τους ουσιώδεις
       χρόνους οι Εναγόμενοι 2) ή του οποίου ο Εναγόμενος 3 είναι ή ήταν
       Διευθυντής.

16.4   Οι Εναγόμενοι ισχυρίζονται ότι οι Ενάγουσες εμποδίζονται εξ αυτού
       του όρου να προωθούν την παρούσα αγωγή εναντίον των Εναγομένων
       2-5.

7

17.    Οι Εναγόμενοι αγνοούν το περιεχόμενο των παραγράφων 16 και 17 της Έκθεσης Απαίτησης και το αρνούνται.

18.    Οι Εναγόμενοι αρνούνται το περιεχόμενο της παραγράφου 18 της Έκθεσης Απαίτησης και συγκεκριμένα αρνούνται ότι η Εναγόμενη 2 κατέβαλε οποτεδήποτε στον Εναγόμενο 1 οποιαδήποτε ποσά συνιστώντα οικονομικά ωφελήματα σε βάρος των Εναγουσών αντισυμβατικά και/ή κατά παράβαση της σχέσης εμπιστευτικότητας του Εναγόμενου 1 με την Ενάγουσα 2 και/ή με απάτη και/ή με ξέπλυμα παράνομου χρήματος και/ή με φοροδιαφυγή και απορρίπτουν τους ισχυρισμούς των Εναγουσών  ως ανυπόστατους και/ή κακόβουλους και/ή εκδικητικούς.   Οι Εναγόμενοι αρνούνται ότι, οι ανυπόστατοι ισχυρισμοί που δικογραφούνται στην παράγραφο 18 της Έκθεσης Απαίτησης επιβεβαιώθηκαν δήθεν κατόπιν δικαστικών διαδικασιών που εγέρθηκαν εντός της διαδικασίας των Κυπριακών Δικαστηρίων.

19.    Οι Εναγόμενοι ισχυρίζονται ότι ουδέποτε έκαμε  η Εναγόμενη 2 οποιεσδήποτε πληρωμές στον Εναγόμενο 1 που να συνιστούν προμήθειες και/ή οικονομικά ωφελήματα σε βάρος των Εναγουσών και/ή που να σχετίζονται με τη συμβατική σχέση και/ή συνεργασία μεταξύ των Εναγόμενων 2 και/ή 4 με τις Ενάγουσες.

20.    Οι Εναγόμενοι απορρίπτουν τα συμπεράσματα που περιέχονται στην παράγραφο 20 της Έκθεσης Απαίτησης ως αυθαίρετα, η δε καταγραφή της συνολικής αξίας των συναλλαγών της Εναγόμενης 2 με τις Ενάγουσες 2-4 είναι άσχετη.

21.    Οι Εναγόμενοι ισχυρίζονται ότι η ισχυριζόμενη εργασία και/ή συγκρίσεις και/ή υπολογισμοί των Εναγουσών που καταγράφονται στην παράγραφο 21 της Έκθεσης Απαίτησης στερούνται αξίας.  Άνευ βλάβης της γενικότητας της πιο πάνω θέσης τους, οι Εναγόμενοι ισχυρίζονται ότι:

(α) Οι αναφερόμενοι υπολογισμοί αγνοούν βασικές παραμέτρους που σχετίζονται μεταξύ άλλων με τα λιμενικά δικαιώματα και τέλη, έξοδα

8

μεσαζόντων (agency fees), εκτελωνιστικά τέλη, σοβαρούς κινδύνους σχετιζόμενους με τις καιρικές συνθήκες, καθυστερήσεις λόγω απουσίας βαγονιών σιδηροδρόμου, προβλήματα με τον εξοπλισμό λιμένων, ανυπαρξία ή δυσχέρεια εξεύρεσης νέου φορτίου για την επιστροφή του πλοίου, δυνατότητα εξεύρεσης διαθέσιμου μεταφορικού το σωστό χρόνο (που ήταν δύσκολο ιδίως το 2007), υπερημερίες (demurrage).

(β) Το Dry Voyage Calculator V3.2 AXS Marine είναι ένα λογισμικό πρόγραμμα που δίνει μια πολύ πρόχειρη καθοδήγηση για το μέσο όρο ναύλων (freight rates) με βάση δείκτες μέσου όρου κόστους χρονοναυλομίσθωσης (time charter rates) που δημοσιεύονται ημερήσια.

(γ) Η μετατροπή του κόστους χρονοναυλομίσθωσης (time charter rate) σε κόστος ναύλου (freight rate) είναι εργασία που απαιτεί εξαιρετικά εξειδικευμένες γνώσεις του κάθε είδους πλοίου, γνώση πολλών άλλων ειδικών πραγματικών παραμέτρων κάθε χωριστής περίπτωσης και το οποίο θεωρητικό αποτέλεσμα στερείται πρακτικής αξίας στην κατά περίπτωση διαπραγμάτευση των τιμών με τον εκάστοτε μεταφορέα.

Οι Εναγόμενοι 2 και 4 ισχυρίζονται ότι, εν πάση περιπτώσει, πρόσφεραν στις Ενάγουσες τις χαμηλότερες δυνατές τιμές μετά από προσφορές που διεξήγαγε το Τμήμα Μεταφορών και Διαδικασιών (Transport and Logistics Department) της Rusal και/ή της UCR.


22.   Οι Εναγόμενοι απορρίπτουν το περιεχόμενο της παραγράφου 22 της Έκθεση Απαίτησης και ισχυρίζονται ότι αυτή βασίζεται σε εσφαλμένα και/ή καθ' όλα θεωρητικά και/ή εξωπραγματικά στοιχεία και κατασκευασμένους υπολογισμούς και/ή οι Εναγόμενοι ισχυρίζονται ότι οι Εναγόμενοι 2 και 4 πρόσφεραν στις Ενάγουσες τις καλύτερες δυνατές τιμές, ενόψει και της άρνησης των Εναγουσών να συνάψουν μακροχρόνια συμβόλαια και της επιλογής τους να εξευρίσκεται μεταφορικό μέσο ανά περίπτωση.

9

Οι Εναγόμενοι ισχυρίζονται περαιτέρω ότι οι Ενάγουσες εξοικονόμησαν πέραν του $1 δις. σε ναύλα χάριν στα συμβόλαια μεταφοράς και στα συμβόλαια ναύλωσης που τους εξασφάλισε η Εναγόμενη 4 ως μεσίτης.

Οι Εναγόμενοι απορρίπτουν όλες και καθεμιά χωριστά τις λεπτομέρειες απάτης και/ή δόλου και/ή ψευδών παραστάσεων.   Χωρίς βλάβη της γενικότητας της θέσης τους αυτής, οι Εναγόμενοι ισχυρίζονται ότι:

(α)    Η απόφαση διορισμού της Εναγόμενης 4 ως αποκλειστικού μεσίτη της Rusal δεν λήφθηκε από τον Εναγόμενο 1 αλλά μετά από συναπόφαση αρμόδιων στελεχών και Τμημάτων της Rusal και ανανεωνόταν ετήσια από άλλους διευθυντές της Rusal και/ή της UCR χωρίς  συμμετοχή του Εναγόμενου 1.

(β)    Παρά την πιο πάνω συμφωνία, οι Ενάγουσες δέχονταν προσφορές και από πλοιοκτήτες απευθείας αλλά στις περισσότερες περιπτώσεις επέλεγαν τις προσφορές της Εναγόμενης 4, ως πιο συμφέρουσες.

(γ)    Η Εναγόμενη 4 συνεργαζόταν με τη Rusal από το 2000 και η Rusal έκρινε ότι η συνεργασία τους ήταν τόσο συμφέρουσα ώστε να τη διορίσει ως αποκλειστικό μεσίτη.

(δ)    Η Εναγόμενη 4 προσπαθούσε πάντα να πετυχαίνει τις χαμηλότερες τιμές για τη Rusal, κάτι που η Rusal και/ή η UCR επιβεβαίωνε με ανεξάρτητες εκθέσεις πραγματογνωμόνων που διαπίστωναν ότι τα συμβόλαια που πετύχαινε η Εναγόμενη 4 ήταν εξαιρετικά συμφέροντα για τη Rusal.

(ε)    Η Εναγόμενη 2 ουδέποτε προέβη σε υπερχρεώσεις τα δε τιμολόγια της αξιολογούνταν ενδελεχώς και εγκρίνονταν και εξοφλούνταν από τα αρμόδια τμήματα των Εναγουσών και/ή της Rusal και/ή της UCR.

10

(στ)   Η Εναγόμενη 2 ουδέποτε προέβη σε πληρωμές προς τον Εναγόμενο 1 οι οποίες να αφορούν και/ή να σχετίζονται με τις Ενάγουσες και/ή τη Rusal και/ή τη UCR.

(ζ)   Ήδη από το 2003 και/ή μέχρι και το 2007 ο Εναγόμενος 1 δεν είχε οποιαδήποτε αρμοδιότητα ή ευθύνη ή γνωμοδοτική ή αποφασιστική εξουσία σε σχέση με τις ναυλώσεις που γίνονταν για λογαριασμό των Εναγουσών και/ή της Rusal και/ή της UCR. Ακόμα και κατά τα έτη 2000 – 2003 ο Εναγόμενος 1 είχε πολύ περιορισμένη ανάμιξη στις εργασίες μεταφοράς και ναύλωσης πλοίων της Rusal.  Από  τον Ιούλιο 2007 ο Εναγόμενος 1 δεν εργοδοτείτο στη UCR.

23. Οι Εναγόμενοι αγνοούν και αρνούνται το περιεχόμενο των παραγράφων 23-28 της Έκθεσης Απαίτησης και ισχυρίζονται περαιτέρω ότι είναι άσχετο και/ή σκανδαλώδες και/ή δικογραφείται με σκοπό και μόνο την πρόκληση εντυπώσεων και/ή προκατάληψης κατά του Εναγόμενου 1 και/ή των Εναγομένων γενικότερα.

24. Οι Εναγόμενοι αρνούνται και απορρίπτουν το περιεχόμενο των παραγράφων 29 εώς 32 της Έκθεσης Απαίτησης ως αβάσιμο και/ή ανυπόστατο και/ή απορρίπτουν ειδικότερα κάθε ισχυρισμό  για συνομωσία και/ή αποκόμιση οικονομικού οφέλους εις βάρος των Εναγουσών και/ή πρόκλησης ζημιάς στις Ενάγουσες.

25. Οι Εναγόμενοι ισχυρίζονται περαιτέρω ότι :

(1) Η συνεργασία και όλες οι κατά καιρούς συμφωνίες μεταξύ των Εναγουσών και των Εναγομένων 2 και 4 συνάφθηκαν και εκτελέστηκαν με την ελεύθερη βούληση και ενημερωμένη γνώση της κάθε πλευράς, έναντι καλού και νομίμου ανταλλάγματος.

11

(2) Η συνεργασία μεταξύ των Εναγουσών και των Εναγόμενων 2 και/ή 4 τερματίστηκε από τη UCR τον Ιανουάριο 2008 χωρίς όρους και χωρίς προβολή αξιώσεων απ' οποιαδήποτε από τις δύο πλευρές.

(3) Συνεπεία της διευθέτησης της καταγγελίας με αρ. 07- CIV - 8647 οι Ενάγουσες και/ή η UCR και/ή οποιαδήποτε θυγατρική της UCR εμποδίζονται από του να εγείρουν οποιαδήποτε αξίωση και/ή αγωγή κατά οποιωνδήποτε εκ των Εναγομένων και/ή η αγωγή αυτή θα πρέπει να απορριφθεί και γι' αυτό το λόγο.

(4) Δεν αποκαλύπτεται οποιαδήποτε αιτία αγωγής κατά των Εναγομένων 3 και 5.

26.   Οι Εναγόμενοι ισχυρίζονται ότι οι Ενάγουσες δεν δικαιούνται στην αιτούμενες και/ή οποιεσδήποτε θεραπείες.

-----------------------------------------

Chrysses Demetriades & Co LLC

Δικηγόροι Εναγομένων 2 - 5

Καταχωρήθηκε στις ......................... 2011.

**ΠΡΩΤΟΚΟΛΛΗΤΗΣ**

12

Προς τους

1. κ.κ. Μιχάλης Βορκάς & Συνεργάτες Δ.Ε.Π.Ε

Δικηγόρους Εναγουσών

Λεωφ. Αρχιεπισκόπου Μακαρίου Γ' 95

Πολυκατοικία Χαριτίνη

1ος όροφος

Γραφείο 102

Λευκωσία

Δ.Θ. 347


2. κ. Δημήτρη Κρονίδη

Δικηγόρο Εναγόμενου 1

Οδός Μπουμπουλίνας 1

Κτίριο Μπουμπουλίνα

Γραφείο αρ. 32

3ος όροφος

Λευκωσία

Δ.Θ. 455

\\filesrv-cy\Documents\Files\Litigation\Litigation\12584\Καταχώρηση- Έκθεση Υπεράσπισης_EK_45.doc

**SCALE: €500.000 - €2.000.000**

BEFORE THE DISTRICT COURT OF NICOSIA

Action No. 3582/2011

Between:

1. RUAL TRADE LTD
2. ALUMINA & BAUXITE COMPANY LTD
3. CALIBRE PROPERTIES WORLDWIDE LTD
4. MONT CERVIN - CONSULTADORIA E SERVICOS SOCIEDADE UNIPESSOAL, LDA

Plaintiffs/Applicants

and

1. ANDREI RAIKOV (ANDREY RAYKOV)
2. ALDI MARINE LTD
3. DMITRY OSIPOV (DMITRI EVGENIEVICH OSIPOV)
4. NATICA SHIPPING LTD
5. NATICA SHIPPING & TRADING LTD
6. HELLENIC BANK PUBLIC COMPANY LTD

Defendants/Respontents

-------------------------------------------------------------------------------

### DEFENCE OF DEFENDANTS 2 – 5

-------------------------------------------------------------------------------

1.   The Defendants 2 – 5 (hereinafter collectively called as «the Defendants») deny all the allegations stated in the Statement of Claim of the

2

Plaintiffs as if they deny each one of them separately, save for those they expressly admit.

2.    The Defendants deny the allegations stated in paragraph 1 of the Statement of Claim and in particular they deny that:

2.1    The Plaintiffs are some of the subsidiary companies of the Group of Companies of the UC Rusal Group ("UCR").

2.2    The Plaintiffs are engaged in providing raw materials and alumina to the production units of UCR, purchased from suppliers abroad. The Defendants allege that since 1st September 2007 all the contracts (Contracts of Affreightment) for the provision of raw materials and alumina purchased by UCR, are entered into by the company RTI Ltd of Jersey and not by the Plaintiffs.

The Defendants allege further that UCR is the result of a merger of Russian Aluminium Company ("Rusal") with Siberian – Urals Aluminium ("Sual") and Glencore International Plc ("Glencore") in March 2007.    Until then the Defendants 2 and 4 were cooperating with Rusal company.

3.    The Defendants apart from admitting that the Plaintiffs, in the frames of their activities, used to charter ships for the transportation of raw materials and/or bauxite and/or sub-products (eg alumina) from the suppliers to the production units, ignore and therefore deny the rest of the contents of paragraph 2 of the Statement of Claim.

4.    The Defendants deny the contents of paragraph 3 of the Statement of Claim and allege that the Board of Directors of Rusal had at all material times the responsibility of taking management decisions on behalf of the Plaintiffs with regard to chartering works and such decisions were taken upon

3

the relevant presentation/recommendation of the Transport and Logistics Department of Rusal.

5.     The Defendants, from the contents of paragraph 4 of the Statement of Claim admit only that the Defendant 1 was the General Director of Russian Aluminium Management ("RAM").

6.     The Defendants admit paragraph 5 of the Statement of Claim but they allege that the Defendant 3 is neither an officer nor a registered shareholder of the Defendant 2 but was at all material times one of the ultimate beneficial owners of the shares of the Defendant 2.

7.     The Defendants deny that the Defendant 3 was at any time a contracting party of the Plaintiffs or UCR or Rusal to any charter agreements or a shipbroker of the vessels of the UCR Group pursuant to the agreement between RAM and the Defendant 4. The Defendant 4 was a contracting party of RAM and the Defendant 2 was a contracting party of the Plaintiffs pursuant to various Charter Agreements.

Furthermore, the Defendants allege that the Defendant 4 was not actually the only and exclusive shipbroker of UCR.

The Defendants allege that although the Defendant 4 should had been the exclusive shipbroker of Rusal from October 2003 until January 2008 on the basis of relevant agreement between Defendant 4 and RAM, for shipments of bauxite and alumina at least, Rusal was accepting directly tenders from specific shipowners even with regard to these shipments without the intercession of the Defendant 4.  However Rusal was most of the times choosing the tender of Defendant 4 as it was the lowest.

During the period 2004 – 2007 Defendant 4 participated in tenders for the chartering of vessels for cargoes of other raw materials of Rusal such as

4

caustic soda, fuel oil, chemical bauxite as well as for shipments of final product of aluminium to the U.S.A. (which were managed by a separate department of Rusal) which the Defendants 4 sometimes won and sometimes lost.

8.   The Defendants admit the contents of paragraph 7 of the Statement of Claim.

9.   The Defendants admit the contents of paragraph 8 of the Statement of Claim they however allege that the Defendant 5 are not conducting any business since 1998 and/or no cause of action is revealed against them.

10.   The Defendants ignore and deny the contents of paragraph 9 of the Statement of Claim with regard to the working positions of Defendant 1 in Rusal.   As regards the allegation that the Defendant 1 was responsible for the organization of the provision of bauxite and alumina to the production units of the Group, the Defendants allege that this responsibility did not include the transportation of these materials by sea or the chartering of vessels for this purpose, which responsibility belonged to the Transport and Logistics Department of Rusal in which the Defendant 1 has never worked.

11.   The Defendants deny the contents of paragraph 10 of the Statement of Claim. The Defendant 1 has never been involved and/or the Defendants had not any correspondence with the Defendant 1 even during the years 2000 - 2003 in relation to the matter of transportation by sea of raw materials and/or the chartering of vessels for this purpose, because Defendant 1 was only defining the necessary quantities of the raw materials for transportation. The Defendant 1 ceased to work in UCR since July 2007.

12.   The Defendants deny the contents of paragraph 11 of the Statement of Claim. The Defendants deny in particular that the Defendant 3 has at any time contracted with the Plaintiffs.

5

The Defendants allege that by a series of decisions of Directors of Departments of Rusal the Defendant 4 was appointed as the exclusive shipbroker for RAM Ltd for one year from October 2003 under the Brokerage Agreement dated 7.10.2003 signed on behalf of RAM by the Defendant 1 and which was renewed annually by other directors of RAM and/or Rusal until March 2007 when Rusal was merged with Sual and Glencor, whereupon it was renewed by UCR.

13.   From the contents of paragraph 12 of the Statement of Claim, the Defendants admit that the Defendant 4 entered into the Brokerage Agreement with RAM dated 7.10.2003 for a period of one year upon a proposal by three executives of Rusal amongst them also the Defendant 1.

14.   The Defendants deny the contents of paragraph 13 of the Statement of Claim and allege that in all cases the entering into chartering contracts was concluded after submission of tenders by the shipowners cooperating with Rusal, and since 2007 all the chartering decisions were taken exclusively by the Board of Directors of UCR.

15.   The Defendants deny the contents of paragraph 14 of the Statement of Claim, they repeat the contents of paragraph 14 of their Defense and furthermore allege that the Defendant 4 was obliged to ask for tenders only from carriers approved by Rusal and the chartering decisions were taken by 5 different Directors of Rusal who acted consecutively (Defendant 1 was not amongst them) and with the participation of 10 different departments of Rusal.   The Defendants allege that the Chartering Contracts and Fixture Notes were concluded in 2007 with the Defendant 2 as one of the approved carriers of Rusal pursuant to the respective Contracts of Affreightment with the various subsidiaries of Rusal.

6

16.1 From the contents of paragraph 15 of the Statement of Claim, the Defendants admit only that UCR terminated on/or about 23.1.2008 the Brokerage Agreement then in force dated 7.10.2003 and that the Plaintiff 2 filed the complaint referred therein on/or about 30.10.2007 which was settled on 2.11.2007 to the full satisfaction of all parties.

16.2 The Defendants further allege that on 8.11.2007 the Defendant 3 has fully complied with its obligation of full disclosure of all current agreements provided for by the Settlement Agreement dated 2.11.2007 and furthermore ascertained that all current agreements of Companies under his control were assigned to Companies under the control of UCR to the satisfaction of the Plaintiff 2 and/or the UCR.

16.3 The Defendants allege that the Settlement Agreement dated 2.11.2007 provided that the Plaintiff 2 and Rusal would release the Defendants 3 and 4 from every claim including the claim for fraud in relation to the Contracts of Affreightment as well as from the claims in relation to any agreements between a legal person controlled by Rusal and a third person controlled directly or indirectly by the Defendant 3 (as the Defendant 2 was at all material times) or the Director of which is or was the Defendant 3.

16.4 The Defendants allege that the Plaintiffs are prevented by this condition to promote the present action against the Defendants 2-5.

17.   The Defendants ignore the contents of paragraphs 16 and 17 of the Statement of Claim and they deny the same.

7

18.   The Defendants deny the contents of paragraph 18 of the Statement of Claim and they deny in particular that the Defendant 2 has at any time paid to the Defendant 1 any amounts of money constituting financial benefits to the detriment of the Plaintiffs incontractually and/or in violation of the fiduciary relationship of the Defendant 1 with the Plaintiff 2 and/or with fraud and/or with money laundering and/or with tax evasion and they reject the allegations of the Plaintiffs as ungrounded and/or malevolent and/or vindictive.   The Defendants deny that the unsubstantiated allegations documented in paragraph 18 of the Statement of Claim have been allegedly confirmed pursuant to court proceedings filed within the jurisdiction of the Cyprus Courts.

19.   The Defendants allege that the Defendant 2 had never made any payments to the Defendant 1 constituting commissions and/or financial benefits to the detriment of the Plaintiffs and/or connected with the contractual relation and/or cooperation between the Defendants 2 and/or 4 and the Plaintiffs

20.   The Defendants reject the conclusions contained in paragraph 20 of the Statement of Claim as arbitrary, and the calculation of the total value of the dealings of the Defendant 2 with the Plaintiffs 2-4 is irrelevant.

21.   The Defendants allege that the alleged work and/or comparisons and/or calculations of the Plaintiffs listed in paragraph 21 of the Statement of Claim are valueless.   Without prejudice of the generality of their above position, the Defendants allege that:

(a) The calculations referred to poverride the basic parameters associated inter alia with the port dues and charges, agency fees, custom clearing charges, severe weather risks, delays due to absence of railway wagons, port equipment breakdowns, absence or difficulty in

8

finding return cargo, availability of free tonnage at the right time (which was very difficult especially in 2007), demurrages etc.

(b) The Dry Voyage Calculator V3.2 the AXS Marine is just a software program which gives a very rough guidance for the average of freight rates based on the average time charter rates indexes published daily.

(c) The conversion of time charter rate into freight rate is a task requiring extreme specialized knowledge of each ship, knowledge of many other special actual parameters of each separate case and any theoretical result is lacking of practical value in the negotiations of freight rate in each particular case with a particular carrier.

The Defendants 2 and 4 allege that, in any case, have offered to the Plaintiffs the lowest possible rates upon tenders conducted by the Transport and Logistics Department of Rusal and/or UCR.


22.   The Defendants reject the contents of paragraph 22 of the Statement of Claim and allege that the same is based on false and/or entirely theoretical and/or unrealistic particulars and fabricated calculations and/or the Defendants allege that the Defendants 2 and 4 offered to the Plaintiffs the best possible rates in view also of the Plaintiffs declining to enter into long term contracts and their choice of finding a carrier in each particular case.

The Defendants further allege that the Plaintiffs have saved more than $1 billion in freight due to the contracts of affreightment secured by the Defendant 4 as a broker.

9

The Defendants reject all the details, and each one separately, of fraud and/or deceit and/or false representations.   Without prejudice of the generality of their above position, the Defendants allege that:

(a)   The decision for the appointment of the Defendant 4 as the exclusive shipbroker of Rusal was not taken by the Defendant 1 but upon the co-decision of competent executives and Departments of Rusal and was renewed annually by other directors of Rusal and/or UCR without any participation of the Defendant 1.

(b)   Despite the above agreement, the Plaintiffs accepted tenders directly from shipowners but in most cases they were choosing the tenders of the Defendant 4 as more advantageous.

(c)   The Defendant 4 was cooperating with Rusal since 2000 and Rusal considered that their cooperation was so advantageous so as to appoint it in 2003 as an exclusive shipbroker.

(d)   The Defendant 4 was trying always to secure the lowest rates for Rusal, something that Rusal and/or UCR confirmed by independent reports by experts ascertaining that the contracts secured by the Defendant 4 were extremely advantageous for Rusal.

(e)   The Defendant 2 has never made overcharges and its invoices were thoroughly evaluated and approved and settled by the competent departments of the Plaintiffs and/or Rusal and/or UCR.

(f)   The Defendant 2 has never made payments to the Defendant 1 concerning and/or relating to the Plaintiffs and/or Rusal and/or UCR.

(g)   Already since the end of 2003 and/or until 2007 the Defendant 1 had no competency or responsibility or advisory or decision making power whatsoever in relation to the charters made on behalf of the Plaintiffs and/or Rusal and/or UCR Even during the years 2000 – 2003 the Defendant 1 had very limited involvement in the transportation and ship chartering works of Rusal.  Since July 2007 the Defendant 1 was not employed by UCR.

23. The Defendants ignore and deny the contents of paragraphs 23-28 of the Statement of Claim and allege further that the same are irrelevant and/or scandalous and/or filed with a purpose only of making impressions and/or prejudice against the Defendant 1 and/or the Defendants in general.

24. The Defendants ignore and deny the contents of paragraphs 29 until 32 of the Statement of Claim as groundless and/or non-existent and/or reject in particular every allegation for conspiracy and/or obtaining financial benefit to the detriment of the Plaintiffs and/or causing damage to the Plaintiffs.

25. The Defendants further allege that:

(1)   The cooperation and all the from time to time agreements between the Plaintiffs and the Defendants 2 and 4 were concluded and executed with the free will and update knowledge of each side, against good and lawful consideration.

(2)   The cooperation between the Plaintiffs and the Defendants 2 and/or 4 was terminated by UCR in January 2008 unconditionally and without raising claims from either side.

(3)   Due to the settlement of the complaint under No. 07- CIV - 8647 the Plaintiffs and/or UCR and/or any subsidiary of UCR are prevented

11

from raising any claim and/or action against any of the Defendants and/or this action should be for this reason dismissed.

(4)      Any cause of action against the Defendants 3 and 5 is not revealed.

26.   The Defendants allege that the Plaintiffs are not justified for the remedies applied for and/or for any remedies whatsoever.

-------------------------------------

Chrysses Demetriades & Co LLC

Advocates for the Defendants 2 - 5

Filed on ......................... 2011.

### R E G I S T R A R

To

1. Messrs Michalis Vorkas and Associates LLC
Advocates for the Plaintiffs
95, Arch. Makarios III
Charitini Building 1st Floor
Ofice 102
Nicosia
C.B. 347

12

2. Mr. Dimitri Kronidi

Advocate for the Defendant 1

1 Mpoumpoulinas Street

Mpoumpoulinas Court

Office no. 32

3rd floor

Nicosia

\\filesrv-cy\documents\files\litigation\litigation\12584\γενικό έγγραφο- translation of defence_ek_52.doc

<u>ΚΛΙΜΑΚΑ: €500.000 - € 2.000.000</u>

(Τύπος J.191 G)

<u>Αριθ.-28  ΕΙΔΟΠΟΙΗΣΗ ΕΦΕΣΗΣ (Δ 35, θ3)</u>

**Πολιτική Έφεση Αρ**.................2012

Στο Ανώτατο Δικαστήριο

ή

(Ενώπιον του Προέδρου του Επαρχιακού Δικαστηρίου)

Κατ' Έφεση από το Επαρχιακό Δικαστήριο **Λευκωσίας** στην Αγωγή με Αρ. **3582/2011**

ή

(Κατ' Έφεση από το Πταισματοδικείο στην Αγωγή Επαρχιακού Δικαστηρίου με Αρ.                )

**Μεταξύ**

1. RUAL TRADE LTD
2. ALUMINA & BAUXITE COMPANY LTD
3. CALIBRE PROPERTIES WORLDWIDE LTD
4. MONT CERVIN - CONSULTADORIA E SERVICOS SOCIEDADE UNIPESSOAL, LDA

Εναγόντων/Εφεσιβλήτων

και

1. ANDREI RAIKOV (ANDREY RAYKOV)
2. ALDI MARINE LTD
3. DMITRY OSIPOV (DMITRI EVGENIEVICH OSIPOV)
4. NATICA SHIPPING LTD
5. NATICA SHIPPING & TRADING LTD
6. ΕΛΛΗΝΙΚΗ ΤΡΑΠΕΖΑ ΔΗΜΟΣΙΑ ΕΤΑΙΡΕΙΑ ΛΤΔ

Εναγόμενων/Εφεσειόντων

Έστω σε γνώση σας ότι **οι Εναγόμενοι 2**, ALDI MARINE LTD με την παρούσα εφεσιβάλλουν την ενδιάμεση απόφαση (ή διαταγή) που δόθηκε στην πιο πάνω αγωγή κατά τις 11.4.2012, πιστόν αντίγραφο της οποίας επισυνάπτεται στην παρούσα Ειδοποίηση Έφεσης.

Έστω σε γνώση σας ότι η Έφεση είναι εναντίον ολοκλήρου της εν λόγω απόφασης (ή διαταγής)

**Διεύθυνση Επίδοσης:** η Δικηγορική Εταιρεία Chrysses Demetriades & Co. LLC, Γωνία Λεωφ. Μακαρίου Γ & Αγίας Ελένης, GALAXIAS CENTER, 3ος όροφος, Διαμ. 301Α, Λευκωσία.
**Προς:**
κ.κ. Μιχάλης Βορκάς & Συνεργάτες Δ.Ε.Π.Ε
Λεωφ. Αρχιεπισκόπου Μακαρίου Γ΄ 95
Πολυκατοικία Χαριτίνη
1ος όροφος
Γραφείο 102
Λευκωσία
Δ.Θ. 347

---

*Ενάγων ή Εναγόμενος, ως η εκάστοτε περίπτωση.
†Διαγράψατε εάν δεν χρειάζεται.
‡Δηλώσατε τους όρους του μέρους εκείνου της αποφάσεως ή διαταγής δια το οποίον γίνεται παράπονον.

**Περαιτέρω δε έστω εις γνώσιν υμών ότι οι λόγοι της Εφέσεως του και τα αιτιολογικά τούτων είναι (α):**

**Πρώτος Λόγος**

Εσφαλμένα και με πλήρη παραβίαση των συνταγματικών και/ή εννόμων δικαιωμάτων των Εφεσειόντων βασίστηκε το Δικαστήριο στην ένορκη δήλωση ημερομηνίας 8.6.2011 του κ. Αβετή Τσουλτζιάν υπαλλήλου της Ελληνικής Τράπεζας ως μέρος του αποδεικτικού υλικού της αίτησης για προσωρινό διάταγμα ημερομηνίας 23.5.2011.

**Αιτιολογία**

1.    Η αποκάλυψη των τραπεζικών λογαριασμών και συναλλαγών του Εναγόμενου 1 έγινε χωρίς σχετικό δικαστικό διάταγμα και κατά παράβαση του δικαιώματος ιδιωτικής ζωής των Εφεσειόντων και γι' αυτό το Δικαστήριο όφειλε να την αγνοήσει.

2.    Η αποκάλυψη των τραπεζικών λογαριασμών και συναλλαγών του Εναγόμενου 1 έγινε κατά παράβαση του συνταγματικού δικαιώματος ακρόασης του Εναγόμενου 1 και/ή των Εφεσειόντων και/ή ολοκληρώθηκε κατά τρόπο τελεσίδικο και αμετάκλητο κατά παράβαση του δικαιώματος του Εναγόμενου 1 και/ή των Εφεσειόντων ν' ακουστούν προηγουμένως από το Δικαστήριο και γι' αυτό το Δικαστήριο όφειλε να την αγνοήσει.

3.    Η αποκάλυψη των τραπεζικών λογαριασμών και συναλλαγών του Εναγόμενου 1 ουδέποτε αποτέλεσε μέρος του αποδεικτικού υλικού της

Chrysses Demetriades & Co LLC
Δικηγόροι Εφεσειόντων

Καταχωρίστηκε την ....../....../2012

Πιστό Αντίγραφο

Πρωτοκολλητής                                          Πρωτοκολλητής

-----------------------------------------------------------------------------------------------

(α) Ο κάθε λόγος και τα αιτιολογικά του πρέπει νε εκτίθενται ξεχωριστά και πλήρως αίτησης και/ή της διαδικασίας για προσωρινό διάταγμα ημερομηνίας 23.5.2011 και/ή η ένορκη δήλωση ημερομηνίας 8.6.2011 την οποία το Δικαστήριο έλαβε υπόψη και το παράνομα συνταχθέν «διάταγμα» ημερομηνίας 23.5.2011 (βλ. Δεύτερο Λόγο Έφεσης πιο κάτω) ουδέποτε επιδόθηκαν στον Εναγόμενο 1 και/ή στους Εφεσείοντες κατά το χρόνο που το διάταγμα ημερομηνίας 14.6.2011 ήταν επιστρεπτέο (όπως θα όφειλε να είχε επιδοθεί αν αποτελούσαν μέρος του αποδεικτικού υλικού δυνάμει της Δ.48 Θ.13).

4.    Ως εκ τούτου, κατά το χρόνο καταχώρισης των ενστάσεων (αλλά και κατά το χρόνο ακρόασης της αίτησης για προσωρινό διάταγμα) οι Εφεσείοντες δεν γνώριζαν περί της καταχώρισης της ένορκης δήλωσης ημερομηνίας 8.6.2011 και δεν μπορούσαν να τη θεωρούν ως μέρος του αποδεικτικού υλικού επί του οποίου όφειλαν και μπορούσαν να είχαν τοποθετηθεί.

5.    Οι Εφεσίβλητοι απέσυραν αίτηση για άδεια καταχώρισης συμπληρωματικής ένορκης δήλωσης επειδή ακριβώς το Δικαστήριο υπέδειξε ότι θα λάμβανε υπόψη μόνο το περιεχόμενο της αρχικής ένορκης δήλωσης που υποστήριξε την αίτηση.   Εντούτοις στην συνέχεια έλαβε υπόψη ένορκη δήλωση που καταχωρίστηκε χωρίς άδεια, χωρίς σχετικό διάταγμα και χωρίς να γνωρίζουν οι Εφεσείοντες περί της καταχώρισης της.

**Δεύτερος Λόγος**

Παρ' ότι το Δικαστήριο αναγνωρίζει ότι ουδέποτε εκδόθηκε δικαστικό διάταγμα αποκάλυψης των λογαριασμών και συναλλαγών του Εναγόμενου 1 και ότι «για άγνωστο λόγο» το συνταχθέν διάταγμα που οι Εφεσίβλητοι εν γνώσει τους παράνομα

χρησιμοποίησαν και επέδωσαν στην Ελληνική Τράπεζα περιείχε το μη εκδοθέν Αιτητικό «Α» της μονομερούς αίτησης ημερομηνίας 23.5.2011, προχώρησε και έλαβε υπόψη του το μαρτυρικό υλικό που παράνομα και με παραβίαση των συνταγματικών δικαιωμάτων των Εφεσειόντων κατατέθηκε στο δικαστικό φάκελο.

**Αιτιολογία**

Το «διάταγμα» ημερομηνίας 23.5.2011 συντάχθηκε παράνομα χωρίς σχετική δικαστική διαταγή, χρησιμοποιήθηκε παράνομα από τους Εφεσίβλητους, οι δε Εφεσείοντες δεν γνώριζαν περί της «έκδοσης» του, ούτε περί της σύνταξης του, ούτε περί της καταχώρισης της ένορκης δήλωσης ημερομηνίας 8.6.2011, αφού ουδέποτε αυτά τους επιδόθηκαν.  Ως εκ τούτου, η εκδίκαση της αίτησης έγινε με πλήρη παραβίαση των συνταγματικών δικαιωμάτων των Εφεσειόντων και του Εναγόμενου 1 οι οποίοι έλαβαν μέρος στη δικαστική διαδικασία χωρίς να γνωρίζουν ποιο αποδεικτικό υλικό είχε κατατεθεί και ποιο υλικό θα θεωρούσε τελικά το Δικαστήριο ως μέρος της διαδικασίας του προσωρινού διατάγματος, το δε συνταχθέν «διάταγμα», συντάχθηκε και εκτελέστηκε εναντίον τους χωρίς αυτοί να ακουστούν.

**Τρίτος Λόγος**

Εσφαλμένα αναφέρει το Δικαστήριο ότι η Ελληνική Τράπεζα συμμορφώθηκε με το διάταγμα ημρ. 8.6.2011 που της επιδόθηκε μη γνωρίζοντας ότι στην πραγματικότητα αυτό ουδέποτε εκδόθηκε.

**Αιτιολογία**

Στην πραγματικότητα η Ελληνική Τράπεζα γνώριζε ότι το διάταγμα ουδέποτε εκδόθηκε όπως αποδεικνύεται από το πρακτικό του Δικαστηρίου ημρ. 14.6.2011 και εντούτοις καταχώρισε ένορκη δήλωση αποκαλύπτοντας τις τραπεζικές καταστάσεις λογαριασμού του Εναγόμενου 1 κατά παράβαση νόμου και των συνταγματικών δικαιωμάτων των Εφεσειόντων και του Εναγόμενου 1.

**Τέταρτος Λόγος**

Με βάση την ίδια την απόφαση προκύπτει ξεκάθαρα ότι η μαρτυρία που προέκυψε από τις ένορκες δηλώσεις και τα Τεκμήρια που συνόδευαν την αίτηση, ήταν πολύ γενικόλογη και ανεπαρκής για να ικανοποιήσει εκ πρώτης όψεως τις δυο προϋποθέσεις του άρθρου 32 και ως εκ τούτου το διάταγμα δεν έπρεπε να εκδοθεί και πολύ περισσότερο να καταστεί απόλυτο.

**Αιτιολογία**

Αποδεικνύεται ως εκ τούτου ότι το διάταγμα έπρεπε να μην είχε εκδοθεί στις 14.6.2011 και να είχε ακυρωθεί στις 11.4.2012 επειδή το μόνο αποδεικτικό υλικό που νόμιμα μπορούσε να χρησιμοποιηθεί και επί του οποίου ακούστηκαν οι Εφεσείοντες και ο Εναγόμενος 1, δεν επαρκούσε ούτε κατά το ελάχιστο έτσι ώστε να δικαιολογείτο η έκδοση και η μονιμοποίηση του διατάγματος.

**Πέμπτος Λόγος**

Παρ' ότι το Δικαστήριο διαπίστωσε, όπως αναφέρεται πιο πάνω ότι, η μαρτυρία ήταν γενικόλογη και ανεπαρκής, παρέλειψε να διαπιστώσει συγκεκριμένα ότι η μαρτυρία που υποστήριξε τη μονομερή αίτηση αποτελείτο από (1) μια (κατασκευασμένη) ανώνυμη επιστολή που συντάχθηκε 3 χρόνια μετά που ο Εναγόμενος 1 σταμάτησε να εργάζεται στην Rusal και οι Εναγόμενοι 2-4 είχαν πάψει να συνεργάζονται με τη Rusal και έτσι ήταν φανερό ότι κατασκευάστηκε μόνο για να εξασφαλίσει το προσωρινό διάταγμα και (2) σε κατάσταση λογαριασμού στην οποία φαινόταν η μεταφορά 3 ποσών συμποσούμενων σε \$669.022 στο λογαριασμό του Εναγόμενου 1 χωρίς να προκύπτει η πηγή προέλευσης τους.

**Αιτιολογία**

Τα πιο πάνω υποδείχθηκαν επαρκώς με την Ένσταση αλλά αγνοήθηκαν από το Δικαστήριο χωρίς αιτιολογία, ενώ αν επισημαίνονταν και αξιολογούνταν επαρκώς θα οδηγούσαν στην ακύρωση του διατάγματος.

Έκτος Λόγος

Το Δικαστήριο εσφαλμένα αγνόησε συλλήβδην και/ή απέρριψε όλους τους λόγους ένστασης και την υποστηριχτική αυτών μαρτυρία και ιδίως αγνόησε:

(1) Το αδιαμφισβήτητο γεγονός ότι η μόνη συμφωνία μεταξύ Εφεσιβλήτων και Εναγομένων 4 που συνήφθη με τη μερική συμβολή του Εναγόμενου 1 αφορούσε την περίοδο 2003 – 2004, ενώ οι ισχυριζόμενες προμήθειες καταβλήθηκαν το 2007.

(2) Το αδιαμφισβήτητο γεγονός ότι ο Εναγόμενος 1 από τα τέλη του 2003 δεν ήταν αναμειγμένος στις εργασίες ναύλωσης της Rusal και ότι μεταξύ των ετών 2000 – 2003 η ανάμιξη του ήταν πολύ περιορισμένη.

(3) Το γεγονός ότι ο Εναγόμενος 1 δεν εργοδοτείτο από τον Όμιλο Εταιρειών U.C. Rusal (στον οποίο οι Εφεσίβλητοι ισχυρίζονται ότι ανήκουν) από τον Ιούλιο του 2007, όταν διορίστηκε Γενικός Διευθυντής της εταιρείας United Oil Group (UOG) η οποία ανήκει στο Γενικό Διευθυντή της UCR κ. Ολεγκ Ντεριπάσκα και ότι το Φεβρουάριο 2011 απολύθηκε παράνομα και είναι σε εξέλιξη δικαστικές διαδικασίες στη Μόσχα μεταξύ τους.

Όλα τα πιο πάνω αποδείχτηκαν με παρουσίαση των σχετικών Τεκμηρίων από τους Εφεσείοντες.

Αιτιολογία

Όλα τα πιο πάνω ήταν συντριπτικά και καταδεικνύουν τόσο το ανυπόστατο όσο και την κακοπιστία και την εκδικητικότητα στην καταχώριση της αγωγής. Το Δικαστήριο ούτε καν τα σχολίασε, ενώ αν τα μελετούσε θα προχωρούσε με την ακύρωση του

διατάγματος.

**Έβδομος Λόγος**

Εσφαλμένα το Δικαστήριο αγνόησε το γεγονός ότι ο αντιπρόσωπος των Εφεσίβλήτων 2 και του Ομίλου εταιρειών U.C. Rusal στον οποίο οι Εφεσίβλητοι ισχυρίζονται ότι ανήκουν, υπέγραψε επιστολή ημερομηνίας 8.11.2007 με την οποία οι Εφεσίβλητοι 2 παραδέχτηκαν ότι ο Εναγόμενος 3, εκπλήρωσε τους  όρους της Συμφωνίας Συμβιβασμού ημερομηνίας 2.11.2007 και οι Εφεσίβλητοι απάλλαξαν ρητά τους Εναγόμενους 3 και 4 και κάθε ελεγχόμενη απ' αυτούς νομική οντότητα,όπως τους Εναγόμενους 2, από κάθε αξίωση.

**Αιτιολογία**

Η πιο πάνω απαλλαγή που αποδείχτηκε με κατάθεση σχετικών Τεκμηρίων στην Ένσταση και δεν αμφισβητήθηκε από τους Εφεσίβλητους ήταν αρκετή για να οδηγήσει από μόνη της στο συμπέρασμα ότι οι Εφεσίβλητοι δεν δικαιούντο να καταχωρίσουν αγωγή κατά των Εφεσείοντων και των Εναγομενων 3-5 και συνεπώς δεν πληρούνται οι δύο πρώτες προϋποθέσεις του άρθρου 32 του Ν14/60.

**Όγδοος Λόγος**

Εσφαλμένα και αναιτιολόγητα έκρινε το Δικαστήριο ότι όλα τα πιο πάνω γεγονότα (που εκτίθενται στον Έκτο και Έβδομο Λόγο Έφεσης) που όχι μόνο αποδείχτηκαν από τους Εφεσείοντες αλλά και δεν αποκαλύφθηκαν από τους Εφεσίβλητους ως ήταν η υποχρέωση τους, δεν ήταν ουσιώδες να αποκαλυφθούν και μάλιστα χωρίς αναφορά σε οποιοδήποτε από τα πιο πάνω γεγονότα.

**Αιτιολογία**

Ο λόγος της συλλήβδην απόρριψης του λόγου ένστασης μη αποκάλυψης των πιο πάνω είναι άγνωστος καθ' ότι το Δικαστήριο αναφέρει ότι απλά «δεν ήταν αρκούντως σημαντικά».

Στην πραγματικότητα αν το Δικαστήριο γνώριζε ότι οι ισχυριζόμενες "προμήθειες" καταβλήθηκαν σε χρόνο που ο Εναγόμενος 1 δεν είχε οποιοδήποτε ρόλο στην ανανέωση της Συμφωνίας Ναύλωσης (Brokerage Agreement) με την Εναγόμενη 4 και δεν ήταν αναμεμειγμένος με ναυλώσεις και ότι οι Εφεσίβλητοι είχαν ρητά απαλλάξει τους Εφεσείοντες απ' οποιαδήποτε αξίωση κ.ο.κ, η κρίση του θα μπορούσε ξεκάθαρα να είχε επηρεαστεί κατά την έκδοση του διατάγματος.

Ένατος  Λόγος

Η διαφοροποίηση του διατάγματος κατά τρόπο που να απαλλάσσει τον Εναγόμενο 1 είναι παράλογη και αδικαιολόγητη.

Αιτιολογία

Ακόμα και αν οι αιτιάσεις των Εφεσίβλητων ευσταθούσαν, αυτός που καρπώθηκε με βάση τους ισχυρισμούς τους το ποσό, είναι ο Εναγόμενος 1 και όχι οι Εφεσείοντες. Το Δικαστήριο εντούτοις περιόρισε το διάταγμα σε $10.227 σε ότι αφορά τον Εναγόμενο 1 επειδή τόσα βρέθηκαν στο λογαριασμό του.  Αυτό δείχνει την προχειρότητα κατά τη σύνταξη της απόφασης που εκδόθηκε πολύ καθυστερημένα δηλαδή 5 μήνες και 17 μέρες από την Ακρόαση και υπό την πίεση διαταγής του Ανωτάτου Δικαστηρίου για έκδοση της μέχρι τις 31.3.2012.

Δέκατος Λόγος

Εσφαλμένα έκρινε το Δικαστήριο ότι οι Εφεσίβλητοι αποκάλυψαν εκ πρώτης όψεως ορατή πιθανότητα επιτυχίας.

Αιτιολογία

1.      Ακόμα και αν είχε αποδεκτεί εκ πρώτης όψεως παροχή φιλοδωρημάτων από τους Εφεσείοντες προς τον Εναγόμενο 1 αφορώσα τη συνεργασία μεταξύ Εφεσιβλήτων και Εφεσειόντων (που δεν είναι αποδεκτό) ουδόλως απέδειξαν ή υπέδειξαν οι Εφεσίβλητοι κατά ποιο τρόπο υπέστησαν αντίστοιχη ζημιά και σε καμία περίπτωση υπέδειξαν ότι θα είχαν καταβάλει στους Εφεσείοντες αμοιβή μειωμένη κατά το ποσό των \$669.022.

2.      Οι Εφεσείοντες και ο Εναγόμενος 1 παρουσίασαν αδιαμφισβήτητα στοιχεία και γραπτή μαρτυρία του ουσιώδους χρόνου που αποδεικνύουν ότι οι αμοιβές των Εφεσειόντων ήταν οι πιο συμφέρουσες (για τους Εφεσίβλητους) στην αγορά και ότι εκθέσεις ανεξάρτητων συμβούλων των Εφεσιβλήτων παρουσίαζαν τεράστια κέρδη των Εφεσιβλήτων εκ της συνεργασίας τους με τους Εφεσείοντες και ότι ακόμα, παρά το Brokerage Agreement που υπογράφτηκε το 2003 και ανανεωνόταν ετήσια, οι Εφεσίβλητοι διόριζαν μεσίτες (brokers) μετά από προσφορές τις οποίες οι Εφεσείοντες κέρδιζαν τις περισσότερες φορές ως οι χαμηλότεροι προσφοροδότες.  Η μαρτυρία αυτή (που ήταν η μόνη επί του θέματος ενώπιον του Δικαστηρίου) αγνοήθηκε πλήρως και/ή δεν σχολιάστηκε από το Δικαστήριο.

3.      Με την Έκθεση Απαίτησης τους οι Εφεσίβλητοι προσπάθησαν να συμπληρώσουν το εμφανέστατο κενό που αποκάλυπτε η μονομερής αίτηση και ένορκη δήλωση που δεν αποκάλυπτε ζημιά των Εφεσιβλήτων εκ της παροχής των υποτιθέμενων φιλοδωρημάτων από τους Εφεσείοντες στον Εναγόμενο 1, ισχυριζόμενοι πρώτη φορά ότι οι Εφεσείοντες τους υπερχρέωσαν με εντελώς αβάσιμο ποσό. Όμως η μαρτυρία που είχε ενώπιον του το Δικαστήριο δεν αναφερόταν ουδόλως σε υπερχρεώσεις και έτσι παρέμεινε μετέωρη η αξίωση των Εφεσιβλήτων αφού απέτυχαν να υποδείξουν με ένορκη μαρτυρία το λόγο ή το ύψος της υποτιθέμενης ζημιάς τους.

10

Chrysses Demetriades & Co LLC

Δικηγόροι Εφεσειόντων

# ΠΡΩΤΟΚΟΛΛΗΤΗΣ

\\Filesrv-cy\Documents\Files\Litigation\Litigation\12584\Καταχώρηση- Ειδοποίηση Έφεσης Δ-35-Θ-3_EK_77-1.doc

11

Αριθ.- 5  Ένορκη Δήλωση Επίδοσης

Εγώ,                                                      , επιδότης ορκίζομαι και λέγω

ότι παρέδωσα επίσημο αντίγραφο της Ειδοποίησης Έφεσης με αντίγραφο της αναφερόμενης σ'
αυτήν απόφαση ( ή διαταγή) την Αγωγή με Αρ.                         του Πρωτοκολλητείου

στη (α)

την                                      2012              ,αφού  την άφησα στην παρουσία

του                                      από                        ,στον Εφεσίβλητο (β)

(γ)                                      από

για τον Εφεσίβλητο                                                     τον οποίο
δεν βρήκα

στην κατοικία του, στον συνήθη τόπο εργασίας του, του αναφερομένου

ο οποίος είναι (δ)                                        του εν λόγω Εφεσίβλητου

Η παρούσα Ένορκη κατάθεση οπισθογραφήθηκε σε αντίγραφο του εγγράφου που επιδόθηκε.


                                                         (Υπογρ.)


Υπόγραψε και ορκίστηκε ενώπιον μου στη                         την            2012


Πρωτοκολλητής
------------------------------------------------------------------------------------------------------------
(α) Πόλη ή χωριό όπου έγινε η επίδοση.
(β) Απαλείψατε τη λέξη " Εφεσίβλητο" αν δεν εφαρμόζεται.
(γ) Διαγράψετε μέχρι το τέλος, αν δεν εφαρμόζεται.
(ε) Δηλώσετε τη συγγένεια του προς τον Εφεσίβλητο για τον οποίο η Ειδοποίησης έφεσης δόθηκε.

**SCALE: €500.000 - € 2.000.000**

(Type J.191 G)

Number.-28  NOTICE OF APPEAL (O 35. R.3)

**Civil Appeal No**....................

In the Supreme Court

or

(Before the President of the District Court)

Appealing from the District Court of **Nicosia** in the Action No. **3582/2011**

Or

(Appealing against the Magistrates' Court in the Action of the District Court with No.      )

**Between**

1. RUAL TRADE LTD
2. ALUMINA & BAUXITE COMPANY LTD
3. CALIBRE PROPERTIES WORLDWIDE LTD
4. MONT CERVIN - CONSULTADORIA E SERVICOS SOCIEDADE UNIPESSOAL, LDA

Plaintiffs/Respondents

And

1. ANDREI RAIKOV (ANDREY RAYKOV)
2. ALDI MARINE LTD
3. DMITRY OSIPOV (DMITRI EVGENIEVICH OSIPOV)
4. NATICA SHIPPING LTD
5. NATICA SHIPPING & TRADING LTD
6. HELLENIC BANK PUBLIC COMPANY LTD

Defendants /Appellants

Let it be brought to your knowledge that **Defendants 2,** ALDI MARINE LTD hereby appeal against the interim judgment (or order) issued in the above action on  .............., true copy of which is attached to this present Notice of Appeal.

Let it be brought to your knowledge that the Appeal is against the whole of the said judgment (or order)

Let it be brought to your knowledge that the Appeal is against that part of the said judgment (or order) which decides (or orders) that the cause of the conspiracy between the Defendants is dismissed and/or the action against Defendant 2 is dismissed and/or as per the grounds of the Appeal.

**Address for service:** the Law Firm of Chrysses Demetriades & Co. LLC, Corner of Makarios C Avenue & St. Helen, GALAXIAS CENTER, 3rd floor, Apart. 301A, Nicosia.
 **To:**

Messrs Michael Vorkas & Associates LLC
95 Arch. Makarios C Avenue
Haritini Building, 1st floor, Office 102
Nicosia, C. B 347

_____

*Plaintiff or Defendant, as per each case.
†Delete if not necessary.
‡State the terms of that part of the judgment or order for which the complaint is made.

**Further let it be brought to your knowledge that the Grounds of Appeal and their justification are (a):**

## First Ground

The Court wrongly and in breach of the Constitutional and/or legal rights of the Appellants relied on the affidavit dated 8.6.2011 of Mr. Aveti Tsoultzian, an employee of the Hellenic Bank as part of the evidence of the application dated 23.5.2011 for an interim order.

## Justification

1.    The discovery of the bank accounts and transactions of Defendant 1 was made without a relevant court order and in breach of the Appellants' right of private life and for this reason the Court ought to have ignored it.

2.    The discovery of the bank accounts and transactions of Defendant 1 was made in breach of the constitutional right of Defendant 1 to be heard and/or of the Appellants and/or it was completed in a final and irreversible manner and in breach of the right of Defendant 1 and/or of the Appellants to be previously heard by the Court and for this reason the Court ought to have ignored it.

3.    The discovery of the bank accounts and transactions of Defendant 1 never constituted part of the evidence of the application and/or of the proceedings for an interim order dated 23.5.2011 and/or the affidavit

Chrysses Demetriades & Co LLC
Lawyers of Appellants 2

Filed on ....../....../2012
True Copy
Registrar                                                    Registrar
------------------------------------------------------------------------------------------

(a) Each ground and its justification must be set out separately and fully

dated 8.6.2011, which the Court took into consideration, and the illegally drawn up «order» dated 23.5.2011 (see Second Ground of Appeal hereinbelow) were never served upon Defendant 1 and/or upon the Appellants at the time when the order dated 14.6.2011 was returnable (as they ought to have been served if they constituted part of the evidence pursuant to O.48 R.13).

4.  Therefore, at the time of filing of the oppositions (but also at the time of the hearing of the application for an interim order) the Appellants were not aware of the filing of the affidavit dated 8.6.2011 and they could not consider it as being part of the evidence upon which they ought to have and could have commented on.

5.  The Respondents have withdrawn an application for leave to file supplementary affidavit, because the Court pointed out that it would take into consideration only the content of the first affidavit that supported the application and despite that, afterwards it took into consideration the affidavit that was filed without leave, without any relevant order and without the Appellants knowing of its filing.

**Second Ground**

Although the Court recognizes that no court order was ever issued for the discovery of the accounts and transactions of Defendant 1 and that "for an unknown reason" the drawn up order, which the Respondents knowingly and illegally used and served upon the Hellenic Bank, contained the Prayer «A» of the ex parte application dated 23.5.2011, which was not issued, it proceeded and it took into consideration the evidence, which was illegally and in violation of the constitutional rights of the Appellants filed in the court file.

**Justification**

The «order» dated 23.5.2011 was illegally drawn up without any relevant court order, it was illegally used by the Respondents, the Appellants were not aware of its «issuance» nor of its drawing up, nor of the filing of the

affidavit dated 8.6.2011, since none of them were served upon them. Therefore, the adjudication of the application was carried out in a complete violation of the constitutional rights of the Appellants and of Defendant 1, who participated in the court proceedings without knowing what evidence had been adduced and what material the Court would finally consider as being part of the proceedings of the interim order and the drawn up «order», was drawn up and executed against them without them being heard.

**Third Ground**

The Court wrongly mentions that Hellenic Bank complied with the order dated 8.6.2011 which was served on them, not knowing that in fact this order was never issued.

**Reasoning**

In fact, Hellenic Bank knew that the order was never issued as it is proved by the Court's record dated 14.6.2011 and instead filed an affidavit, disclosing Defendant's 1 bank statements in breach of the law and constitutional rights of the Appellants and Defendant 1.

**Fourth Ground**

Based on the judgment itself, it clearly arises that the evidence, which arose from the affidavits and the Exhibits which accompanied the application, was vague and insufficient in order to prima facie satisfy the two requirements of article 32 and therefore the order should not have been issued, let alone to have been rendered absolute.

**Justification**

It is therefore proved that the order should not have been issued on 14.6.2011 and it should have been cancelled on 11.4.2012, because the only evidence, which could be legally used and upon which the Appellants and Defendant 1 were heard, was not even the least sufficient in order to justify the issuance and finalization of the order.

**Fifth Ground**

Despite the fact that the Court established, as mentioned above, that the testimony was vague and insufficient, it omitted to establish in particular that the testimony that supported the ex parte application consisted of (1) a (fabricated) anonymous letter that was drafted 3 years after Defendant 1 stopped working at Rusal and Defendants 2-4 stopped cooperating with Rusal and so it was obvious that the only reason it was fabricated  was in order to obtain the interim order and (2) a bank statement in which it appeared the transfer of 3 sums amounting to $669.022 at the account of Defendant 1 without showing the source of their origin.

**Justification**

The above were clearly pointed out by the Appellants in their Opposition, but were ignored by the Court without any explanation, whereas if they had been pointed out and duly evaluated by the Court, they would have led to the annulment of the interim order.

**Sixth Ground**

The Court wrongly ignored altogether and/or it dismissed all the grounds of opposition and the supporting evidence thereof and it particularly ignored:

(1) The undeniable fact that the only agreement between the Appellants and Defendants 4, which was concluded with the partial contribution of Defendant 1, concerned the period 2003 – 2004, while the alleged commissions were paid in 2007.

(2) The undeniable fact that from the end of 2003 Defendant 1 was not involved in the chartering business of Rusal and that between the years of 2000 – 2003 his involvement was very restricted.

(3) The fact that Defendant 1 was not employed by the Group of Companies U.C. Rusal (in which the Respondents allege that they belong) since July 2007, when he was appointed as a General Director

of the company United Oil Group (UOG), which belongs to the General Director of UCR Mr. Oleg Deripasca and that in February 2011 he was illegally dismissed and that court proceedings in Moscow are pending between them.

All the above were proved by adducing the relevant Exhibits by the Appellants.

**Justification**

All the above were so over-whelming and prove both the lack of any basis as well as the bad faith and the vindictiveness in filing the action. The Court did not even comment on these, whereas if he had examined them he would have proceeded with the cancellation of the order.

Seventh Ground

The Court wrongly ignored the fact that the agent of Respondents 2 and of the Group of Companies U.C. Rusal, in which the Respondents allege that they belong, signed a letter dated 8.11.2007 by which Respondents 2 admitted that Defendant 3 fulfilled the terms of the Settlement Agreement dated 2.11.2007, and the Respondents expressly discharged Defendants 3 and 4 and every legal entity controlled by them, like Defendants 2, from every claim.

Justification

The above Settlement Agreement that was proved by filing relevant Exhibits at the Opposition and which was not disputed by the Respondents, was enough to lead by itself to the conclusion that the Respondents were not allowed to file a claim against the Appellants and Defendants 3-5 and consequently the first two prerequisites of Section 32 of Law 14/60, are not satisfied.

**Eighth Ground**

The Court wrongly and unjustifiably decided that all of the above facts, which were not only proved by the Appellants but they were not disclosed by the Respondents as they were obliged so to do, were not material to be disclosed and yet without even referring to any of the above facts.

**Justification**

The reason, of dismissing the objection of non-disclosure of the above altogether, is unknown, because the Court simply states that "they were not adequately important".

In fact had the Court been aware that the alleged "commissions" were paid at a time when Defendant 1 did not have any role in the renewal of the Brokerage Agreement with Defendant 4, and was not involved in chartering, that the Respondents had expressly discharged the Appellants from any claim etc, its decision could have been clearly affected while issuing the order.

**Ninth Ground**

The differentiation of the order in a manner discharging Defendant 1 is irrational and unjustified.

**Justification**

Even if the justifications of the Respondents were valid, the person who obtained the amount according to their allegations is Defendant 1 and not the Appellants. However, the Court restricted the order concerning Defendant 1 to $10.227, because this was how much it was found in his account. This shows the sloppiness while drafting the judgment, which was issued very late on 11.4.12 i.e. 5 months and 17 days from the hearing and under the pressure of the order of the Supreme Court to issue the same until 31.3.2012.

**Tenth Ground**

The Court wrongly decided that the Respondents disclosed a prima facie visible possibility of success.

**Justification**

1.  Even if a provision of bonuses from the Appellants to Defendant 1, concerning the cooperation between the Respondents and the Appellants (which is not acceptable), was prima facie proved, the Respondents did not at all prove or indicated in what way they sustained the respective damage and in no way did they indicate that they would have paid to the Appellants a fee reduced by the amount of $669.022.

2.  The Appellants and Defendant 1 presented undisputed evidence and written testimony of the material time, which prove that the Appellants' fees were the more profitable (for the Respondents) in the market and that reports of independent consultants of the Respondents presented huge profits of the Respondents from their cooperation with the Appellants, and yet, despite the Brokerage Agreement, which was signed in 2003 and was annually renewed, the Respondents were appointing brokers following offers, which the Appellants won most of the time as being the lowest bidders. This evidence (which was the sole evidence on this matter before the Court), was completely ignored and/or was not commented by the Court.

3.  By their Statement of Claim, the Respondents attempted to complete the obvious gap that their ex parte application and affidavit had, in that it did not disclose any loss of the Respondents by the granting of the alleged commissions by the Appellants to Defendants 1,thus claiming for the first time that the Appellants have overcharged them with completely ungrounded amount. But the testimony that the Court had before it did not at all refer to any overcharging, therefore the

Respondents' claim remained unbased since they failed to show by an affidavit the reason or the level of their alleged loss.

Chrysses Demetriades & Co LLC

Lawyers of Appellants 2

**REGISTRAR**

\\Filesrv-cy\Documents\Files\Litigation\Litigation\12584\Καταχώρηση- Ειδοποίηση Έφεσης Δ-35-Θ-3_ΕΚ_77.doc

Number <u>- 5  Affidavit of Service</u>

Εγώ,                                                    , επιδότης ορκίζομαι και λέγω

ότι παρέδωσα επίσημο αντίγραφο της Ειδοποίησης Έφεσης με αντίγραφο της αναφερόμενης σ'
αυτήν απόφαση ( ή διαταγή) την Αγωγή με Αρ.                      του Πρωτοκολλητείου

στη (α)

την                               2011        ,αφού  την άφησα στην παρουσία

του                              από                       ,στον Εφεσίβλητο (β)

(γ)                              από

για τον Εφεσίβλητο                                         τον οποίο
δεν βρήκα

στην κατοικία του, στον συνήθη τόπο εργασίας του, του αναφερομένου

ο οποίος είναι (δ)                     του εν λόγω Εφεσίβλητου

Η παρούσα Ένορκη κατάθεση οπισθογραφήθηκε σε αντίγραφο του εγγράφου που επιδόθηκε.


(Υπογρ.)



Υπόγραψε και ορκίστηκε ενώπιον μου στη              την        2012


_____
                                                         Πρωτοκολλητής
-----------------------------------------------------------------------------------
(α) Πόλη ή χωριό όπου έγινε η επίδοση.
(β) Απαλείψατε τη λέξη " Εφεσίβλητο" αν δεν εφαρμόζεται.
(γ) Διαγράψετε μέχρι το τέλος, αν δεν εφαρμόζεται.
(ε) Δηλώσατε τη συγγένεια του προς τον Εφεσίβλητο για τον οποίο η Ειδοποίησης έφεσης δόθηκε.


\\Filesrv-cy\Documents\Files\Litigation\Litigation\12584\Καταχώρηση- Ειδοποίηση Έφεσης Δ-35-Θ-3_ΕΚ_77.doc