UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                                           :
In re ex parte Application of Natica Shipping          Case No. 12-misc-240-P1
Ltd.,                                                      :

_____    :


# MEMORANDUM OF LAW IN SUPPORT OF MOTION

Timothy S. Pfeifer
M. Elizabeth Howe
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
212-589-4200 (tel.)
212-589-4201 (fax)

*Attorneys for RTI Limited, United Company
Rusal PLC, Alumina & Bauxite Co., Ltd.,
Rual Trade Ltd., Calibre Properties
Worldwide Ltd., and Mont Cervin –
Consultadoria E Servicos Unipessoal LDA*

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................. 3

    A.   A Network of Fraud and Corruption Against Rusal Group and the Commencement of the Cyprus Action ..................................................................... 3

    B.   RTI's Application Under Section 1782(a) and the Confidentiality Stipulation ..................................................................................................... 5

    C.   Natica Institutes Arbitration Proceedings in London ............................................. 7

    D.   Natica's Appeal and the Concurrent Filing of the Natica Application ................. 8

        1.   Natica's Deceptive Filing ........................................................................ 8

        2.   Subsequent Assertions Regarding Section 1782(a) and Cyprus .............. 10

        3.   The Parties' Negotiations and the Release of the Subpoena Responses ................................................................................................ 10

III. ARGUMENT ......................................................................................................... 11

    A.   Standard of Review ................................................................................................ 11

    B.   This Court Should Exercise Its Discretion Under Section 1782(a) to Deny the Natica Application As an Act of Harassment and an Improper Manipulation of This Court ................................................................................... 12

        1.   Natica Has Attempted to Circumvent the Policies of the United States and Has Acted in Bad Faith ........................................................ 13

        2.   Natica's Requests Are Unduly Intrusive ................................................ 15

        3.   The Character of the Foreign Proceedings and the Receptivity of the Cypriot Courts and the Arbitration Panel Neither Favor nor Disfavor Discovery ................................................................................ 16

        4.   The Information Natica Claims to Be Seeking Is Separately Within Reach of the Foreign Tribunals ............................................................. 17

    C.   The Subpoenas Contain Overbroad Requests for Confidential Material and Should Be Quashed ............................................................................................... 19

    D.   A Protective Order Must Issue to Safeguard the Rusal Parties' Sensitive Records ................................................................................................................. 21

    E.   The Rusal Parties Should Be Permitted to Reopen and Intervene in This Proceeding ............................................................................................................. 23

        1.   The Rusal Parties Are Interested in the Natica Action ........................... 23

        2.   The Rusal Parties' Intervention Is Timely ............................................. 24

IV.  CONCLUSION ..................................................................................................... 25

## TABLE OF AUTHORITIES
### (continued)

CASES

Alumina & Bauxite Co. v. Oldendorff Carriers GmbH & Co. KG,
    No. 07 Civ. 9647 (S.D.N.Y. filed Oct. 30, 2007) ....................................................7

In re Application of Braga,
    272 F.R.D. 621 (S.D. Fla. 2010) .............................................................................12

In re Application of Edelman,
    295 F.3d 171 (2d Cir. 2002).......................................................................................2

In re Application of Malev Hungarian Airlines,
    964 F.2d 97 (2d Cir. 1992).......................................................................................11

In re ex parte Application of Natica Shipping Ltd.,
    No. 12-mc-240-P1 (S.D.N.Y. filed Jul. 17, 2012) ..............................................9, 14

In re Application of Yukos Hydrocarbons Invs. Ltd.,
    No. 5:09-MC-0078, 2009 WL 5216951 (N.D.N.Y. Dec. 30, 2009)........................12

Arias-Zeballos v. Tan,
    No. 06 Civ. 1268 (GEL) (KNF), 2007 WL 210112 (S.D.N.Y. Jan. 25, 2007)........19

Brandi-Dohrn v. IKB Deutsche Industriebank AG,
    673 F.3d 76 (2d Cir. 2012).............................................................................2, 13, 15

Chubb Ins. Co. of Europe SE, v. Zurich Am. Ins. Co.,
    No. 1:09-mc-0116, 2010 U.S. Dist. LEXIS 7200 (N.D. Ohio Jan. 28, 2010) .................12, 23

Eastern Potato Dealers, Inc. v. TNC Packaging Corp.,
    363 Fed.Appx. 819 (2d Cir. 2010) ..........................................................................24

Euromepa S.A. v. R. Esmerian Inc.,
    51 F.3d 1095 (2d Cir. 1995).............................................................................12, 15

In re Gemeinshcaftspraxis Dr. Med. Schottdorf,
    No. Civ. M19-88 (BSG), 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29, 2006) .............12

In re ex parte Application of RTI Limited to Take Discovery for Use in Actions Pending
    in the District Court of Nicosia, Cyprus, and Anticipated in the Court of Moscow,
    Russia,
    No. 12-2474 (2d Cir. filed June 21, 2012)...........................................................2, 8

In re ex parte Application of RTI Limited to Take Discovery for Use in Actions Pending
    in the District Court of Nicosia, Cyprus, and Anticipated in the Court of Moscow,
    Russia,
    No. 12-mc-119-P1 (S.D.N.Y. filed April 13, 2012) ....................................1, 5, 6, 8

## TABLE OF AUTHORITIES
### (continued)

**Page**

Intel Corp. v. Advanced Micro Devices, Inc.,
  542 U.S. 241 (2004) ...................................................................................... *passim*

In re Ishihara Chemical Co., Ltd.,
  No. 99 MISC. 232 (FB), 2000 WL 1898484 (E.D.N.Y. Dec 19, 2000) ..................................12

Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.),
  320 F.3d 291 (2d Cir. 2003) ....................................................................................24

Koster v. Chase Manhattan Bank,
  93 F.R.D. 471 (S.D.N.Y. 1982) ..............................................................................21

Lazaridis v. Int'l Ctr. For Missing and Exploited Children, Inc.,
  760 F.Supp. 2d 109 (D.D.C. 2011) ...........................................................................18

In re Letter of Request from the Supreme Court of Hong Kong,
  138 F.R.D. 27 (S.D.N.Y. 1991) ..............................................................................23

In re Letters Rogatory for Tokyo District Prosecutor's Office,
  16 F.3d 1016 (9th Cir. 1994) ................................................................................23

MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,
  471 F.3d 377 (2d Cir. 2006) ..............................................................................23, 24

Metal Transport, Inc. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A.,
  No. 89 CIV. 8505 (JFK), 1990 WL 55687 (S.D.N.Y. Apr 26, 1990) ...................................21

In re Metellgesellschaft,
  121 F.3d (2d Cir. 1997) ........................................................................................2

In re Application of Apotex Inc. for Order to Obtain Discovery for Use in Action Pending
  Before the Federal Court in Canada (Case No. T-161-07), Misc. No. M12-160, 2008
  U.S. Dist. LEXIS 109420 (S.D.N.Y. Dec. 30, 2008) .............................................11

In re Application of Hill,
  Misc. No. M19-117 (RJH), 2005 U.S. Dist. LEXIS 10838 (S.D.N.Y. June 2, 2005) ............12

Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan,
  134 F.Supp.2d 528 (S.D.N.Y. 2001) .......................................................................23

Solow v. Conseco, Inc.,
  No. 06 Civ. 5988(BSJ)(THK), 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) ........................20

United States v. American Tel. & Telegraph Co.,
  642 F.2d 1285 (D.C. Cir. 1980) ............................................................................23

**TABLE OF AUTHORITIES**
(continued)

<u>**Page**</u>

Zagroba v. York Restoration Corp.,
    No. 10 CV 2663(ARR)(LB), 2011 WL 2133837 (E.D.N.Y. May 26, 2011) ..........................19

**STATUTES**

28 U.S.C. § 1782(a) ..................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 24 ..................................................................................................12, 23, 24

Fed. R. Civ. P. 26 ........................................................................................................12, 22

Fed. R. Civ. P. 45 ..................................................................................................12, 19, 20

Fed. R. Civ. P. 60 ...............................................................................................................12

**OTHER AUTHORITIES**

S.Rep. No. 1580, 88th Cong. 2d Sess. (1964) ...................................................................11

Movants RTI Limited ("RTI"), United Company Rusal PLC, Alumina & Bauxite Co., Ltd. ("Albaco"), Rual Trade Ltd., Calibre Properties Worldwide Ltd., and Mont Cervin – Consultadoria E Servicos Unipessoal LDA (collectively, the "Rusal Parties"), by their undersigned counsel, hereby move this Court to:  (i) reopen the above-captioned proceeding (the "Natica Action"); (ii) permit the Rusal Parties to intervene in the Natica Action; (iii) vacate the order entered July 19, 2012 (the "1782 Order") granting the application of Natica Shipping Ltd. (the "Natica Application") under 28 U.S.C. § 1782(a) ("Section 1782(a)"); (iv) to quash the subpoenas (the "Subpoenas") issued under the 1782 Order; and (v) grant such other relief as this Court deems appropriate.

## I.    PRELIMINARY STATEMENT

The Rusal Parties respectfully submit that Natica Shipping Ltd. ("Natica") obtained the 1782 Order by deceiving this Court in order to conceal from the Part I judge assigned to hear the Natica Application an extensive record already submitted to this District.  Natica took deliberate steps to ensure this matter would not be associated with another action (the "RTI Action") under Section 1782(a) involving many of the same parties and foreign proceedings which remains unresolved and in which Natica has taken directly contrary positions.[1]

Natica's procedural shell game includes:  (i) not designating the Natica Action as a related action; (ii) mis-designating this action as a proceeding for letters rogatory; and (iii) crafting the Natica Application so as to avoid perceptible connection to RTI Action.  Through this deception, Natica seeks information that is irrelevant to or unnecessary for the Cypriot ligation (the "Cyprus Action") and the pending arbitration in London (the "Arbitration"), upon

---

[1] See In re ex parte Application of RTI Limited to Take Discovery for Use in Actions Pending in the District Court of Nicosia, Cyprus, and Anticipated in the Court of Moscow, Russia, No. 12-mc-119-P1 (S.D.N.Y. filed April 13, 2012) ("In re RTI").

which the Natica Application is premised (the "Foreign Proceedings").  Natica's motion practice

here violates the twin aims of Section 1782(a).  Brandi-Dohrn v. IKB Deutsche Industriebank

AG, 673 F.3d 76, 81 (2d Cir. 2012) (the "twin aims" of Section 1782(a) are to "provid[e]

efficient means of assistance to participants in international litigation in our federal courts and

encourag[e] foreign countries by example to provide similar means of assistance to our courts")

(citing In re Metallgesellschaft, 121 F.3d, 77, 79 (2d Cir. 1997)).

When RTI sought assistance under Section 1782(a) in this District only a few months

ago, Natica not only opposed RTI's application (the "RTI Application") for discovery of bank

records for use in Cyprus, Natica successfully sought an emergency stay (the "Emergency Stay")

from the Second Circuit Court of Appeals to prevent RTI from having access to the subpoenaed

information for use in Cyprus.[2]  Natica's expedited appeal of the order (the "Denial Order")

denying Natica's motion to vacate the order granting the RTI Application remains pending.

Although Natica has claimed at every stage of the RTI Action that discovery of bank records

absent a Cypriot court order would flout Cypriot law and policy and submitted sworn testimony

to that effect, Natica simultaneously – and surreptitiously – sought this Court's assistance in

obtaining the very same type of information for use against the Rusal Parties in Cyprus.

Section 1782(a) was not intended to disrupt the parity between litigants in foreign

tribunals.  See In re Application of Edelman, 295 F.3d 171, 181 (2d Cir. 2002) (noting that "§

1782(a) should not be applied in a way that will create obvious confusion or skew the results in

the foreign litigation.").  Whereas RTI invoked Section 1782(a) to discover key information

related to its claims in Cyprus and elsewhere, Natica has abused Section 1782(a) in order to

---

[2] See In re ex parte Application of RTI Limited to Take Discovery for Use in Actions Pending in the District Court
of Nicosia, Cyprus, and Anticipated in the Court of Moscow, Russia, No. 12-2474 (2d Cir. filed June 21, 2012) ("In
re RTI (2d Cir.)").

obtain confidential and commercially-sensitive information regarding the Rusal Parties where no such discovery is warranted.  Here, Natica has acted in bad faith and attempted to circumvent the policies of the U.S. legal system by misleading this Court, propounded overbroad and intrusive discovery requests far outstripping the claims at issue in the Foreign Proceedings, and has made no showing that the foreign tribunals are receptive to this Court's assistance or are even interested in the discovery Natica seeks.  Moreover, to the extent the Rusal Parties' transactional information is remotely relevant to the Foreign Proceedings, the Rusal Parties are capable of providing this information directly to the foreign tribunals without this Court granting their competitors access to nearly a decade worth of detailed financial records.

RTI respectfully requests that this Court exercise its discretion to vacate the 1782 Order and/or quash the Subpoenas due to Natica's impermissible manipulation of these proceedings, the lack of relevance of the Rusal Parties' detailed transactional records to the claims before the tribunal in either of the actions on which the Natica Application was based, and the competitive advantage presented by the documentation Natica has requested.  Finally, RTI respectfully requests that any subpoenas issued in this action be modified, limited, or subjected to a protective order to shield the confidential information from abuse by Natica and its affiliates.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   A Network of Fraud and Corruption Against Rusal Group and the Commencement of the Cyprus Action

The Natica Application indicates merely that it seeks discovery to defend against claims of "conspiracy" in the Cyprus Action.  (Memorandum of law in support of Natica Application ("Mem.") at 5.)  Natica does not elaborate that it is accused of participating in a widespread web of fraud and kickbacks which is the subject of at least five proceedings in Cyprus and Russia centered around the fraudulent activity of Andrey Raykov ("Raykov"), who is currently a

fugitive from Russian justice.[3]  Early in 2011, Rusal Group first learned that Raykov was apparently able to use the managerial positions he held in within the group in order to arrange and conceal kickbacks received from third parties.  Natica, Dmitry Osipov ("Osipov"), and several other Natica Affiliates are alleged to have participated in one such kickback scheme related to certain shipping contracts.  The Rusal Group is still determining the scope of this scheme and the amount of money Raykov and his accomplices have misappropriated.

On or about May 23, 2011, on the basis of investigations and evidence gathered internally, four directly-affected members of the Rusal Group[4] instituted the Cyprus Action in the District Court of Nicosia.[5]  The Cyprus Plaintiffs' court filings allege that Raykov abused his authority at the Rusal Group to ensure that the majority (if not all) of the Rusal Group's shipping charters were conducted with or through Natica, so that Natica eventually became the group's sole and exclusive shipping broker.  See Pfeifer Decl. Ex. 2 at 4.  Once Natica took on this exclusive role, Raykov and Osipov were well-positioned to manipulate the Cyprus Plaintiffs into entering shipping and freight contracts with entities controlled by Osipov, such as Aldi,[6] with

---

[3] Raykov is a former management-level employee of the United Company Rusal PLC group of companies ("Rusal Group"), of which the Rusal Parties are members.  As fully detailed in the RTI Application, Raykov's actions are the subject of two pending criminal actions in Russia, an ongoing criminal investigation in Russia (the "Russian Action"), and two actions before the Cypriot District Courts, including the Cyprus Action.  Of these five actions, only the Cyprus Action and the Russian Action concern Raykov's dealings with Natica or the other appellants in the RTI Action, who include Osipov, Aldi Marine Ltd.("Aldi"), RANS Chartering Ltd., Mercury Shipping & Trading Ltd. and Maguire International Ltd. (collectively with Natica, the "Natica Affiliates").  See generally Exhibit 2 to the Declaration of Timothy S. Pfeifer in Support of Motion to Vacate Order Under 28 U.S.C. § 1782(a), dated Nov. 28, 2012 ("Pfeifer Decl.").

[4] The plaintiffs include Rusal Parties Rual Trade Ltd., Albaco, Calibre Properties Worldwide Ltd., and Mon Cervin – Consultadoria e Servicos Sociedade Unipessoal LDA (the "Cyprus Plaintiffs").  See Pfeifer Decl. Ex. 2 at 3.

[5] The defendants in the Cyprus action (the "Cyprus Defendants") are Raykov, Aldi, Osipov, Natica, Natica Shipping & Trading Ltd., and Hellenic Bank Public Company Ltd., Nicosia (Cyprus) branch ("Hellenic Bank").  Hellenic Bank was not accused of any wrongdoing, and was named as a defendant because Raykov holds accounts there.  See Pfeifer Decl. Ex. 2 at 3.

[6] The Cyprus Plaintiffs allege that Aldi is a shipping broker controlled in fact by Osipov, and Osipov also represented himself as the Managing Director of Natica.  Id. at 4.

4

what was effectively a mark-up in price.  Id.  In rough terms, Raykov and Osipov then divvied

up and pocketed the mark-up.  Id.  They also concealed the nature of the deal from the Cyprus

Plaintiffs to cover up the fact that Aldi was overcharging them and pocketing the difference.

As fully detailed in the RTI Application, the Cyprus Plaintiffs obtained a disclosure (the

"Disclosure") from Hellenic Bank, which provided highly incriminating information regarding

Raykov and other Cyprus Defendants.  This includes evidence that Raykov in fact received

several payments directly from Aldi that were mischaracterized in emails to Raykov from

Hellenic Bank as "bonuses."[7]  See Pfeifer Decl. Ex. 2 at 4-5.  No such bonuses were authorized

by the Rusal Group.  The Cyprus Action is ongoing and discovery is underway.

### B.   RTI's Application Under Section 1782(a) and the Confidentiality Stipulation

As part of the Rusal Group's involvement in the various criminal and civil actions related

to Raykov's fraud, on April 13, 2012, RTI filed the RTI Application as a representative of the

Rusal Group.[8]  See Pfeifer Decl. Exs. 1; 2.  The RTI Application sought an order allowing RTI to

serve subpoenas on four domestic banks for discovery in aid of the Russian Action, the Cyprus

Action, and an additional proceeding in Cyprus against Raykov and other defendants apparently

unaffiliated with the Natica Affiliates.  Id.  The RTI Application was granted by order entered

April 30, 2012 (the "RTI Order"); RTI thereafter issued and served subpoenas on the target

banks.  See In re RTI, No. 12-mc-119-P1 (S.D.N.Y. entered Apr. 30, 2012) [Dkt. 4].

---

[7] The payments detailed in the Disclosure total at least $669,022.  See Pfeifer Decl. Exhibit 1 at RUS000031, RUS000070, RUS000071, RUS000073; Pfeifer Decl. Exhibit 2 at 5.  Consequently, on April 11, 2012, the District Court Judge in the Cyprus Action froze $669,022 of the balance on deposit in Aldi's bank account as part of the ongoing litigation.  The Disclosure further showed that certain of the Cyprus Defendants had made misrepresentations to the District Court in the Cyprus Action.  See Declaration of Michael Vorkas in Support of Motion dated June 5, 2012, In re RTI, No. 12-mc-119-P1 (S.D.N.Y. filed Jun. 5, 2012) [Dkt. 20], at ¶ 8.

[8] RTI is a wholly-owned subsidiary of United Company Rusal PLC, the flagship company of the Rusal Group, and is responsible for the majority of the Rusal Group's aluminum trading.

Subsequent to the entry of the RTI Order, counsel for the Natica Affiliates appeared in the action and filed two letters with the Honorable Judge John G. Koeltl requesting a stay of discovery in order to permit the Natica Affiliates to file a motion to vacate the RTI Order and quash the subpoenas issued thereunder (the "Natica Motion").[9]  At a telephone conference on May 24, 2012, Judge Koeltl denied the requests for a stay.  On May 30, 2012, the parties executed a stipulation  (the "Confidentiality Stipulation") under which RTI's counsel would not share with RTI or otherwise disseminate any subpoena responses received after the May 24, 2012 telephone conference until the Natica Motion was resolved.  See Pfeifer Decl. Ex. 5.[10]

On May 29, 2012, the Natica Affiliates filed the Natica Motion.  Natica argued, among other things, that aid under Section 1782(a) was improper in support of the Cyprus Action because the discovery of bank records absent a court order from the Cypriot courts was a violation of Cypriot law and policy.  See Pfeifer Decl. Ex 3 at 14.  In support of this argument, Natica submitted sworn testimony by its attorneys in Cyprus that:

> [U]nder Cyprus law, a party cannot obtain the disclosure of information with respect to bank accounts unless a Court Order is issued. . . .  Further, a party to a Cyprus proceeding is required to provide notice to another party when seeking discovery from a third party. . . .  Additionally, evidence that is obtained in a way constituting a violation of constitutional rights (such as the right to respect private life and the right to a fair trial) cannot be used in any manner in a Court proceeding.

Pfeifer Decl. Ex. 4 at ¶ 20 (citations and internal cross-references omitted).  RTI disputed this position, and submitted sworn testimony regarding applicable exceptions to the relevant Cypriot banking law.  See Memorandum of Law in Opposition to Motion of Dmitry Osipov, et al., In re RTI, No. 12-mc-119-P1 (S.D.N.Y. filed June 5, 2012) ("RTI Opposition Mem.") [Dkt. 18] at 22.

---

[9] Counsel for the Natica Affiliates also filed a letter requesting a stay of discovery with the Honorable Judge Harold Baer, who issued the RTI Order, but directed their future inquiries to Judge Koeltl at Judge Baer's direction.

[10] The Confidentiality Stipulation was so ordered by the District Court on May 31, 2012.  See Pfeifer Decl. Ex. 5.

On June 12, 2012, Judge Koeltl denied the Natica Motion in its entirety as "without merit."  See Pfeifer Decl. Ex. 7 at 22:19.  Judge Koeltl entered the Denial Order to that effect on June 13, 2012.  See Pfeifer Decl. Ex. 8.  The Denial Order also provided for a temporary continuance of the Confidentiality Stipulation to June 26, 2012 at 5:00 p.m., in order to permit the Natica Affiliates to seek the Emergency Stay from the Second Circuit Court of Appeals.

C.      **Natica Institutes Arbitration Proceedings in London**

On June 12, 2012, Natica, Osipov, and Mercury Shipping & Trading Ltd. submitted a notice of arbitration (the "Notice").  See Exhibit 1 to the Declaration of Grant Richard Eldred in Support of Motion Under 28 U.S.C. Section § 1782 [sic] dated July 13, 2012 ("Eldred Decl."). The Notice indicated that the bases for the Arbitration request include "a declaration that any and all proceedings commenced in New York, Cyprus, and/or any other jurisdiction that arise out of the subject matter of the Settlement Agreement shall be stayed in favour of this London Arbitration. . ."  Id.  During the June 12, 2012 hearing before Judge Koeltl, counsel for Natica raised the existence of the pending Arbitration as basis why Section 1782(a) relief was improper in aid of the Cyprus Action.  See Pfeifer Decl. Ex. 7 at 10:12-20, 11:20-12:7.

The Arbitration stems from a 2007 action concerning a contract dispute between Albaco, and several other parties including Natica, Osipov, certain major international shippers, and others over the performance of four shipping contracts.  See Alumina & Bauxite Co. v. Oldendorff Carriers GmbH & Co. KG, No. 07 Civ. 9647 (S.D.N.Y. filed Oct. 30, 2007).  The parties to the suit entered into a settlement agreement (the "Settlement Agreement") in 2007, the terms of which are fully set forth in the Natica Application.  See Exhibit 1 to the Declaration of Dmitry Osipov in Support of Application For Discovery Assistance by Natica Shipping Ltd. dated July 17, 2012 ("Osipov Decl.").  The Natica Affiliates have taken the position in the RTI Action that the RTI Application and the filing of the Cyprus Action are violations of the

7

Settlement Agreement.  The Rusal Parties dispute this position.[11]  The performance of the above contracts is not at issue in the Cyprus Action.  See Pfeifer Decl. Ex. 1, 2.  Rather, the Cyprus Action seeks to investigate and redress fraud by Raykov, Osipov, and others.  The 2007 proceeding did not concern Raykov's illicit conduct, which was unknown at the time, but instead was a simple contract dispute.  The Arbitration is ongoing.

### D.     Natica's Appeal and the Concurrent Filing of the Natica Application

On June 19, 2012, the Natica Affiliates filed a notice of appeal to the Second Circuit Court of Appeals.  See In re RTI, No. 12-mc-119-P1 (S.D.N.Y. filed June 21, 2012) [Dkt. 28]. On June 21, 2012, the Natica Affiliates filed an application for the Emergency Stay; the stay application set a return date of June 26, 2012.  See Pfeifer Decl. Ex. 9.  RTI filed an opposition on June 25, 2012.  See In re RTI (2d Cir.), No. 12-2474 (2d Cir. filed June 25, 2012) [Dkt. 14]. That same day, the Second Circuit granted a temporary stay of the Denial Order to allow the Natica Affiliates time to file a reply, which was filed on July 2, 2012.  See Pfeifer Decl. Ex. 10. The Second Circuit granted the Emergency Stay on July 18, 2012, effectively continuing the Confidentiality Stipulation until the expedited appeal is resolved.  See In re RTI (2d Cir.), No. 12-2474 (2d Cir. filed Jul. 18, 2012) [Dkt. 39].  RTI, therefore, is currently unable to access or use any responses to the subpoenas issued in the RTI Action in aid of the Cyprus Action.

### 1.     Natica's Deceptive Filing

On July 17, 2012, Natica filed the Natica Application seeking discovery under Section 1782(a) in aid of the Arbitration and the Cyprus Proceeding from Deutsche Bank Trust Company Americas, JPMorgan Chase Bank N.A., Citibank, N.A., the Bank of New York Mellon, and

---

[11] In fact, the Rusal Parties claim that Osipov is in breach of the Settlement Agreement himself.  See RTI Opposition Mem., In re RTI, No. 12-mc-119-P1 (S.D.N.Y. filed June 5, 2012) [Dkt. 18] at 12.

Bank of America (the "Domestic Banks").  See In re ex parte Application of Natica Shipping

Ltd., No. 12-mc-240-P1 (S.D.N.Y. filed Jul. 17, 2012) [Dkt #1].  On the cover sheet for the

Natica Application, Natica indicated "No" in response to the question "Has this or a similar case

been previously filed in SDNY?"  Natica also indicated under "Nature of Case" that the Natica

Application related to "M 19-96 Letters Rogatory – Great Britain" and "M 19-134 Letters

Rogatory – Cyprus" rather than the appropriate "M 77 Application to have subpoena issued to

person living in this district regarding action in foreign country or tribunal" designation.

Natica's Memorandum of Law in support of the Natica Application contains nearly three

pages of description of the Settlement Agreement and Arbitration, and only a single paragraph

regarding the Cyprus Action.  (Mem. at 2-5.)  Both sworn declarations in support of the Natica

Application indicate that they are in support of discovery in aid of the Arbitration.  Eldred Decl.

¶ 3; Osipov Decl. ¶ 3.  Only Osipov's declaration makes any mention of the Cyprus Action, and

does not elaborate how the bank records sought by the Natica Application relates to the Cyprus

Action beyond the allegation that these records "will make demonstrate [sic] how Rusal

breached the Settlement Agreement, and most prove conspiracy and harassment by Rusal against

Natica, and other Osipov controlled companies."  Osipov Decl. ¶ 16.  Despite the Arbitration

being based in part on the filing of the RTI Action, the only references in the Natica Application

to the prior proceedings before Judge Koeltl that specify that the RTI Action is a proceeding

under Section 1782(a) occur in passing in the exhibits to the declaration of Natica's solicitor in

the Arbitration.  See Eldred Decl. Exhibit 3.  These references do not specify the status of those

proceedings or that some of the same parties are currently involved in those proceedings.

The Natica Application was not referred to Judge Koeltl or associated with the RTI

Action.  Rather, it was referred to the Part I judge sitting at the time.  The Natica Application was

granted and the 1782 Order entered on July 19, 2012.  Counsel for Natica did not alert the Rusal

Parties to the filing of the Natica Application or the entry of the 1782 Order.[12]

### 2.    Subsequent Assertions Regarding Section 1782(a) and Cyprus

On August 21, 2012, subsequent to the filing of the Natica Application for assistance in

the Cyprus Action, the Natica Affiliates filed their brief with the Second Circuit.  See Pfeifer

Decl. Ex. 11.  In this brief, the Natica Affiliates repeated their assertion from the RTI Action that

Section 1782(a) discovery in aid of the Cyprus Action would be in violation of Cypriot law and

policy.  Id. at 24.  RTI filed its brief in opposition to the Natica Affiliates' appeal on September

25, 2012.  On October 9, 2012, the Natica Affiliates filed a reply brief in further support of their

appeal, in which they once again state that "Cypriot law absolutely prohibits the disclosure of

banking information absent a Court Order."  See Pfeifer Decl. Ex. 22 at 16.

### 3.    The Parties' Negotiations and the Release of the Subpoena Responses

On August 6, 2012, after learning of the filing of the Natica Application, counsel for RTI

sent a letter to the Honorable Judge Paul A. Crotty of the Southern District of New York, who

was the Part I Judge at the time the Natica Application was filed, and to Judge Koeltl alerting

each judge to the related nature of the RTI Action and the Natica Action.  This letter requested

the entry of a protective order regarding the Rusal Parties' bank records and requested the

transfer of the Natica Action to Judge Koeltl.[13]  On August 7, 2012, Natica replied to RTI's letter

and indicated that Natica was amenable to negotiating a protective order.  Counsel for the Rusal

---

[12] In a recent filing in the RTI Action, the Natica Affiliates indicated that Natica's counsel provided notice of the filing of the Natica Application to the Rusal Group's counsel in the Arbitration.  See Pfeifer Decl. Ex. 22 at 11 n.7. However, upon review by the Rusal Parties' counsel and consultation with the Rusal Group's Arbitration counsel, no such notice appears to have been received.

[13] On August 10, 2012, Judge Crotty filed an endorsed copy of Natica's letter indicating that the Natica Application is a Part I matter and all further inquiries should be directed to the sitting Part I judge.  See Pfeifer Decl. Ex. 14.  On September 6, 2012, Judge Koeltl filed an endorsed copy of RTI's letter indicating that he would not be transferring the case.  See Pfeifer Decl. Ex. 15.

parties has been conferring in good faith with Natica's counsel to negotiate a protective order of similar character to the Confidentiality Stipulation since that time.  See Pfeifer Decl. ¶¶ 9-17.[14]

On November 16, 2012, however, Natica's and the Rusal Parties' counsel held a telephone conference at which it was determined that counsel for Natica has already released the responses it has received to the Subpoenas (the "Subpoena Responses") to Natica free of any restriction on their use and distribution, and the proposed "Attorney's eyes only" confidentiality stipulation would have no effect on these documents.  Id. ¶ 16.  The parties, therefore, cannot agree to the terms of a protective order absent the intervention of this Court.

## III.   ARGUMENT

### A.   Standard of Review

Under Section 1782(a), "[t]he District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. . . ."  In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992) (Section 1782(a) "leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable") (quoting S.Rep. No. 1580, 88th Cong. 2d Sess. (1964)).  In the RTI Action, Judge Koeltl applied a de novo review of the court's prior ex parte grant of the RTI Application.  See Pfeifer Decl. Ex. 7 at 22:12-23; see also In re Application of Apotex Inc. for Order to Obtain Discovery for Use in Action Pending Before the Federal Court in Canada (Case No. T-161-07), Misc. No. M12-160, 2008 U.S. Dist. LEXIS 109420 (S.D.N.Y. Dec. 30, 2008)

---

[14] In the interim, counsel for RTI sent letters to the Domestic Banks indicating that RTI and the Rusal Group objected to the Subpoenas and asking each bank to protect their financial information.  Id. ¶ 11; Exs. 16-21.

(conducting de novo review of Section 1782(a) application upon motion to vacate); In re
Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88 (BSG), 2006 U.S. Dist. LEXIS
94161 (S.D.N.Y. Dec. 29, 2006) (same); In re Application of Hill, Misc. No. M19-117 (RJH),
2005 U.S. Dist. LEXIS 10838 (S.D.N.Y. June 2, 2005) (same).

      The 1782 Order is a final order within the meaning of Rule 60(b) of the Federal Rules of
Civil Procedure.  See, e.g., In re Application of Braga, 272 F.R.D. 621, 625 (S.D. Fla. 2010); In
re Ishihara Chemical Co., Ltd., No. 99 MISC. 232 (FB), 2000 WL 1898484 (E.D.N.Y. Dec 19,
2000) ("Generally, a district court's determinations under § 1782 are final orders susceptible to
review").  Motions to intervene in actions under Section 1782(a) are governed by Federal Rule of
Civil Procedure R. 24.  See, e.g., Chubb Ins. Co. of Europe SE, v. Zurich Am. Ins. Co., No. 1:09-
mc-0116, 2010 U.S. Dist. LEXIS 7200, at *21 (N.D. Ohio Jan. 28, 2010) (granting motion to
intervene by party seeking to quash subpoenas served on its insurer under Section 1782(a)).

      Rule 45 of the Federal Rules of Civil Procedure governs quashing of subpoenas issued
under Section 1782(a).  See In re Application of Yukos Hydrocarbons Invs. Ltd., No. 5:09-MC-
0078, 2009 WL 5216951, at *4 (N.D.N.Y. Dec. 30, 2009).  Finally, under Federal Rule of Civil
Procedure R. 26(c)(1)(G) "[a] party or any person from whom discovery is sought may move for
a protective order,"  to require that "confidential research, development, or commercial
information not be revealed or be revealed only in a specified way."

    **B.**    **This Court Should Exercise Its Discretion Under Section 1782(a) to Deny the
Natica Application As an Act of Harassment and an Improper Manipulation
of This Court**

      This Court is not required to grant the Natica Application and should exercise its
discretion to vacate the prior order.  Section 1782(a) provides this Court with the discretion to
deny an application for discovery where, as here, the applicant has abused the process to obtain
confidential information to another person's detriment.  See Euromepa S.A. v. R. Esmerian Inc.,

12

51 F.3d 1095, 1101 n.6 (2d Cir. 1995) ("[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation.").  Where the Foreign Proceedings do not require such broad disclosure of the Rusal Parties' financial records, Natica should not be permitted to abuse Section 1782(a) in order to obtain this information.

The discretionary factors set forth by the Supreme Court in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 264 (2004), disfavor Natica's Application due to the availability of alternate, less-invasive sources of the purportedly relevant information, Natica's dissembling with respect to obtaining the 1782 Order, the apparently neutral stance of the foreign tribunals with respect to discovery, and concerns of basic relevance and public policy also weigh against such discovery.  It can hardly be an "efficient means of assistance" to provide parties who happen to be litigants in foreign actions with free reign to obtain proprietary information without a basic showing of relevance, nor are foreign tribunals likely to be "encouraged" to grant such unfettered assistance against residents of their own jurisdictions.  <u>Brandi-Dohrn</u>, 673 F.3d at 80 (describing twin aims of Section 1782(a)).

## 1.   Natica Has Attempted to Circumvent the Policies of the United States and Has Acted in Bad Faith

In <u>Intel Corp.</u>, the Supreme Court urged district courts to consider "whether [a] § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or <u>the United States</u>."  <u>Intel Corp.</u>, 542 U.S. at 265 (emphasis added).  Here, Natica impermissibly and deliberately manipulated these proceedings to obtain wide-ranging discovery of irrelevant and cumulative confidential materials while simultaneously barring RTI from obtaining legitimate relief.

Natica appears to have taken deliberate steps to avoid alerting this Court to a similar proceeding that is currently stayed in this District at Natica's instigation, which concerns availability of discovery in the same Cyprus Action and is contested among some of the same parties.  When Natica sought this ex parte relief,[15] not only did Natica not indicate that the RTI Action is a "similar" proceeding on its Miscellaneous Case Cover Sheet, Natica also mis-designated this action as a proceeding for letters rogatory.  See In re ex parte Application of Natica Shipping Ltd., No. 12-mc-240-P1 (S.D.N.Y. filed Jul. 17, 2012) [Dkt #1].  The only references to the RTI Action in the Natica Application are buried in the exhibits to its supporting affidavits, and these passing references do not indicate that the RTI Action is ongoing or that Natica itself is currently before the Second Circuit Court of Appeals to resolve the eligibility of bank record evidence obtained under Section 1782(a) for use in the Cyprus Action.

Natica's manipulation of these proceedings allowed Natica to seek this Court's assistance in the absence of the well-developed record already before the District Court.  Natica was able to seek Section 1782(a) assistance in aid of the Cyprus Action while simultaneously – and repeatedly – declaring to multiple tribunals in the United States that Section 1782(a) discovery of bank records in aid of the Cyprus Action was improper as a matter of Cypriot law.  See Pfeifer Decl. Ex. 3 at 14 (as alleged by the Natica Affiliates, "[p]ursuant to Cyprus law, the disclosure of

---

[15] Counsel for Natica makes much of the fact that the RTI Action was also initiated ex parte.  However, at the time of the RTI Application's filing, counsel for RTI was unaware that the Natica Affiliates had local counsel with relation to Section 1782(a) or any other current matters.  Natica's counsel filed the Natica Application ex parte while simultaneously engaging in active dialog with RTI's counsel regarding the current appeal before the Second Circuit.  Indeed, on July 18, 2012, the day after the Natica Application was filed and the day before this Court's entry of the 1782 Order, Natica's counsel and RTI's counsel exchanged emails and phone calls regarding the entry of the Emergency Stay by the Second Circuit.  See Pfeifer Decl. ¶ 6.

information with respect to bank accounts is prohibited unless a Court Order is issued, and notice to the relevant parties provided," neither of which has occurred here).[16]

By manipulating this Court into ruling on the Natica Application in the absence of the full record already available in this District and by simultaneously making sworn representations to this District and the Second Circuit that are wholly incompatible with its position in the Natica Application, Natica has acted in bad faith to abuse this Court's power to grant assistance to legitimate applicants under Section 1782(a).  These actions should weigh against a grant of discovery here.  Euromepa S.A., 51 F.3d at 1101 n.6 (noting that district court "free to deny" Section 1782(a) assistance where discovery is sought in bad faith).[17]

### 2.    Natica's Requests Are Unduly Intrusive

As noted by the Intel Corp. court, district courts should consider whether "unduly intrusive or burdensome" discovery requests under Section 1782(a) should be "rejected or trimmed." See Intel Corp., 542 U.S. at 265.  The Subpoenas served by Natica are vastly overbroad and are not sufficiently tailored to any of the claims at issue in either the Arbitration or the Cyprus Action.  With regard to the Arbitration, the Natica Application indicates Natica only needs to know the amounts of certain payments in order to calculate potential damages.  However, Natica requests extensive records of correspondence, contracts, account openings, closings, balances and all transactional information in any type of account held by any of the six

---

[16] What is more, Natica continues to make such assertions accompanied by sworn testimony from its Cypriot attorneys.  More than a month after the Natica Application's filing, the Natica Affiliates informed the Second Circuit that "[i]t is undisputed that Cypriot law prohibits the production of bank information without a Cypriot Court Order."  Pfeifer Decl. Ex.11 at 23.  It should be noted that this premise is, in fact, disputed.

[17] Moreover, given that the Rusal Parties' bank records do not appear to be a necessary source of proof of the damages claims Natica describes, and alternate sources of information exist such as agreements in the custody and control of the parties to the Arbitration and the Cyprus Action, the Natica Application appears to be a retaliatory gesture that should not benefit from this Court's assistance.  Brandi-Dohrn, 673 F.3d at 81 ("[A] district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment.").

Rusal Parties.  The requests are broad enough for Natica to learn the entire account history of any account any Rusal Party has ever held with the Domestic Banks, with very little in the way of date restrictions (and only as to certain types of information).[18]  With respect to Cyprus, Natica has made no showing whatsoever how the Rusal Parties' banking records will be relevant to the Cyprus Action, in which it is the Natica Affiliates' own transactional history that is at issue.

Natica's own position is that bank records are particularly "sensitive bank information."  Pfeifer Decl. Ex. 3 at 16; see also Pfeifer Decl. Ex. 7 at 7:25-8:2 (CHALOS:  "Well, here we're asking about banking records, which, of course, raises a red flag in and of itself. . .").  Natica concedes that broad discovery of bank records may allow the requestor "to gain an economic advantage" over the bank account holder.  See Pfeifer Decl. Ex. 10 at 2.  The information Natica has requested is commercially valuable, and their requests seek all account information and records for a period predating the contracts at issue in the Foreign Proceedings.[19]

Natica and others are accused of fraud in Russia and Cyprus, therefore Natica's discovery requests seeking sensitive financial information which is irrelevant to their claims are unduly intrusive.  This Intel Corp. factor must weigh against granting the Natica Application.

> **3.** **The Character of the Foreign Proceedings and the Receptivity of the Cypriot Courts and the Arbitration Panel Neither Favor nor Disfavor Discovery**

Natica has not established that the character of the Foreign Proceedings or the receptivity of the tribunals favors the Natica Application.  Intel Corp., 542 U.S. at 264 ("[A] court presented

---

[18] For example, the Subpoenas call for account documentation from 2003 forward for certain entities even if such accounts are not used in connection with any of the contracts at issue in the Arbitration or are simply brokerage or investment accounts unrelated to Rusal Group's shipping contracts.  See In re ex parte Application of Natica Shipping Ltd., No. 12-mc-240-P1 (S.D.N.Y. filed July 17, 2012) [Dkt. 1].

[19] Moreover, they request account agreements, contracts, and other non-transactional records related to the Rusal Parties' possible relationship with the Domestic Banks, which are not at issue in any proceeding.

with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of

the proceedings underway abroad, or the receptivity of the foreign government or the court or

agency abroad to U.S federal-court judicial assistance").  Natica's sole observation with regard

to the nature of the proceedings abroad is that nothing "implicate[s] any factor or policy that

would weigh against a grant of [Natica's] request."  (Mem. at 9.)  This statement is particularly

striking given that Natica's firm position in the RTI Action is that Section 1782(a) assistance is

improper in aid of the Cyprus action and "Cyprus law prohibits evidence that is improperly

obtained from being used in any manner in a Court proceeding."  See Pfeifer Decl. Ex. 3 at 14

n.18; see also Pfeifer Decl. Ex. 11 at 24 (arguing that discovery of bank records is "that the

Cyprus Court would not authorize the disclosure of such information," and to obtain this

information by means of Section 1782(a) would "circumvent Cypriot laws and policies.").

The Rusal Parties submit that this Intel Corp. factor should also be a neutral

consideration, because Natica has made no showing whatsoever as to the character of either

proceeding or that either tribunal is receptive to assistance.  In fact, if the sworn testimony of

Natica's own counsel is to be credited, this factor should weigh against the Natica Application.

### 4.    The Information Natica Claims to Be Seeking Is Separately Within Reach of the Foreign Tribunals

As described by the Supreme Court in Intel Corp., a need for assistance under Section

1782(a) is made more "apparent" where the parties from whom discovery is sought are not, and

are not likely to be, participants in the proceedings before the foreign tribunal(s).  Intel Corp.,

542 U.S. at 264.  Here, although the Domestic Banks are not likely to be required to appear

before either in the Cyprus Action or the Arbitration, the Domestic Banks also do not appear to

have evidence relevant to either proceeding, or at the very least, do not appear to be the only

persons with access to what little relevant financial information may exist.

17

With regard to the Arbitration, Natica indicates that the Rusal Parties' financial records are necessary to show damages because these records will show details of certain contractual payments.  However, the Rusal Parties are participants in the Cyprus Action and the Arbitration and those tribunals can order discovery over them as to their relevant conduct without forcing broad disclosure of the Rusal Group's confidential commercial activity to its competitors.  Id. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.").  The Cyprus Action, on the other hand, concerns allegations of fraud and kickbacks (and possible additional fraudulent schemes) by Raykov involving the Natica Affiliates.  None of the claims made by any of the parties to the Cyprus Action, including Natica, involve banking transactions or records for accounts held by Rusal Group entities or any transactions these entities may have executed through correspondent banks.  The very nature of the Cyprus Action is to expose fraudulent transactions between Raykov and non-members of the Rusal Group.  Natica provides no basis to believe that any of the Rusal Group's confidential internal financial activity is relevant to any claim or defense related to Raykov's fraud.

Natica's generalized assertions of conspiracy and harassment also should not permit them widespread access to the Rusal Group's confidential bank records absent a showing of how these bank records may prove such claims and how those claims have any bearing on the Cyprus Action.  Lazaridis v. Int'l Ctr. For Missing and Exploited Children, Inc., 760 F.Supp. 2d 109, 115 (D.D.C. 2011) (denying application where "wide-ranging request suggest[ed] that" applicant was "seeking information more for his general use than for use by" the foreign tribunal).  Natica presents only cursory representations that the Natica Application is made in support of the Cyprus Action, and has since disclaimed this purpose as a basis for its requested relief.  See Pfeifer Decl. Ex. 13 ("However, as is evident from Natica's filing, the basis for Natica's

application requesting discovery assistance is <u>primarily</u> a London arbitration proceeding . . .")
(emphasis in original).  Natica devotes only a single paragraph of the Natica Application to the
facts underlying the Cyprus Action, and does not specify the nature of the claims in that action
beyond that it is accused of "conspiracy."[20]

   Because Natica has failed to demonstrate how records in the Domestic Banks' possession
are either relevant or ultimately necessary to either of the actions that form the basis for the
Natica Application, the Rusal Parties submit that this <u>Intel Corp.</u> factor should be a neutral
consideration with respect to this Court's determination.  Therefore, in light of each of the <u>Intel
Corp.</u> factors, two of which squarely disfavor the Natica Application and two of which are
neutral at best, this Court should reject Natica's request for discovery under Section 1782(a) and
vacate the 1782 Order.

   **C.**     <u>**The Subpoenas Contain Overbroad Requests for Confidential Material and
   Should Be Quashed**</u>

   Courts in this circuit have often quashed or modified subpoenas where, as here, a party
seeks a broad scope of confidential banking or financial material with little to no relevance to the
claims at issue between the litigants.  <u>See, e.g.</u>, <u>Arias-Zeballos v. Tan</u>, No. 06 Civ. 1268 (GEL)
(KNF), 2007 WL 210112 (S.D.N.Y. Jan. 25, 2007) (subpoena for bank records not enforced by
court upon motion under Rule 45(c) where they targeted records of transactions and other
matters outside claims in plaintiff's complaint); <u>Zagroba v. York Restoration Corp.</u>, No. 10 CV

---

[20] Although Osipov states that bank record evidence "will make demonstrate [sic] how Rusal breached the
Settlement Agreement, and must prove conspiracy and harassment by Rusal against Natica, and other Osipov
controlled companies," Osipov does not establish that the Settlement Agreement has any bearing on the Cyprus
Action and fails to show how the Rusal Group's banking records will assist in proving <u>any</u> claims or defenses
relevant in Cyprus.  As established in the RTI Application and both parties' subsequent submissions in the RTI
Action, the claims and defenses at issue in Cyprus are unrelated to the contract claims subject to the Settlement
Agreement.  In fact, the Cyprus Action is solely related to conduct that was unknown at the time of the Settlement
Agreement, as Raykov was only later discovered to have manipulated many Rusal Group contracts for illicit gain.
The Cyprus Action is therefore not barred under the Settlement Agreement's terms, <u>see</u> Osipov Decl. Ex. 1, and any
banking activity relevant to prove or disprove a breach of the Settlement Agreement is irrelevant in Cyprus.

2663(ARR)(LB), 2011 WL 2133837 (E.D.N.Y. May 26, 2011) (modifying subpoenas upon

motion under Rule 45(c) where "proffered reasons for needing plaintiffs' bank records" were

"attenuated at best."); Solow v. Conseco, Inc., No. 06 Civ. 5988(BSJ)(THK), 2008 WL 190340

(S.D.N.Y. Jan. 18, 2008) (quashing subpoena by competitor under Rule 45(c) where requests

sought broad banking and financial materials with little relevance to subject matter of dispute).

　　　　Here, as in Solow, the "documents sought in the subpoena have little or no relevance to

the claims and defenses" in the Cyprus Action or the Arbitration, "while having potential value"

to a party with a "contemporary competitive relationship" with the parties whose confidential

banking records are sought.  Solow, 2008 WL 190340 at *5.  The key distinction between RTI's

request and the Natica Application is that the very basis of the Cyprus Action and Russian

Action is fraudulent transactions, for which banking records were necessary evidence.  Natica,

however, seeks to prove a breach of a Settlement Agreement provable by publicly-available

information and information obtainable directly from parties to the Arbitration.

　　　　Natica also fails to show why such broad discovery of banking records is necessary for

use in the Arbitration.  Natica claims that the bank records will be useful to "determine the extent

to which [Natica], among others, was damaged by Rusal and Albaco's breach of the Settlement

Agreement" because these banks will have information showing "losses, including but not

limited to loss of commission."  (Mem. at 4.)  However, various Rusal Parties, including Albaco,

are participants in the Arbitration.  To the extent documentation of commissions or other

payments are relevant, agreements and documents showing such payments may be obtained from

the participants to the litigation without such an invasion of the Rusal Group's financial privacy.

Natica's other stated purpose, to prove generalized claims of "conspiracy" which do not specify

even a single transaction for which banking records will be relevant to prove.

As Natica has averred in the RTI Action, the Natica Affiliates and the Rusal Group are competitors in certain respects, and such banking information can be used to a competitive advantage.  See, e.g., Pfeifer Decl. Ex. 10 at 3 (arguing that the Natica Affiliates' "private banking and commercial information" could be used "to gain a competitive advantage over Appellants."); Id. at 1 (arguing that if the Rusal Group obtained "financial and commercial information," they would "undoubtedly use [this information] to undermine Appellants' business operations and capture Appellants' business connections").  Given the risk that large-scale release of the Rusal Group's banking records presents, the Subpoenas should be quashed or at the very least restricted in their scope so as to protect the Rusal Group's private financial information from unnecessary and unwarranted exposure to its competitors.

### D.   A Protective Order Must Issue to Safeguard the Rusal Parties' Sensitive Records

Natica has sought and been granted broad access to the Rusal Parties' sensitive and confidential banking information.  At the same time, Natica stands accused in both Russia and Cyprus of fraud against the Rusal Group, see Pfeifer Decl. Exs. 1, 2, and is an undisputed competitor with various Rusal Group entities in relation to shipping contracts.  Unrestricted exposure of the Rusal Parties' banking records to Natica and the Natica Affiliates therefore will result in certain "clearly defined and very serious injury" to the Rusal Parties, as they will be unable to ensure the continued confidentiality and security of their account information.  Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 480 (S.D.N.Y. 1982) (citation and quotations omitted); Metal Transport, Inc. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A., No. 89 CIV. 8505 (JFK), 1990 WL 55687, at *3 (S.D.N.Y. Apr 26, 1990) (ordering entry of protective order where party alleged "requested discovery would disclose confidential

information to potential competitors"); see also Fed. R. Civ. P. Rule 26(c) (governing orders to protect "trade secret or other confidential research, development, or commercial information").

The Rusal Parties conferred in good faith with Natica to reach a compromise absent this Court's entry of a protective order.  See Pfeifer Decl. ¶¶ 9-10, 12-17.  The Rusal Parties attempted to negotiate a stipulation which would preserve the confidentiality of the Subpoena Responses long enough for the Court to determine the propriety Natica's conduct in obtaining the 1782 Order.  Id. ¶ 10.  This stipulation would have placed the parties on equal footing: Natica's counsel would retain the Subpoena Responses as "Attorney's eyes only" for the duration of the challenge to the Natica Application while the Rusal Parties' counsel would withhold its own subpoena responses from the Rusal Parties until resolution of the RTI Action. However, counsel for Natica released the Subpoena Responses to Natica while negotiations were ongoing, therefore rendering the proposed confidentiality stipulation worthless.  Id. ¶ 16.  Natica is currently free to use the majority of the Subpoena Responses without restriction from the Domestic Banks, id. ¶ 17, while RTI's counsel is bound by the Confidentiality Stipulation.

Natica's deceptive actions with respect to the proposed confidentiality stipulation highlight the risk the Rusal Parties face as long as Natica has possession of the Subpoena Responses.  The Rusal Parties therefore respectfully request that this Court enter a protective order to safeguard their confidential banking information which limits Natica's use and distribution of any responses to the Subpoenas to the parties and tribunals involved in the Foreign Proceedings.  See Fed. R. Civ. P. 26(c) (governing orders to protect "trade secret or other confidential research, development, or commercial information").[21]

---

[21] Under Section 1782(a), "[t]o the extent that the order does not prescribe otherwise," as is the case here, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."  Courts in the Second Circuit and elsewhere have construed the definition of "party" as

E.    **The Rusal Parties Should Be Permitted to Reopen and Intervene in This Proceeding**

The Rusal Parties must be permitted intervene in these proceedings in order to protect their interest in keeping sensitive, confidential commercial information out of the hands of their competitors.  See Chubb Ins. Co. of Europe SE, 2010 U.S. Dist. LEXIS 7200, at *21 (intervention in Section 1782(a) action for purposes of motion to quash subpoena seeking non-party's confidential information); Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan, 134 F.Supp.2d 528, 529 (S.D.N.Y. 2001) (nonparty had "direct, substantial, and legally protectable interest in th[e] case" sufficient for intervention where subpoena sought information regarding its accounts and transactions at third party bank) (citation and quotations omitted); United States v. American Tel. & Telegraph Co., 642 F.2d 1285 (D.C. Cir. 1980) (granting intervention as of right under Fed. R. Civ. P. 24(a) to non-party seeking to prevent disclosure of non-party's work product to its competitor, a party to the action).

1.    **The Rusal Parties Are Interested in the Natica Action**

The Rusal Parties have an interest in "the property or transaction that is the subject of the action," namely discovery of their confidential banking information.  The Subpoenas specifically seek the Rusal Parties' confidential banking information over a period of years and in the absence of intervention in these proceedings, Natica's free access to this information will "impair or impede the [Rusal Parties'] ability to protect [their] interest."  MasterCard Int'l Inc. v. Visa

---

used in the Federal Rules of Civil Procedure to apply to parties to the relevant foreign actions in actions under Section 1782(a).  See, e.g., In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 30 (S.D.N.Y. 1991) (holding that Federal Rules required notice of Section 1782(a) subpoena to anticipated party identified in foreign action); In re Letters Rogatory for Tokyo District Prosecutor's Office, 16 F.3d 1016, 1020 (9th Cir. 1994) (holding that the Federal Rules had been "violated in the collection of witness statements and documentary and physical evidence" where Section 1782(a) applicant did not notify defendants in foreign criminal action of subpoenas).  The Rusal Parties, therefore, as parties to the Foreign Proceedings would appear to have standing to seek a protective order from this Court even absent their intervention.

Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006).  Natica, an acknowledged competitor of

the Rusal Group who obtained the Rusal Parties' banking records without notice to them, and

which stands accused of <u>fraud</u> against the Rusal Parties in the Foreign Proceedings surely cannot

"adequately represent" their competition's interests.  <u>Id</u>.  Moreover, as the validity of Section

1782(a) relief in aid of the Cyprus Action is a contested issue in the RTI Action, RTI and the

Cyprus Plaintiffs should be permitted to intervene as parties who "ha[ve] a claim or defense that

shares with the main action a common question of law or fact."  <u>See</u> F.R.C.P. 24(b)(2); <u>see also</u>

<u>Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)</u>, 320 F.3d 291, 300 n.5 (2d Cir. 2003)

(noting that factors considered to determine eligibility to intervene under Rule 24(b)(2) are

"[s]ubstantially the same" as those considered under Rule 24(a)(2)).

### 2.     The Rusal Parties' Intervention Is Timely

The Rusal Parties have timely acted to protect their interests here.  <u>See</u> <u>Mastercard</u>, 471

F.3d at 390; <u>Eastern Potato Dealers, Inc. v. TNC Packaging Corp.</u>, 363 Fed.Appx. 819, 821 (2d

Cir. 2010) (finding motion to intervene timely where party seeking intervention filed letter with

court immediately upon learning of its interest and filed motion "when it became clear that it

would not get satisfaction by negotiation" with the parties to the action).  Much like the <u>Eastern</u>

<u>Potato</u> intervenors, immediately upon learning of the Natica Application, counsel for the Rusal

Parties notified Judges Crotty and Koeltl of Natica's gamesmanship, and requested to know

which court was the proper forum to bring a challenge to the 1782 Order.  <u>See</u> Pfeifer Decl. Ex.

12; <u>Eastern Potato</u>, 363 Fed.Appx. at 821 n.1 (noting that "no party was prejudiced" by movant's

decision not to intervene in the first instance because movant noticed opposing parties of its

objection and "immediately undertook negotiations with the parties in an attempt to protect its

interests").  Since the initial correspondence with the court, the Rusal Parties have actively

attempted to negotiate a protective order with Natica's counsel, and have brought this Motion

only after conferring in good faith with Natica and being unable to secure an agreement.  <u>See</u>

Pfeifer Decl. ¶ 16.  While these negotiations have been ongoing, Natica has been permitted broad

use of the Subpoena Responses, and the Rusal Parties have been unable to act further to protect

their confidential bank records.  The Rusal Parties have undertaken every effort to seek relief as

soon as possible, and should be permitted to intervene here in order to protect their interests.

## IV.    CONCLUSION

WHEREFORE, the Rusal Parties respectfully request that this Court reopen this action,

allow their intervention, vacate the 1782 Order and/or quash the Subpoenas.  In the alternative,

the Rusal Parties respectfully request that the Court enter an order modifying the Subpoenas as

the Court deems appropriate in order to protect the Rusal Group's confidential financial

information and enter a protective order restricting the use and distribution of any information

obtained in response to the Subpoenas.

Dated:  New York, New York
        November 28, 2012

Respectfully Submitted,

BAKER & HOSTETLER LLP

/s/ Timothy S. Pfeifer
Baker & Hostetler LLP
Timothy S. Pfeifer (tpfeifer@bakerlaw.com)
M. Elizabeth Howe (bhowe@bakerlaw.com)
45 Rockefeller Plaza
New York, NY 10111
212-589-4200 (tel.)
212-589-4201 (fax)

*Attorneys for RTI Limited, United Company
Rusal PLC, Alumina & Bauxite Co., Ltd., Rual
Trade Ltd., Calibre Properties Worldwide
Ltd., and Mont Cervin – Consultadoria E
Servicos Unipessoal LDA*