# Exhibit 1

## Part 2 of 9

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————————  :

In re ex parte Application of RTI LIMITED to          Case No. 12-misc-119
Take Discovery for Use in Actions Pending in        :
the District Court of Nicosia, Cyprus, and
Anticipated in the Court of Moscow, Russia          :

                                                                      :

———————————————————————————————  :

## DECLARATION OF TIMOTHY S. PFEIFER IN SUPPORT OF RTI LIMITED'S APPLICATION FOR ORDER UNDER 28 U.S.C. § 1782

I, Timothy S. Pfeifer, hereby declare as follows:

   1.  I am a partner at the law firm of Baker & Hostetler LLP, counsel to RTI Limited,

the Petitioner in this Application under 28 U.S.C. § 1782.

   2.  As an attorney of record, I am fully familiar with this case and the facts set forth

herein.  I have personal knowledge of the matters stated in this Declaration.

   3.  I submit this Declaration in support of the Petitioner's Application for an Order

Under 28 U.S.C. § 1782.

   4.  Attached hereto as Exhibit 1 is a copy of the original Greek language complaint in

*Rual Trade Ltd., et al., v. Raykov, et al.*, Eparchiako Dikasthrio Leukosias [EDL] [District Court,

Nicosia] 3582/2011 (Cyprus), and the Petitioner's English translated copy.

   5.  Attached hereto as Exhibit 2 is a copy of a disclosure made by Hellenic Bank

Public Company Ltd., Nicosia (Cyprus) branch in response to the ex parte application filed by

several entities in *Rual Trade Ltd., et al., v. Raykov, et al.*, Eparchiako Dikasthrio Leukosias

[EDL] [District Court, Nicosia] 3582/2011 (Cyprus).

6.      Attached hereto as Exhibit 3 a copy of the Greek language affidavit of William Robert Spiegelberger of Moscow, Russia, in support of the plaintiffs' complaint in *Bauxite Company of Guyana, Ltd. et al. v. Raykov, et al.*, Eparchiako Dikasthrio Leukosias [EDL] [District Court, Nicosia] 2058/2012 (Cyprus), and the Petitioner's English translated copy.

7.      Attached hereto as Exhibit 4 is a copy of a Russian language court ruling in criminal cases No. 664757 & 664809, Tver District Court, Moscow, Russian Federation, 2011, and the Petitioner's English translated copy.

8.      Attached hereto as Exhibit 5 is a copy of a Russian language petition filed with Judicial Captain R. B. Novikov, Senior Investigator of the Second Unit of the Investigative Administration of the Ministry of Internal Affairs of Russia for the City of Moscow (the "Ministry"), by attorney Andrey Valerievich Grokhotov requesting that an application dated February 9, 2012, seeking that the Ministry institute an investigation of certain defendants in Russia be joined with a criminal case (No. 664757) already pending, and the Petitioner's English translated copy.

9.      Under 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements made by me are true and correct.


Dated: New York, New York
         April 13, 2012

Timothy S. Pfeifer
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Email: tpfeifer@bakerlaw.com

# EXHIBIT 1

**BEFORE THE DISTRICT COURT OF NICOSIA**

Action No.:    3582 /2011

Between:

1.    RUAL TRADE LTD
2.    ALUMINA & BAUXITE COMPANY LTD
3.    CALIBRE PROPERTIES WORLDWIDE LTD
4.    MONT CERVIN – CONSULTADORIA E SERVICOS
      SOCIEDADE UNIPESSOAL, LDA

Plaintiffs

- and -

1.    Andrei Raikov (Andrey Raykov)
2.    Aldi Marine Ltd
3.    Dmitry Osipov (Dmitri Evgenievich Osipov)
4.    Natica Shipping Ltd
5.    Natica Shipping & Trading Ltd

Defendants

## STATEMENT OF CLAIM

1.    At all material times to the present action the Plaintiff companies  belong to the numerous affiliated companies of the UCR Group of Companies (herein after referred to as «UCR»), with its registered office at Nikoloyamskaya Street 13/1, Moscow, Russia. The Plaintiff Companies 1 – 3 have their registered offices in the British Virgin Islands, Plaintiff 4 at Se Funchal, they are engaged in supplying to UCR production sites raw materials and alumina which they buy from suppliers abroad.

1

RUS000001

2.  The Plaintiffs, in the course of their activities, used to charter vessels for the transportation of raw materials and/or bauxite and/or sub-products (e.g. alumina) from the suppliers to the production sites. The choice of the most appropriate vessels from the market was made with the advice and/or intervention of ship brokers.

3.  The Plaintiff companies further state that the managerial companies of UCR are responsible for acting and do act as intermediaries between the Plaintiffs and the freight brokers with the responsibility of taking managerial decisions on behalf of the Plaintiff Companies. At all material times "Russian Aluminium Management (RAM)" was one of those managerial companies of UCR.

4.  Defendant 1 was the General Director of RAM and Defendant 1 was employed on different top posts in the companies of UCR Group at all material times.

5.  At all times material to this action Defendant 2 is a limited liability company duly registered at the Registrar of Companies under Companies Law Ch. 113 with its registered office at Limassol, 24 Vyronos Avenue, P. Lordos Cetnre Block B, Office 201 and/or is a ship broker company which was under the control of Defendant 3.

6.  Defendant 3 at all material times was the representative of Defendant 4 and/or the sole counterpart of UCR in freight contracts and/or the sole and exclusive ship broker of UCR on the basis of Agreement between RAM and Defendant 4.

7.  At all material times to this action Defendant 4 is a limited liability company duly registered at the Registrar of Companies under Companies Law Ch. 113 with its registered office at Nicosia.

2

RUS000002

8.  At all material times to this action Defendant 5 is a limited liability company duly registered at the Registrar of Companies under Companies Law Ch. 113, whose principal shareholder is Defendant 3 with its registered office at the same address as Defendant's 2.

9.  In or about the years 2003 – 2005 Defendant 1 was employed by the Group of UCR Companies as a General Director of RAM and then from 2005 to the end of 2007 was employed on different top posts in the companies of UCR Group with the responsibility, among others, to organize the supplies of bauxite and alumina to the production units of the Group.

10. The Plaintiffs further state that in or about the year 2007 Defendant 1 held the position of the of Deputy General Director of the Raw Materials Division and also that the scope of his duties extended to the organization of the whole process of freight business of the Group, including first of all the business of the Plaintiff Companies. More specifically, the Plaintiffs allege that his duties, among others, involved searching for freight brokers and/or ship companies for the transportation of the Plaintiff's products and raw materials and advising the top Managers of UCR on the best freight policy for UCR.

11. Furthermore and/or further to the above the Plaintiff Companies state that under the managerial decisions of Defendant 1 they had, from time to time, entered into written agreements with Defendant 3, who represented himself as the Managing Director of Defendant 4. Following the decision of Defendant 1 who was, according to the Plaintiffs, handling the freight business, in or about the year 2003 Defendant 4, on the basis of Agreement signed on 7/10/2003 between RAM and Defendant 4, was appointed the sole and exclusive ship broker of UCR Group, and that Defendant 3 signed the said Agreement on the behalf of Defendant 4.

12. The Plaintiffs repeat their allegations mentioned above and further allege that UCR, which was represented by Defendant 1 who was the General Director of RAM, on 7/10/2003

3

RUS000003

entered into a written Agreement with Defendant 4 which was represented by its Managing Director, namely Defendant 3, according to which the said company was recognised and/or appointed as the sole and exclusive ship broker of UCR for one year with the possibility of renewal. The said Agreement in reality was in force until January 2008.

13. The allegation of the Plaintiff Companies is that under the initiative of the exclusive ship broker of UCR which at all material times was Defendant 4, namely a company under the control and/or management of Defendant 3, without inviting and/or calling for Tenders and a subsequent participation in a call for tenders for chartering business, UCR in or about 2007 entered into contracts and/or received fixture notes and/or invoices by/and or with Defendant 2.

14. Following the above, the Plaintiff Companies allege that Defendant 3 in his capacity as the representative of Defendant 4 was authorized to find the appropriate ship companies and/or vessel for chartering and/or organizing the work of the ship broker Companies under his control, including Defendant 2, and/or issuing fixture notes and/or invoices under the names of the above mentioned companies.

15. Following investigations conducted at the Financial Department of UCR and/or due to different fraudulent behaviours of Defendant 3, UCR decided to terminate on 23/1/2008 the Brokerage Agreement dated 7/10/2003. The Plaintiff Companies further state that as a result of the above Plaintiff 2 submitted an official complaint which relates to case no. 07-CIV-9647 of the United States District Court, Southern District of New World that was filed on 30/10/2007. This case was a case of fraud and conspiracy, similar to the present case. A settlement agreement was signed on 2/11/2007 which came into effect provided that full disclosure of all current agreements of Defendant 3 was made by Defendant 3 within seven (7) days from the signing of the agreement. The Plaintiffs further allege that this agreement was never honoured by Defendant 3.

4

16. In or about August 2010 relevant investigations were conducted in the servers of UCR, its subsidiaries and the Plaintiff Companies including a search in the archive of Defendant's 1 business e-mail account under the instructions of the General Director of UCR, Mr. Oleg Deripaska, who is the owner of the whole Group. The Plaintiff companies state that as a result of this investigation, personal non-official communications (e-mail letters) of Defendant 1 with the Hellenic Bank in Cyprus were discovered on the personal business e-mail account of Defendant 1. Amongst them, a statement of account No ████████9401 belonging to the Defendant 1 in Hellenic Bank of Cyprus for the period 1/01/2007 to 16/01/2008 was found. This statement was received by Defendant 1 at his request from the Hellenic Bank on which it is written that three transfers (two of which are referred to as "bonuses" for 2-nd and 3-rd quarters) in the sums of $220.456,00, $250.366,00 and $198.200,00 were made to the personal account of Defendant 1 in Cyprus.

17. The allegation of the Plaintiff companies and according to the above mentioned investigation in the Financial Department of UCR, is that such bonuses were never paid to Defendant 1 either by any UCR affiliated company or by the Plaintiffs and/or sent to or kept at the Defendant's 1 personal bank accounts.

18. According to the analytical statements of Defendant 1's account no. ████████94-01, the Plaintiff companies repeat their previous allegations and further allege that they have suffered losses reaching the amount of USD 669.022,00 due to the illegal plan of Defendant 1 aiming at securing his personal financial benefits to the detriment of the Plaintiff companies unconventionally and/or in breach of the fiduciary duty owed to them and/or by fraud and/or money laundering and/or tax evasion, as a result of the illegal transfers of amounts described as "bonuses" from the bank account of Defendant 2 to the personal bank account of Defendant 1. The above mentioned allegations of the Plaintiff companies have been confirmed in the course of judicial proceedings that were raised within the jurisdiction of the Cyprus courts.

RUS000005

19. More specifically, the Plaintiff companies allege that from the account no. ███████48-01 which belongs to Defendant 2 the amount of (a) USD 220.456,00 was transferred on 27/4/2007; (b) USD 250.346,00 named as bonus for 2nd quarter of the period was transferred on 25/7/2007 and (c) USD 198.200,00 named as bonus for 3rd quarter was transferred on 8/10/2007, to the account of Defendant 1's account no. ███████94-01.

20. The above total of USD 669.022,00 that has been transferred to the Defendant's 1 bank account in Cyprus is equivalent to approximately 2.5% of the total value of the transactions from the Plaintiff Companies to Defendant 2 for the year 2007. The Plaintiffs further state that according to the existing invoices, Defendant 2 in 2007 arranged for the shipment of 478,037 tons of bauxite (8 ships) and 78,736 tons of argillite (3 ships) using the "dead" freight for the companies that belong to UCR (Albaco, Calibre, Mont Cervin). All these supplies were paid in total and the total amount for the services offered and paid and/or the total value for the transactions made in 2007 from the Plaintiff Companies to the Defendant 2 amounts to USD25.467.137,60.

21. The Plaintiff companies basically state that during the examination and/or investigation the true freight rates in the aforementioned contracts were contrasted and/or compared with the freight rates in the market in the light of the standard rates for the routes in relation to the specific classes of ships (Panamax – for the transportation of bauxite, Handysize – for the transportation of argillite). They further state that for the calculation of the freight rates of the market they used the AXS Dry Voyage Calculator V3.2 AXS Marine (www.AXSMarine.com) programme/rate calculator and the average fuel prices (www.bancosta.it) which were in effect at the time of the scheduled arrival of the ship at the lay/can.

22. Further to the above, the Plaintiffs state that according to the results of the above examination and/or investigation, it was noted that for the 9 out of the 11 supplies for the transportation of bauxite and/or argillite, for which the above examination was made, it was

6

RUS000006

applied unconventionally and/or fraudulently and/or illegally an increased freight rate in relation to the terms of the market. The total amount for the overcharge amounts to USD 2.696.660,00. It is therefore an allegation of the Plaintiff companies that the loss caused by Defendant 2 and suffered by the Plaintiff companies of UCR in relation to those 9 supplies amounts at least to USD 2.696.660,00.

## DETAILS OF FRAUD AND/OR MALICE AND/OR FALSE PRETENCES BY THE DEFENDANTS AT THE EXPENSE OF THE PLAINTIFF COMPANIES

i.   Defendant 1, having taken advantage of and/or abusing his position and/or UCR's and the Plaintiffs' trust in him, created and/or organised in cooperation and/or communication with Defendants 2-5 a plan for the misappropriation and/or misuse of the assets of the Plaintiffs and/or UCR Group.

ii.   In the course of his illegal plan, Defendant 1 acted in such a manner whereby all and/or the majority of the charters are conducted from and/or through and/or with the involvement of Defendant 4 so that it would result to be the sole and/or exclusive ship broker of the Plaintiffs and/or UCR Group.

iii.   The Defendants acted on purpose and/or with false pretences in assuring that Defendant 2 obtains the chartering business of the Plaintiffs and/or UCR Group without a previous call for tenders.

iv.   The Defendants concealed on purpose and/or with false pretences the lower market freight rates and/or the freight rates according to the terms of the market from the Plaintiffs and/or UCR Group.

7

v.　　The Defendants concealed on purpose and/or with false pretences the overcharges which they applied at the expense of the Plaintiffs and/or UCR Group by issuing the related invoices and/or fixture notes which Plaintiffs and/or UCR Group paid unsuspecting the truth.

vi.　　Defendant 1 concealed on purpose from the Plaintiffs and/or UCR Group the receipt of the transfers and/or large amounts from the account of Defendant 2, with the cooperation and/or in communication with the rest of the Defendants, to his personal bank account no. ███████94-01 at Hellenic Bank in Cyprus resulting in unjustifiably and/or illegally overburdening the financial securities of the Plaintiffs and/or UCR Group.

vii.　　 The Defendants concealed on purpose from the Plaintiffs and/or UCR Group the relationship between Defendant 3 and Defendants 2, 4 and 5.

viii.　　The Defendants on purpose continue to conceal from the Court the illegal and consecutive transfer of sums made in 2007 from Defendant 2 , to the personal bank account no. ███████94-01 of Defendant 1 at Hellenic Bank in Cyprus.

23. The Plaintiffs further state that due to the above conclusions and/or investigations they referred to the Russian authorities filing their accusations against Defendant 1. On 25/5/2011 they requested that criminal proceedings should be initiated against Defendant 1 and others setting out all the relevant facts and evidence.

24. On 30/5/2011 the Senior Investigator of the Second Unit of the Investigative Section of the Main Investigative Agency at the State Administration for Internal Affairs for the City of Moscow issued a decision of the same date (a) opening a criminal case; (b)

RUS000008

commencing an investigation in connection with the same, and (c) transmitting a copy of the present decision to the Public Prosecutor of the City of Moscow.

25. The Plaintiffs also state that on 31/5/2011 the Operational-Investigative Bureau No. 4 of the Department of Economic Security as a result of the review of the request of the Plaintiffs opened the criminal case No. 664757. In addition on 7/7/2011 Defendant 1 was arrested and charged with committing crime under the Criminal Procedural Code of the Russian Federation.

26. On 8/7/2011 the Tver District Court of the City of Moscow issued a decision denying the application of the above said Senior Investigator and Defendant 1 was immediately released from custody. The Plaintiffs state that after the above said decision dated 8/7/2011, Defendant 1 left for Minsk (Belarus) on 11/7/2011 and departed from there on the same date. Following this development and/or since it was not possible for Defendant 1 to be traced from the investigative authorities, a request was filed by INTERPOL, Moscow branch dated 12/8/2011 Defendant 1 was put on the federal wanted list, wanted case No. 10758.

27. Later on 22/8/2011 Defendant 1 was put on the international wanted list under the category of "European economic crime". The Plaintiffs allege that on 30/8/2011, after adducing sufficient evidence showing that crime had been committed and the association of Defendant 1 with the criminal offences under investigation, and taking into account his escape to Minsk on 11/7/2011, who also did not reveal to the Investigator his true residence, the Tver District Court of the City of Moscow issued a warrant of arrest against Defendant 1.

28. It is the allegation of the Plaintiff companies that Defendant 1 is avoiding on purpose to appear before the Russian investigative authorities as regards the accusations filed against him by the Plaintiffs.

RUS000009

29. Following the above, the Plaintiff companies allege that that Defendant 1, having taken advantage of and/or abusing his position and/or office and/or UCR's and the Plaintiffs' trust and/or confidence in him, has in many ways obtained illegal financial gains at the expense of the Plaintiffs and consequently UCR as well. The Plaintiffs claim that having the full power and/or control of all the charters concerning the Plaintiffs, it is obvious that Defendant 1 conspired with Defendants 2, 3, 4 and 5, in order for Defendant 3 who had the control of Defendants 2, 4 and 5 to become the sole and exclusive broker for the Plaintiffs.

30. It is the Plaintiffs' allegation that in this way, Defendants 2, 3, 4 and 5 enjoyed themselves and/or solely and/or entirely the high and/or over the average market rates economic benefits of the charter, and Defendant 1 acquired monetary benefit which belonged to the Plaintiffs, and/or which was trusted to the Defendant 1 who had the management of their monies.

31. The Plaintiff companies repeat their above mentioned allegations and state that due to the aforementioned unlawful and/or malicious acts of Defendants 1 in relation to the abuse of his position and/or office and/or UCR's and the Plaintiffs' trust and/or confidence in him, in association and/or communication with Defendants 2-5 caused damages amounting to USD 2.696.660,00 to the Plaintiffs as per paragraph 22 above.

32. The Plaintiffs repeating the above further alleged that the aforementioned unlawful acts of Defendants 1 to 5 have caused damages to the Plaintiffs amounting to USD 669.022,00 as per the amounts paid by the Plaintiffs as charter costs which were not received for the purpose intended but illegally ended up with Defendant 1, who abused his position and/or office and/or UCR's and the Plaintiffs' trust and/or confidence in him.

RUS000010

33. For all the above reasons the Plaintiff companies raised the present actions and the Plaintiffs claim against the Defendants the following:

(A) Declaratory judgment stating and/or recognising that the amounts of money that are deposited in bank accounts at the Bank of Defendants 6 in the name and/or for the benefit of Defendant 1 are property of the Plaintiffs and/or held by Defendants 6 as trustees and/or constructive trustees for the Plaintiffs and/or is a result of malice and/or fraud and/or conspiracy and/or defraud of the Plaintiffs by Defendants 1-5 and/or amounts attributable to Defendant 1 to be paid and/or returned to the Plaintiffs on the basis of tracing principles and/or principles of equity and/or otherwise.

(B) Declaratory judgment stating that Defendants 1 - 5 conspired against the Plaintiffs and/or acted maliciously and/or fraudulently and/or for the purpose of defrauding the Plaintiffs.

(C) Judgement by the court ordering Defendants 1-5 to return and/or pay to the Plaintiffs all sums above mentioned and/or under the principles of unjust enrichment.

(D) Compensation for USD 669.022,00 and/or the equivalent in Euro as per paragraph 32 above.

(E) Compensation for USD 2.696.660,00 and/or the equivalent in Euro as per paragraph 31 above.

(F) Exemplary and/or punitive damages.

11

RUS000011

(G)     Legal interest.


(H)     Costs of service plus expenses plus VAT (NO VAT: 10271567N).




(Sign.)………………………………………

**MICHAEL VORKAS & ASSOCIATES LLC**

12

RUS000012

Δ.Θ. 347

ΕΝΩΠΙΟΝ ΕΠΑΡΧΙΑΚΟΥ ΔΙΚΑΣΤΗΡΙΟΥ ΛΕΥΚΩΣΙΑΣ

Αρ. Αγωγής: 3582/2011

Μεταξύ:

1. RUAL TRADE LTD
2. ALUMINA & BAUXITE COMPANY LTD
3. CALIBRE PROPERTIES WORLDWIDE LTD
4. MONT CERVIN – CONSULTADORIA E SERVICOS
   SOCIEDADE UNIPESSOAL, LDA

Εναγόντων

- και -

1. Andrei Raikov (Andrey Raykov)
2. Aldi Marine Ltd
3. Dmitri Osipov (Dmitri Evgenievich Osipov)
4. Natica Shipping Ltd
5. Natica Shipping & Trading Ltd

Εναγομένων

## ΕΚΘΕΣΗ ΑΠΑΙΤΗΣΕΩΣ

1. Κατά τους ουσιώδης προς την παρούσα αγωγή χρόνους οι Ενάγουσες εταιρείες είναι εκ των θυγατρικών εταιρειών του Ομίλου Εταιρειών της UC RUSAL GROUP (στο εξής «η UCR»), ο οποίος έχει το εγγεγραμμένο του γραφείο στην Μόσχα, στην οδό Νικολοϋαμάσκαγια 13/1 στην Ρωσία. Οι Ενάγουσες εταιρείες 1 έως και 3 έχουν το εγγεγραμμένο γραφείο τους στις Βρετανικές Παρθένες Νήσους, η δε Ενάγουσα 4 στη Se Funchal, στη Πορτογαλία, και ασχολούνται με την παροχή στις μονάδες παραγωγής της UCR των πρώτων υλών και αλουμίνας που αγοράζουν από προμηθευτές στο εξωτερικό.

2. Οι Ενάγουσες εταιρείες αναφέρουν ότι στα πλαίσια των δραστηριοτήτων τους, συνήθιζαν να ναυλώνουν πλοία για την μεταφορά των πρώτων υλών και/ή βωξίτη και/ή υπό-προϊόντων (π.χ. αλουμίνα) από τους προμηθευτές προς τις μονάδες παραγωγής. Η εκλογή των πιο κατάλληλων πλοίων γινόταν με την συμβουλή και/ή την παρέμβαση μεσιτών πλοίων.

3. Οι Ενάγουσες εταιρείες περαιτέρω αναφέρουν ότι οι εταιρείες διαχείρισης της UCR είναι υπεύθυνες να ενεργούν και ενεργούν ως μεσολαβητές, μεταξύ των Εναγουσών εταιρειών και των ναυλομεσιτών και έχουν την ευθύνη λήψης διοικητικών αποφάσεων εκ μέρους των Εναγουσών Εταιρείων. Καθ' όλους τους ουσιώδεις χρόνους η εταιρεία «Russian Aluminum Management (RAM)» ήταν μία από τις διαχειρίστριες εταιρείες της UCR.

1



ΠΙΣΤΟ ΑΝΤΙΓΡΑΦΟ
Νβ Ευδοκίαν
ΠΡΩΤΟΚΟΛΛΗΤΗΣ Α

RUS000013

4. Ο Εναγόμενος 1 ήτο ο Γενικός Διευθυντής της εταιρείας RAM και κατείχε διάφορες υψηλόβαθμες θέσεις σε άλλες εταιρείες διαχείρισης της UCR καθ' όλους τους ουσιώδεις χρόνους.

5. Κατά τους ουσιώδης προς την παρούσα αγωγή χρόνους η Εναγομένη 2 εταιρεία τυγχάνει εταιρεία Περιορισμένης Ευθύνης νομότυπα εγγεγραμμένη στον Έφορο Εταιρειών δυνάμει του Περί Εταιρειών Νόμου Κεφ. 113 με έδρα την Λεμεσό, στην Λεωφόρο Βύρωνος 24, P. Lordos Centre Block B, Γραφείο 201, Λεμεσό και/ή τυγχάνει πλοιομεσιτική εταιρεία που ευρίσκετο υπό τον έλεγχό του Εναγομένου 3.

6. Ο Εναγόμενος 3 κατά τους ουσιώδης χρόνους ήτο ο αντιπρόσωπος της Εναγομένης 4 εταιρείας και/ή ο αποκλειστικός συμβαλλόμενος της UCR στις συμφωνίες ναύλωσης με την Εναγόμενη 2 και/ή ο μοναδικός και αποκλειστικός μεσίτης πλοίων του Ομίλου UCR στη βάση Συμφωνίας που υπογράφτηκε μεταξύ της RAM και της Εναγομένης 4 εταιρείας.

7. Καθ' όλους τους ουσιώδης χρόνους η Εναγομένη 4 τυγχάνει εταιρεία Περιορισμένης Ευθύνης νομότυπα εγγεγραμμένη στον Έφορο Εταιρειών δυνάμει του Περί Εταιρειών Νόμου Κεφ. 113 με έδρα την Λευκωσία.

8. Κατά τους ουσιώδης προς την παρούσα αγωγή χρόνους η Εναγομένη 5 εταιρεία τυγχάνει εταιρεία Περιορισμένης Ευθύνης νομότυπα εγγεγραμμένη στον Έφορο Εταιρειών δυνάμει του Περί Εταιρειών Νόμου Κεφ. 113 της οποίας κύριος μέτοχος τυγχάνει ο Εναγόμενος 3 και με έδρα την ανωτέρω διεύθυνση του εγγεγραμμένου γραφείου της Εναγομένης 2.

9. Κατά ή περί τα έτη 2003 – 2005 ο Εναγόμενος 1 εργοδοτείτο από τον Όμιλο Εταιρειών UCR ως Γενικός Διευθυντής της RAM και στην συνέχεια, από το 2005 μέχρι το τέλος του 2007 εργοδοτήθηκε σε διάφορες υψηλές θέσεις στις εταιρείες του Ομίλου UCR, έχοντας, μεταξύ άλλων, ως καθήκον την οργάνωση της παροχής βωξίτη και αλουμίνας στις μονάδες παραγωγής του Ομίλου.

10. Οι Ενάγουσες περεταίρω αναφέρουν ότι κατά ή περί το έτος 2007 ο Εναγόμενος 1 κατείχε την θέση του Αναπληρωτή Γενικού Διευθυντή των Τμημάτων Πρώτων Υλών καθώς επίσης ότι τα καθήκοντά του επεκτείνονταν στην οργάνωση της όλης διαδικασίας των επιχειρήσεων μεταφοράς εμπορευμάτων του Ομίλου, συμπεριλαμβανομένων, πρωτίστως, και αυτών που αφορούσαν τις Ενάγουσες Εταιρείες. Πιο συγκεκριμένα, οι Ενάγουσες ισχυρίζονται ότι τα καθήκοντά του συμπεριλάμβαναν, μεταξύ άλλων, την ανεύρεση ναυλομεσιτών και/ή ναυτιλιακών εταιρειών για την μεταφορά των προϊόντων των Εναγουσών και/ή των πρώτων υλών, ως επίσης και την παροχή συμβουλευτικών υπηρεσιών προς τους ανώτερους διευθυντές της UCR αναφορικά με την καλύτερη πολιτική μεταφορών για τον Όμιλο της UCR.



2



RUS000014

11. Επιπρόσθετα και/ή πέραν των ανωτέρω οι Ενάγουσες εταιρείες αναφέρουν πως ένεκα των διοικητικών αποφάσεων του Εναγομένου 1, συμβάλλονταν από καιρό εις καιρό με τον Εναγόμενο 3 στη βάση έγγραφων συμφωνιών, ο οποίος παρουσιαζόταν ως ο Διευθυντής της Εναγομένης 4 εταιρείας. Σύμφωνα δε με σχετική απόφαση του Εναγομένου 1, ο οποίος χειρίζετο κατά τις Ενάγουσες εταιρείες τα ζητήματα ναύλωσης, κατά ή περί το έτος 2003, η Εναγομένη 4 εταιρεία διορίσθηκε ο μοναδικός και αποκλειστικός μεσίτης πλοίων του Ομίλου UCR στη βάση Συμφωνίας που υπογράφτηκε κατά ή περί τις 7/10/2003 μεταξύ της RAM και της Εναγομένης 4, εκ μέρους της οποίας υπέγραψε ο Εναγόμενος 3.

12. Οι Ενάγουσες επαναλαμβάνουν τους ως άνω ισχυρισμούς τους και περαιτέρω ισχυρίζονται ότι η UCR, την οποία εκπροσωπούσε ο Εναγόμενος 1 ως ο Γενικός Διευθυντής της RAM, κατά ή περί τις 7/10/2003 σύναψε συμφωνία με την Εναγομένη 4 εταιρεία, την οποία εκπροσωπούσε ο εκτελεστικός διευθυντής της, ήτοι ο Εναγόμενος 3, σύμφωνα με την οποία η αναφερόμενη εταιρεία αναγνωρίσθηκε ως μοναδικός και αποκλειστικός ναυλομεσίτης της UCR για χρονικό διάστημα 1 έτους και με την δυνατότητα ανανέωσης. Η αναφερόμενη συμφωνία στην πραγματικότητα ήταν σε ισχύ μέχρι τον Ιανουάριο του 2008.

13. Είναι ισχυρισμός των Εναγουσών εταιρειών ότι με πρωτοβουλία του αποκλειστικού ναυλομεσίτη της UCR που κατά τους ουσιώδης προς την παρούσα αγωγή χρόνους ήτο η Εναγομένη 4, η οποία διαχειρίζετο και/ή ελέγχετο από τον Εναγόμενο 3, χωρίς την προκήρυξη και/ή διεξαγωγή διαγωνισμού για προσφορές και μετέπειτα συμμετοχή σε διαγωνισμό εκτέλεσης έργου και/ή ναυλώσεων, η UCR κατά ή περί το έτος 2007 σύναψε συμβόλαια ναύλωσης (Fixture Notes) με την Εναγομένη 2 εταιρεία.

14. Ως εκ των ανωτέρω είναι ισχυρισμός των Εναγουσών εταιρειών πως ο Εναγόμενος 3 υπό την ιδιότητά του ως αντιπρόσωπος της Εναγομένης 4 ήτο εξουσιοδοτημένος να προβεί σε ανεύρεση των πιο κατάλληλων ναυτιλιακών εταιρειών και/ή πλοίων για ναύλωση και/ή να οργανώσει τις εργασίες των πλοιομεσιτικών εταιρειών που είχε υπό τον έλεγχό του, συμπεριλαμβανομένης της Εναγομένης 2 και/ή της έκδοσης σημειωμάτων παραγγελιών και/ή τιμολογίων από αυτές.

15. Κατόπιν ερευνών που διεξήχθησαν από τις Ενάγουσες εταιρείες στο Οικονομικό Τμήμα της UCR και/ή συνεπεία διάφορων ατασθαλιών και/ή συμπεριφορών του Εναγόμενου 3, οι Ενάγουσες αναφέρουν ότι η UCR αποφάσισε να τερματίσει κατά ή περί τις 23/1/2008 τη συμφωνία μεσιτείας ημερομηνίας 7/10/2003. Περαιτέρω αναφέρουν πως ως αποτέλεσμα των ανωτέρω η Ενάγουσα 2 προέβηκε σε επίσημη καταγγελία που αφορά την υπόθεση με αριθμό 07-CIV-9647 στο Αμερικανικό Επαρχιακό Δικαστήριο της Νότιας Επαρχίας του Νέου Κόσμου που καταχωρήθηκε κατά ή περί τις 30/10/2007. Η υπόθεση αυτή αποτελούσε, επίσης, υπόθεση απάτης και συνωμοσίας, παρόμοια με τα περιστατικά της υπό τον ως άνω αριθμό και τίτλο αγωγής. Κατά ή περί τις 2/11/2007 υπεγράφη τελικά συμφωνία συμβιβασμού, η οποία τέθηκε σε ισχύ υπό την προϋπόθεση ότι εντός 7 ημερών από την υπογραφή της ο Εναγόμενος 3 θα προέβαινε σε πλήρη

3



RUS000015

αποκάλυψη όλων των πρόσφατων συμφωνιών του. Είναι δε ισχυρισμός των Εναγουσών ότι η εν λόγω συμφωνία ουδέποτε τιμήθηκε από τον Εναγόμενο 3.

16. Κατά ή περί τον Αύγουστο του 2010 διεξήχθη έρευνα στους διακομιστές (servers) της UCR, των θυγατρικών της εταιρειών και των Εναγουσών εταιρειών ως επίσης και έρευνα στο αρχείο του προσωπικού επαγγελματικού ηλεκτρονικού ταχυδρομείου του Εναγομένου 1. Οι Ενάγουσες εταιρείες αναφέρουν ότι ως αποτέλεσμα της εν λόγω έρευνας αποκαλύφθησαν ανεπίσημες αλληλογραφίες μεταξύ του Εναγομένου 1 και της Ελληνικής Τράπεζας στην Κύπρο. Μεταξύ αυτών, ανακαλύφθηκε μία κατάσταση λογαριασμού υπ' αρ. ███████94-01, ο οποίος ανήκει στον Εναγόμενο 1 στην Ελληνική Τράπεζα στην Κύπρο, που αφορά την περίοδο 1/01/2007 με 16/01/2008 στην οποία αναγράφονται 3 μεταφορές ποσών (2 από αυτές ονομάζονται «φιλοδωρήματα» για το 2ο και 3ο τετράμηνο) ύψους USD220.456,00, USD 250.366,00 και USD 198.200,00 που έγιναν στον λογαριασμό του Εναγομένου 1 στην Κύπρο.

17. Είναι ισχυρισμός των Εναγουσών εταιρειών καθώς επίσης και σύμφωνα με την ως άνω έρευνα που διεξήχθη στο Οικονομικό Τμήμα της UCR, πως καμία από τις θυγατρικές της UCR και καμία εκ των Εναγουσών εταιρειών κατέβαλε καθ' οιονδήποτε χρόνο τέτοια φιλοδωρήματα προς τον Εναγόμενο 1 καθ ότι τα ισχυριζόμενα φιλοδωρήματα ουδέποτε στάλθηκαν ή κρατήθηκαν στους προσωπικούς λογαριασμούς του Εναγομένου 1.

18. Σύμφωνα με τις αναλυτικές καταστάσεις του λογαριασμού του Εναγομένου 1 υπ' αρ. ███████94-01, οι Ενάγουσες εταιρείες επαναλαμβάνουν τους ως άνω ισχυρισμούς τους και περαιτέρω ισχυρίζονται ότι έχουν υποστεί ζημιές ύψους USD 669.022,00 συνεπεία του παράνομου σχεδίου του Εναγομένου 1 που είχε στόχο την εξασφάλιση προσωπικών οικονομικών ωφελημάτων εις βάρος των Εναγουσών εταιρειών αντισυμβατικά και/ή κατά παράβαση της σχέσης εμπιστευτικότητας του Εναγομένου 1 με αυτές και/ή με απάτη (fraud) και/ή με ξέπλυμα παράνομου χρήματος (money laundering) και/ή με φοροδιαφυγή (tax evasion), ένεκα των παράνομων μεταφορών ποσών περιγραφόμενων ως «φιλοδωρημάτων» από τον λογαριασμό της Εναγομένης 2 εταιρείας στον προσωπικό λογαριασμό του Εναγομένου 1. Οι ως άνω ισχυρισμοί των Εναγουσών εταιρειών επιβεβαιώθηκαν κατόπιν δικαστικών διαδικασιών που ηγέρθηκαν εντός της δικαιοδοσίας των κυπριακών Δικαστηρίων.

19. Συγκεκριμένα, οι Ενάγουσες εταιρείες ισχυρίζονται ότι από τον λογαριασμό υπ' αρ. ███ ███████48-01 της Εναγομένης 2 μεταφέρθηκαν στο προσωπικό λογαριασμό του Εναγομένου 1 υπ' αρ. ███████94-01 (α) το ποσό των USD220.456,00 κατά ή περί τις 27/4/2007, (β) το ποσό των USD250.346,00, το οποίο ονομάζεται ως φιλοδώρημα για το 2ον τετράμηνο της περιόδου κατά ή περί τις 25/7/2007 και (γ) το ποσό των USD198.200,00, το οποίο ονομάζεται ως φιλοδώρημα για το 3ον τετράμηνο της περιόδου κατά ή περί τις 8/10/2007.

20. Το ως άνω συνολικό ποσό των USD669.022,00 το οποίο εμβάστηκε στον προσωπικό λογαριασμό του Εναγομένου 1 στην Κύπρο, ισοδυναμεί περίπου με το 2.5% της

4



RUS000016

συνολικής αξίας των συναλλαγών μεταξύ των Εναγουσών εταιρειών προς την Εναγόμενο 2 για το έτος 2007. Οι Ενάγουσες περαιτέρω αναφέρουν ότι σύμφωνα με τα υπάρχοντα τιμολόγια, η Εναγόμενη 2 εταιρεία κατά ή περί το έτος 2007 διοργάνωσε ναυλομεταφορές των 478,037 τόνων βωξίτη (8 πλοία) και των 78,736 τόνων αργιλίτη (3 πλοία) με τον υπολογισμό του «νεκρού» ναύλου για τις εταιρείες που ανήκουν στην UCR (Albaco, Calibre, Mont Cervin). Όλες οι προμήθειες αυτές πληρώθηκαν εξολοκλήρου και το συνολικό ποσό των υπηρεσιών που προσφέρθηκαν και πληρώθηκαν και/ή η συνολική αξίας των συναλλαγών από τις Ενάγουσες εταιρείες προς την Εναγομένη 2 για το έτος 2007 ανέρχεται σε USD 25.467.137,60.

21. Οι Ενάγουσες ουσιαστικά αναφέρουν ότι κατά την διεξαγωγή ελέγχου και/ή διερεύνησης τα πραγματικά ναυλολόγια στα προαναφερόμενα συμβόλαια συγκρίθηκαν με τα ναυλολόγια της αγοράς στα δεδομένα δρομολόγια για τις συγκεκριμένες τάξεις πλοίων (Panamax – για μεταφορά βωξίτη, Handysize – για μεταφορά αργιλίτη). Επιπρόσθετα αναφέρουν ότι για τον υπολογισμό των ναυλολογίων αγοράς χρησιμοποιήθηκαν πρόγραμμα-υπολογιστής του ναυλολογίου AXS Dry Voyage Calculator V3.2 AXS Marine (www.AXSMarine.com) και μεσαίες τιμές καυσίμων (www.bancosta.it) που ήταν σε ισχύ κατά το χρόνο της προγραμματισμένης άφιξης πλοίου στο λιμάνι φόρτωσης (lay/can).

22. Πέραν των ανωτέρω, οι Ενάγουσες αναφέρουν ότι σύμφωνα με τα αποτελέσματα του ελέγχου και/ή έρευνας διαπιστώθηκε ότι στις 9 από τις 11 προμήθειες για τη μεταφορά βωξίτη και/ή αργιλίτη, για τις οποίες έγινε η ως άνω ανάλυση, εφαρμοζόταν αντισυμβατικά και/ή δόλια και/ή παράνομα επαυξημένο σε σύγκριση με τους όρους της αγοράς ναυλολόγιο. Το συνολικό ποσό της υπερχρέωσης ανέρχεται σε USD 2.696.660,00. Είναι συνεπακόλουθα ισχυρισμός των Εναγουσών εταιρειών ότι η ζημιά που προκάλεσε η Εναγομένη 2 εταιρεία στις Ενάγουσες εταιρείες της UCR αναφορικά με τις 9 προμήθειες αποτελεί τουλάχιστον USD 2.696.660,00.

ΛΕΠΤΟΜΕΡΕΙΕΣ ΑΠΑΤΗΣ ΚΑΙ/Η ΔΟΛΟΥ ΚΑΙ/Η ΨΕΥΔΩΝ ΠΑΡΑΣΤΑΣΕΩΝ ΕΚ ΜΕΡΟΥΣ ΤΩΝ ΕΝΑΓΟΜΕΝΩΝ ΣΕ ΒΑΡΟΣ ΤΩΝ ΕΝΑΓΟΥΣΩΝ ΕΤΑΙΡΕΙΩΝ

i. Ο Εναγόμενος 1 καταχρώμενος και/ή εκμεταλλευόμενος την θέση και/ή το αξίωμα του και/ή την εμπιστοσύνη των Εναγουσών και/ή του Ομίλου UCR επινόησε σε συνεννόηση και/ή συνεργασία με τους Εναγομένους 2-5 το σχέδιο απόσπασης και/ή υπεξαίρεσης και/ή σφετερισμού των χρημάτων των Εναγουσών και/ή του Ομίλου UCR.

ii. Ο Εναγόμενος 1 στα πλαίσια του παράνομου σχεδίου του ενήργησε ώστε όλες και/ή η πλειοψηφία των ναυλώσεων να διεξάγεται από και/ή μέσω και/ή με την

5



RUS000017

μεσολάβηση της Εναγομένης 4 με αποτέλεσμα αυτή να καταστεί ο μοναδικός και/ή αποκλειστικός ναυλομεσίτης των Εναγουσών και/ή του Ομίλου UCR.

iii. Οι Εναγόμενοι ενήργησαν επί σκοπώ και/ή με ψευδείς παραστάσεις ώστε η Εναγομένη 2 να εξασφαλίσει τα συμβόλαια ναύλωσης των Εναγουσών και/ή του Ομίλου UCR χωρίς την προηγούμενη διεξαγωγή οποιουδήποτε διαγωνισμού προσφορών.

iv. Οι Εναγόμενοι απέκρυψαν επί σκοπώ και/ή χρησιμοποιώντας ψευδείς παραστάσεις τις χαμηλότερες αγοραίες τιμές ναυλώσεων και/ή τα ναυλολόγια σύμφωνα με τους όρους της αγοράς από τις Ενάγουσες και/ή τον Όμιλο UCR.

v. Οι Εναγόμενοι απέκρυψαν επί σκοπώ και/ή με ψευδείς παραστάσεις τις υπερχρεώσεις στις οποίες προέβαιναν σε βάρος των Εναγουσών και/ή του Ομίλου UCR εκδίδοντας σχετικά τιμολόγια και/ή χρεώσεις με υψηλές τιμές που οι Ενάγουσες και/ή ο εν λόγω Όμιλος εταιρειών εξόφλησε ανυποψίαστα.

vi. Ο Εναγόμενος 1 απέκρυψε επί σκοπώ την λήψη εμβασμάτων και/ή την μεταφορά μεγάλων ποσών από την Εναγομένη 2 με την συνεργασία και/ή συνεννόηση των υπολοίπων Εναγομένων από τις Ενάγουσες και/ή τον Όμιλο UCR στον τραπεζικό του λογαριασμό υπ' αρ. ▮▮▮▮▮94-01 στην Ελληνική Τράπεζα στην Κύπρο επιβαρύνοντας αδικαιολόγητα και/ή παράνομα τα οικονομικά των Εναγουσών και/ή του Ομίλου UCR.

vii. Οι Εναγόμενοι απέκρυψαν επί σκοπώ από τις Ενάγουσες και/ή τον Όμιλο UCR την σχέση του Εναγομένου 3 μετά των Εναγομένων 2, 4 και 5.

viii. Οι Εναγόμενοι επί σκοπώ συνεχίζουν να αποκρύπτουν από το Δικαστήριο την παράνομη και διαδοχική μεταφορά χρημάτων κατά το έτος 2007 από την Εναγομένη 2 στον προσωπικό λογαριασμό υπ' αριθμό ▮▮▮▮▮94-01 του Εναγομένου 1 στην Ελληνική Τράπεζα στην Κύπρο.

23. Οι Ενάγουσες περαιτέρω αναφέρουν πως ένεκα των ως άνω διαπιστώσεων και/ή ερευνών αυτές αποτάθηκαν στις Ρωσικές Αρχές προσάπτοντας κατηγορίες εναντίον του Εναγομένου 1. Κατά ή περί τις 25/5/2011 ζήτησαν όπως ασκηθεί ποινική δίωξη εναντίον του Εναγομένου 1 και άλλων προσώπων καταγράφοντας όλα τα στοιχεία και σχετικά γεγονότα.

24. Κατά ή περί τις 30/5/2011 ο Ανώτερος Ανακριτής του 2ου τομέα του Τμήματος Εγκληματολογικής Έρευνας του Κεντρικού Τμήματος Ερευνών της Γενικής Διεύθυνσης Εσωτερικών Υποθέσεων της Μόσχας εξέδωσε απόφαση ως προς: (α) το άνοιγμα ποινικής υπόθεσης δυνάμει του Ποινικού Κώδικα της Ρωσικής Ομοσπονδίας, (β) την ανάληψη της ποινικής υπόθεσης προς διερεύνηση και την έναρξη της διερεύνησης, και

6



RUS000018

(γ) την αποστολή αντιγράφου της αναφερόμενης απόφασης στον Εισαγγελέα της Μόσχας.

25. Οι Ενάγουσες αναφέρουν επίσης πως κατά ή περί τις 31/5/2011 στο Γραφείο Άμεσης Εγκληματικής Έρευνας Αρ. 4 του Τμήματος Οικονομικής Ασφάλειας ως αποτέλεσμα της εξέτασης του αιτήματος των Εναγουσών ανοίχτηκε ποινική υπόθεση υπ' αριθμό 664757. Επιπρόσθετα, κατά ή περί τις 7/7/2011 ο Εναγόμενος 1 συνελήφθη με την κατηγορία διάπραξης εγκλήματος σύμφωνα τον Ποινικό Κώδικα της Ρωσικής Ομοσπονδίας.

26. Κατά ή περί τις 8/7/2011 το Τβερσκόι Επαρχιακό Δικαστήριο της Μόσχας εξέδωσε απόφαση δια της οποίας απόρριψε το αίτημα του ως άνω Ανακριτή για κράτηση του Εναγόμενου 1 ο οποίος αφέθηκε άμεσα ελεύθερος. Οι Ενάγουσες αναφέρουν ότι μετά την πιο πάνω απόφαση ημερομηνίας 8/7/2011, ο Εναγόμενος 1 κατά ή περί τις 11/7/2011 διέφυγε στο Μινσκ της Δημοκρατίας της Λευκορωσίας (Μπελαρούς) και από εκεί αναχώρησε την ίδια μέρα. Κατόπιν της ανωτέρω εξέλιξης και/ή αφού δεν ήταν δυνατό να εντοπιστεί ο Εναγόμενος 1 από τα ανακριτικά όργανα, έγινε σχετικό αίτημα από τις αρχές της INTERPOL στη Μόσχα κατά ή περί τις 12/8/2011 και ο Εναγόμενος 1 εισήλθε στη ομοσπονδιακή λίστα καταζητούμενων (federal wanted list) στη υπόθεση υπ' αρ. 10758.

27. Αργότερα κατά ή περί 22/8/2011 ο Εναγόμενος 1 εισήλθε στη διεθνή λίστα καταζητούμενων (international wanted list) στην κατηγορία «Ευρωπαϊκό οικονομικό έγκλημα». Οι Ενάγουσες ισχυρίζονται ότι κατά ή περί τις 30/8/2011, αφού προσκομίστηκαν επαρκή στοιχεία που αποδεικνύουν τη διάπραξη εγκλήματος και το συσχετισμό του Εναγόμενου 1 με τα υπό διερεύνηση αδικήματα και λαμβανομένης υπόψη της διαφυγής του Εναγόμενου 1 στο Μινσκ στις 11/7/2011, ο οποίος δε γνωστοποίησε στον ανακρίτική την πραγματική διεύθυνση διαμονής του, το Τβερσκόι Επαρχιακό Δικαστήριο της Μόσχας εξέδωσε ένταλμα σύλληψης εναντίον του Εναγόμενού 1.

28. Είναι ισχυρισμός των Εναγουσών εταιρειών ότι ο Εναγόμενος 1 επί σκοπώ αποφεύγει την εμφάνιση του ενώπιον των διωκτικών αρχών της Ρωσικής Ομοσπονδίας σχετικά με τις σε βάρος του καταγγελίες εκ μέρους των Εναγουσών.

29. Κατ' ακολουθίαν των ανωτέρω οι Ενάγουσες εταιρείες ισχυρίζονται πως ο Εναγόμενος 1, εκμεταλλευόμενος την θέση του και/ή καταχρώμενος την εμπιστοσύνη των Εναγουσών εταιρειών καθώς και της UCR προς το πρόσωπο του, έχει με διάφορους τρόπους και/ή παράνομα αποκτήσει σημαντικό οικονομικό κέρδος σε βάρος των Εναγουσών εταιρειών και συνεπακόλουθα και της UCR. Οι Ενάγουσες επίσης ισχυρίζονται ότι ο Εναγόμενος 1 συνωμότησε με τους Εναγόμενους 2, 3, 4, και 5 έχοντας την πλήρη εξουσία και/ή έλεγχο όλων των ναυλώσεων που αφορούσαν τις Ενάγουσες και/ή τον Όμιλο UCR, έτσι ώστε ο Εναγόμενος 3 ο οποίος είχε τον έλεγχο των Εναγόμενων 2, 4 και 5 να καταστεί μόνος και αποκλειστικός μεσίτης για τις Ενάγουσες εταιρείες.

7



RUS000019

30. Είναι ισχυρισμός των Εναγουσών ότι με αυτό τον τρόπο οι μεν Εναγόμενοι 2, 3, 4 και 5 απολάμβαναν αποκλειστικά μόνοι τους καλή εξ ολοκλήρου τα υψηλά καλή πέραν των μεσαίων αγοραίων τιμών οικονομικά οφέλη από τις ναυλώσεις, ο δε Εναγόμενος 1 απέκτησε οικονομικό όφελος, ως τα ανωτέρω εμβάσματα στον προσωπικό λογαριασμό του από την Εναγομένη 2, που ανήκε στις Ενάγουσες καλή το οποίο είχαν εμπιστευθεί στον Εναγόμενο 1 ο οποίος διαχειριζόταν τα χρήματα τους καθ' όλους τους ουσιώδης χρόνους.

31. Οι Ενάγουσες εταιρείες επαναλαμβάνουν τους ανωτέρω ισχυρισμούς τους και αναφέρουν ότι συνεπεία των παράνομων καλή δόλιων ενεργειών καλή τις από μέρους του Εναγομένου 1 κατάχρησης της θέσεως καλή τους αξιώματος καλή της εμπιστοσύνης που σε αυτόν επέδειξαν οι Ενάγουσες καλή ο Όμιλος UCR, σε συνεννόηση καλή συνεργασία με τους Εναγομένους 2 – 5 προκάλεσαν ζημιές ύψους USD 2.696.660,00 ως ανωτέρω στην παράγραφο 22 αναφέρεται.

32. Οι Ενάγουσες κατ' επανάληψη των ανωτέρω ισχυρίζονται ότι οι πιο πάνω παράνομες ενέργειες των Εναγομένων 1 έως 5 προξένησαν ζημιές ύψους USD 669.022,00 ως τα ποσά που είχαν δαπανηθεί από τις Ενάγουσες ως έξοδα ναυλώσεων δεν εισπράχθηκαν για τον επιθυμητό σκοπό αλλά παράνομα κατέληξαν στον Εναγόμενο 1, ο οποίος καταχράστηκε το αξίωμα καλή τη θέση του καλή την εμπιστοσύνη που οι Ενάγουσες του είχαν επιδείξει.

33. Για τους πιο πάνω λόγους οι Ενάγουσες εταιρείες ήγειραν την παρούσα αγωγή και αξιώνουν εναντίον των Εναγομένων:

(Α)  Αναγνωριστική απόφαση διά της οποίας να δηλώνεται καλή αναγνωρίζεται πως τα ποσά των χρημάτων που ευρίσκονται κατατεθημένα σε τραπεζικούς λογαριασμός στην Τράπεζα των Εναγομένων Αρ. 6 επ' ονόματι καλή προς όφελος του Εναγομένου 1 αποτελούν περιουσιακό στοιχείο των Εναγόντων καλή κατέχονται από τους Εναγομένους Αρ. 6 ως επίτροποι καλή εξ επαγωγής καταπιστευματοδόχοι (TRUSTEES AND/OR CONSTRUCTIVE TRUSTEES) των Εναγόντων καλή είναι προϊόν δόλου καλή απάτης καλή συνωμοσίας καλή καταδολίευσης των Εναγόντων από τους Εναγομένους 1-5 καλή ποσά που ευθύνεται ο Εναγόμενος 1 να πληρώσει καλή επιστρέψει στους Ενάγοντες με βάση τις αρχές του εντοπισμού καλή ιχνηλάτησης (TRACING PRINCIPLES) καλή τις αρχές της επιείκειας καλή άλλως πως.

(Β)  Αναγνωριστική απόφαση δια της οποίας να δηλώνεται πως οι Εναγόμενοι 1 έως και 5 συνωμότησαν σε βάρος των Εναγόντων καλή ενήργησαν με δόλο καλή απάτη καλή με σκοπό των καταδολίευση των Εναγόντων.

8



RUS000020

(Γ)    Απόφαση του Δικαστηρίου δια της οι Εναγόμενοι 1-5 να διατάσσονται να επιστρέψουν και/ή καταβάλουν στους Ενάγοντες όλα τα ποσά ως ανωτέρω αναφέρεται και/ή δυνάμει των αρχών του αδικαιολόγητου πλουτισμού.

(Δ)    Αποζημιώσεις ύψους USD 669.022,00 και/ή το αντίστοιχο σε Ευρώ ως την παράγραφο 32 αναφέρεται.

(Ε)    Αποζημιώσεις ύψους USD 2.696.660,00 και/ή το αντίστοιχο σε Ευρώ ως την παράγραφο 31. αναφέρεται

(ΣΤ)    Παραδειγματικές και/ή τιμωρητικές αποζημιώσεις.

(Η)    Νόμιμους τόκους.

(Ζ)    Έξοδα πλέον έξοδα επίδοσης και ΦΠΑ (ΑΡ. ΦΠΑ: 10271567N).

(Υπ.) ...........................................

**ΜΙΧΑΛΗΣ ΒΟΡΚΑΣ &**
**ΣΥΝΕΡΓΑΤΕΣ Δ.Ε.Π.Ε.**
Δικηγόροι Εναγόντων

Η παρούσα Έκθεση Απαίτησης συντάχθηκε
από τους ΜΙΧΑΛΗΣ ΒΟΡΚΑΣ & ΣΥΝΕΡΓΑΤΕΣ Δ.Ε.Π.Ε.
Δικηγόρους Εναγόντων
καταχωρήθηκε την ....9.... / ....11... / 2011
και αντίγραφο αυτής εδόθη αυθημερόν στους
κ.κ. ΠΑΤΡΙΚΙΟΣ ΠΑΥΛΟΥ & ΣΥΝΕΡΓΑΤΕΣ Δ.Ε.Π.Ε.
Δικηγόρους Εναγομένου 1, και
κκ ΧΡ. ΔΗΜΗΤΡΙΑΔΗΣ & ΣΙΑ,
Δικηγόροι Εναγομένων 2-5, Λευκωσία.

ΠΡΩΤΟΚΟΛΛΗΤΗΣ

9

RUS000021

# EXHIBIT 2

Κλίμακα: €500.000-2.000.000

ΣΤΟ ΕΠΑΡΧΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΛΕΥΚΩΣΙΑΣ

**Αρ. Αγ. 3582/2011**

Μεταξύ:

1. RUAL TRADE LTD
2. ALUMINA & BAUXITE COMPANY LTD
3. CALIBRE PROPERTIES WORLDWIDE LTD
4. MONT CERVIN-CONSULTADORIA E SERVICOS SOCIEDADE UNIPESSOAL ,LDA

Εναγόντων

**και**

1. Andrei (Andrey) Raykov
2. ALDI MARINE LTD
3. Dimitry Osipov
4. Natica Shipping Ltd
5. Natica Shipping & Trading Ltd
6. Ελληνική Τράπεζα Δημόσια Εταιρεία Λτδ

Εναγομένων

---

ΕΝΟΡΚΗ ΔΗΛΩΣΗ

---

Εγώ, ο υπογεγραμμένος  Αβετής Τσουιλτζιάν  από την Λευκωσία , Α.Τ. 662981 είμαι στην υπηρεσία της Ελληνικής Τράπεζας Δημόσιας Εταιρείας Λτδ, Λεωφόρος Αθαλάσσας 173 , Κέντρο Διεθνών Επιχειρήσεων, Λευκωσία, διατελώ προϊστάμενος της Υπηρεσίας Corporate Services, είμαι δεόντως εξουσιοδοτημένος να προβώ στην παρούσα ένορκη δήλωση, και ορκίζομαι και λέγω ως ακολούθως-

1. Ο Εναγόμενος 1 διατηρεί στο όνομα του τους ακόλουθους τραπεζικούς λογαριασμούς με την Ελληνική Τράπεζα-

i) Αρ. ▇▇▇▇▇▇94-01,
ii) Αρ. ▇▇▇▇▇▇94-01,
iii) Αρ. ▇▇▇▇▇▇94-09,
iv) Αρ ▇▇▇▇▇▇94-10,
v) Αρ ▇▇▇▇▇▇94-11.



2. Όσον αφορά το λογαριασμό αρ. ▇▇▇▇▇▇94-07 που αναφέρεται στο διάταγμα ημερομηνίας 23/5/2011, αυτός αποτελεί λογαριασμό εμπρόθεσμης κατάθεσης ο οποίος άνοιξε την 22/04/2005 για το ποσό των 200,000 δολαρίων Αμερικής (διακόσιες χιλιάδες)  και έκλεισε την 22/3/2007. Στις

RUS000022

22/3/2007 το υπόλοιπο του λογαριασμού μεταφέρθηκε στο λογαριασμό με αριθμό ████████ 94-01.

3. Επιπρόσθετα, ανοίχθηκαν και έκλεισαν οι ακόλουθοι λογαριασμοί εμπρόθεσμης κατάθεσης:

Α. Λογαριασμός αρ ████████ 94-02 που άνοιξε στις 2/6/2000 για το ποσό των 5000 δολαρίων Αμερικής και έκλεισε στις 29/9/2009. Το υπόλοιπο του λογαριασμού μεταφέρθηκε στο λογαριασμό με αριθμό ████████ 94-01.

Β. Λογαριασμός αρ ████████ 4-03 που άνοιξε στις 23/10/2000 για το ποσό των 50.000 δολαρίων Αμερικής και έκλεισε στις 23/4/2001. Το υπόλοιπο του λογαριασμού μεταφέρθηκε στο λογαριασμό με αριθμό ████ ████ 94-01.

Γ. Λογαριασμός αρ ████████ 94-04 που άνοιξε στις 20/4/2001 για το ποσό των 150.000 δολαρίων Αμερικής και έκλεισε στις 15/5/2002. Το υπόλοιπο του λογαριασμού μεταφέρθηκε στο λογαριασμό με αριθμό ████████ 94-01.

Δ. Λογαριασμός αρ ████████ 94-05 που άνοιξε στις 23/4/2001 για το ποσό των 51.325,60 δολαρίων Αμερικής και έκλεισε στις 31/12/2009. Το υπόλοιπο του λογαριασμού μεταφέρθηκε στο λογαριασμό με αριθμό ████████ 94-01.

Ε. Λογαριασμός αρ ████████ 94-06 που άνοιξε στις 23/4/2002 για το ποσό των 50.000 δολαρίων Αμερικής και έκλεισε στις 15/5/2002. Το υπόλοιπο του λογαριασμού μεταφέρθηκε στο λογαριασμό με αριθμό ████████ 94-01.

Ζ. Λογαριασμός αρ ████████ 94-08 που άνοιξε στις 22/10/2008 για το ποσό των 500.000 δολαρίων Αμερικής και έκλεισε στις 31/12/2009. Το υπόλοιπο του λογαριασμού μεταφέρθηκε στο λογαριασμό με αριθμό ████████ 94-01.

4. Με βάση τα στοιχεία που παρουσιάζουν τα ηλεκτρονικά συστήματα της τράπεζας, ο Εναγόμενος 1 δεν φαίνεται να είναι πραγματικός δικαιούχος (BENEFICIAL OWNER) σε λογαριασμούς που τηρούνται σε όνομα/ονόματα τρίτων προσώπων. Εν τούτοις σημειώνεται ότι τα ηλεκτρονικά συστήματα της Τράπεζας δεν επιτρέπουν της εξακρίβωση του πιο πάνω στοιχείου με ακρίβεια.

5. Επισυνάπτεται δέσμη εγγράφων ως Τεκμήριο Α, αριθμημένες ως Επισυναπτόμενα 1 μέχρι 10 (59 σελίδες). Είναι, μεταξύ άλλων, καταστάσεις για τους πιο πάνω λογαριασμούς του Εναγομένου 1 υπό το 1 (i) μέχρι το (v) από την ημέρα ανοίγματος των λογαριασμών μέχρι σήμερα, όπου φαίνονται όλες οι μεταφορές και / ή εμβάσματα και / ή πληρωμές και / ή χρεώσεις και / ή πιστώσεις και / ή καταθέσεις και / ή εισπράξεις που έγιναν.

Α. Καταστάσεις λογ. Αρ. ████████ 94-01 (Επισυναπτόμενο 1, σελίδα αρ. 1)
Β. Καταστάσεις λογ. Αρ. ████████ 94-01 (Επισυναπτόμενο 2, σελίδες αρ. 2-11)
Γ. Καταστάσεις λογ. Αρ. ████████ 94-09 (Επισυναπτόμενο 3, σελίδα αρ. 12)

RUS000023

Δ.Καταστάσεις λογ. Αρ. Αρ. ████████ 94-10 (Επισυναπτόμενο 4, σελίδα αρ. 13)

Ε.Καταστάσεις λογ. Αρ. Αρ. ████████ 94-11 (Επισυναπτόμενο 5, σελίδα αρ. 14)

6. Επισυνάπτονται επίσης –

(i) Αίτηση Ανοίγματος Λογαριασμού του Εναγομένου 1 με αριθμό ████████ ████ 94-01 ημερομηνίας 25/5/2010 (Επισυναπτόμενο 6, σελίδα αρ. 15)

(ii) Έντυπο Πληροφοριών Πελάτη ημερομηνίας 25/5/2010 (Επισυναπτόμενο 7, σελίδες αρ. 16 – 17)

(iii) Αντίγραφο διαβατηρίου του Εναγομένου 1 (Επισυναπτόμενο 8, σελίδα αρ. 18)

(iv) Αίτηση Ανοίγματος Λογαριασμού του Εναγομένου 1 με αριθμό ████████ ████ 94-01 ημερομηνίας 22/12/1999 (Επισυναπτόμενο 10, σελίδες αρ. 58-59)

7. Με βάση τα πιο πάνω επισυναπτόμενα, ο διαχειριστής και τελικός δικαιούχος των λογαριασμών που αναφέρονται στο υπό το 1) Α) (i) μέχρι (v) ανωτέρω είναι ο RAYKOV ANDREY κάτοχος διαβατηρίου της Ρωσικής Ομοσπονδίας με αριθμό 51No3629683 και με διεύθυνση μόνιμης διαμονής-Koltsevaya 10-20, Khimki, Russia.

8. Τέλος επισυνάπτονται αντίγραφα εισερχομένων και εξερχομένων εμβασμάτων ως επίσης και εσωτερικών μεταφορών οι οποίες έχουν εκτελεστεί με βάση οδηγίες του Εναγομένου 1 – (Επισυναπτόμενο 9, σελίδες αρ. 19 – 57)

Ο ΕΝΟΡΚΩΣ ΔΗΛΩΝ

.......................................

Αβετής Τσουλτζιάν

Ορκίσθηκε και υπέγραψε ενώπιον μου στο
Επαρχιακό Δικαστήριο Λευκωσίας
σήμερα την ...../...../...../2011

ΠΡΩΤΟΚΟΛΛΗΤΗΣ

ΑΝΔΡΕΑΣ ΤΖΩΡΤΖΗΣ

```
PROFINQ   CHOULDJA              STATEMENT INQUIRY            27/05/2011  15:55
                                                                    Page 001
*  Acct          94 01  RAIKOV ANDREI                                 Ccy EUR
   From 01/05/2001  To 27/05/2011        Opening Balance                0,00

   Transaction  Date  Value  Time  Typ    Description     Transaction Amount
   BA-52028031 290610 290610 18:10 303 MAINTENANCE FEES              25,00-
   BA-52041732 300610 010710 23:59 308 CAPITALISED INTEREST           0,01-
   BA-52615072 290910 290910 18:10 303 MAINTENANCE FEES              25,00-
   BA-53294170 291210 291210 18:11 303 MAINTENANCE FEES              25,00-
   BA-53318151 311210 010111 23:59 308 CAPITALISED INTEREST           1,73-
   BA-53960840 300311 300311 18:11 303 MAINTENANCE FEES              25,00-
```

```
More Data N                        Closing Balance              -101,74
WARNING : NO MORE DATA      [F1]:RETURN TO PROFINQ    [F8]:GOTO PAGE 1
```

RUS000025

```
LISTINQ  CHOULDJA                STATEMENT INQUIRY           27/05/2011  17:20
                                                                   Page 001
*  Acct         94 01  RAIKOV ANDREI                                Ccy USD
   From 01/01/1955  To 27/05/2011        Opening Balance               0,00

   Transaction  Date  Value  Time  Typ   Description       Transaction Amount
   TR-52224925 200100 200100 13:43 105 TRF/TRANSFER             47.543,45
   BA-00788559 160300 160300 09:35 103 TTI011/04326/00          10.468,00
   TR-02471690 070400 070400 13:38 105 TRF/TRANSFER             50.000,00
   TR-22515342 210400 200400 12:55 105 TRF/TRANSFER              5.165,36
   BA-00934329 300500 300500 11:36 103         0501 CLOSED         131,91
   FD-00126848 020600 020600 11:50 303 FDEP 00126848            5.000,00-
   FD-00126848 020600 020600 13:44 103 F.DEP.REV 00126848       5.000,00
   FD-00126877 020600 020600 13:46 303 FDEP 00126877           5.000,00-
   BA-01016392 030700 300600 15:14 303 Annual Fe 30.00             49,80-
   TR-22823782 210700 140700 14:08 105 TRF/TRANSFER              5.000,00
   TR-02825140 240700 140700 09:34 305 REV/21.7.00              5.000,00-
   TR-02825170 240700 140700 09:34 105 TRF/TRANSFER              2.500,00
   BA-01120803 170800 170800 09:27 103 TTI011/19072/00           3.993,00
   BA-01160632 040900 010900 18:40 303 HOTEL ODI 4396.00           533,22-
   TR-22986432 050900 050900 14:15 105 TRF/TRANSFER             92.000,00
More Data Y                              Closing Balance         10.277,65
```

RUS000026

HP Emulation print screen                                                                    Page 1

```
LISTINQ  CHOULDJA                    STATEMENT INQUIRY          27/05/2011  17:21
                                                                         Page 004
*  Acct           94 01  RAIKOV ANDREI                                    Ccy USD
   From 01/01/1955  To 27/05/2011        Opening Balance                      0,00

   Transaction  Date   Value  Time   Typ     Description       Transaction Amount
   BA-02578019  030402 030402 10:41  103  TTI011/095518/0              26.877,00
   BA-02581643  040402 040402 10:39  103  TTI011/095721/0              27.109,00
   BA-02585232  050402 050402 10:29  103  TTI011/095933/0              25.330,93
   FD-00220368  230402 230402 09:40  303  FDEP 00220368                50.900,00-
   TR-74929037  230402 190402 12:30  306  TTO/140/74929037            200.166,00-
   BA-02690502  150502 150502 13:45  103           9406 CLOSED          50.041,16
   BA-02690495  150502 150502 13:52  103           9404 CLOSED         153.763,48
   TR-94996659  150502 130502 14:14  306  TTO/140/94996659            200.166,00-
   BA-02726119  290502 270502 13:34  305  TRF/FAX SENT                     5,00-
   BA-02726119  290502 270502 13:34  305  TRF/FAX SENT                    10,00-
   BA-02764190  110602 070602 09:12  305  TRF/PRAKAPOR COURIER            30,00-
   BA-02820347  010702 280602 15:30  303  Annual Fe 25.00                 42,72-
   BA-02820349  010702 280602 15:42  303  Annual Fe 25.00                 42,72-
   BA-02820351  010702 280602 15:50  303  Annual Fe 25.00                 42,72-
   BA-02821548  020702 280602 08:04  103  Annual Fe 25.00                 42,72
More Data Y                                     Closing Balance          10.277,65
```



RUS000027

```
LISTINQ  CHOULDJA                    STATEMENT INQUIRY            27/05/2011   17:21
                                                                           Page 005
*  Acct          94 01  RAIKOV ANDREI                                       Ccy USD
   From 01/01/1955  To 27/05/2011          Opening Balance                     0,00

   Transaction  Date  Value  Time  Typ    Description      Transaction Amount
   BA-02821554 020702 280602 08:06 103 Annual Fe 25.00                     42,72
   BA-03327595 191202 191202 11:53 303 MAINTENANCE FEES                    50,00-
   BA-03364502 311202 010103 20:39 308 CAPITALISED INTEREST               48,21-
   BA-03364502 311202 010103 20:39 108 CAPITALISED INTEREST               29,43
   BA-03581340 200303 180303 14:17 305 TRF/HOLD MAIL CHGS                  60,00-
   BA-03702042 050503 050503 10:50 103 TTI011/162627/0                199.993,00
   BA-03743081 200503 200503 10:45 305 TRF/VISA RENEWAL FEE               30,00-
   BA-41000949 300603 300603 11:24 303 MAINTENANCE FEES                   25,00-
   BA-41002066 300603 270603 15:49 303 Annual Fe 25.00                    49,09-
   BA-41265028 031003 021003 16:18 303 HARRODS C 879.00                1.509,93-
   BA-41306995 171003 161003 15:46 303 HARRODS C 649.00                1.118,01-
   BA-41316391 211003 201003 15:44 303 BURBERRY  217.02                  374,17-
   BA-41396644 181103 171103 17:45 303 AUSSIE FU 225.00                  168,56-
   BA-41402399 201103 191103 17:44 303 DOWNTOWN  499.00                  371,77-
   BA-41402399 201103 191103 17:44 303 PURELY ME 435.00                  324,09-
   More Data Y                             Closing Balance            10.277,65
```



RUS000028

```
LISTINQ  CHOULDJA                    STATEMENT INQUIRY           27/05/2011  17:21
                                                                         Page 006
*  Acct              94 01  RAIKOV ANDREI                                 Ccy USD
   From 01/01/1955  To 27/05/2011          Opening Balance                 0,00

   Transaction  Date  Value  Time  Typ     Description      Transaction Amount
   BA-41513498 291203 291203 09:31 303 MAINTENANCE FEES                  25,00-
   BA-41519710 301203 291203 17:43 303 DUTY FREE 201.10                 259,24-
   BA-41556662 130104 120104 17:44 303 RIEDEL TI 802.20               1.066,58-
   BA-41784952 020404 020404 17:50 303 ALPENSPOR 1145.20              1.449,73-
   BA-41947270 240504 240504 13:26 305 S/O/COST OF COURIER               30,00-
   BA-42058031 280604 280604 17:49 303 Annual Fee                        52,41-
   BA-42058955 290604 290604 07:38 303 MAINTENANCE FEES                  25,00-
   BA-42580945 071204 071204 13:51 305 S/O/LEDGER FEES                   70,00-
   BA-42670417 040105 040105 10:30 303 MAINTENANCE FEES                  25,00-
   FD-00362555 220405 220405 10:22 303 FDEP 00362555                200.000,00-
   BA-43263729 280605 280605 13:12 303 MAINTENANCE FEES                  25,00-
   BA-43264455 280605 280605 17:35 303 Annual F CYP 25.00                53,13-
   BA-43861734 131205 131205 10:23 305 S/O/LEDGER FEES 2005              70,00-
   BA-43959800 090106 090106 13:20 303 MAINTENANCE FEES                  25,00-
   BA-44616566 290606 290606 07:34 303 MAINTENANCE FEES                  25,00-
More Data Y                                 Closing Balance           10.277,65
```

RUS000029

```
LISTINQ  CHOULDJA              STATEMENT INQUIRY        27/05/2011  17:21
                                                          Page 007
*  Acct         54 01  RAIKOV ANDREI                       Ccy USD
   From 01/01/1955  To 27/05/2011        Opening Balance        0,00

   Transaction  Date  Value  Time  Typ    Description    Transaction Amount
   BA-44619524 290606 290606 17:32 303 Annual Fee                  60,00-
   BA-44862992 280806 280806 09:47 305 S/O/COST OF COURIER         40,00-
   BA-45273960 071206 071206 15:21 305 S/O/LEDGER FEES             70,00-
   BA-45397885 080107 080107 14:25 303 MAINTENANCE FEES            25,00-
   BA-45695390 220307 220307 14:26 119 1400850959407 CLOSED    214.489,82
   TR-01575430 220307 200307 16:37 306 TTO/140/01575430         200.224,00-
   TR-01726210 270407 270407 12:56 106 TRF/TRANSFER             220.456,00
   BA-46140136 290607 290607 17:38 303 Annual Fee                  60,00-
   BA-46166934 050707 050707 08:55 303 MAINTENANCE FEES            30,00-
   TR-22119352 250707 250707 14:19 106 TRF/BONUS FOR 2ND        250.366,00
   TR-00118809 220807 200807 10:09 306 TTO/140/00118809         400.224,00-
   TR-00361462 081007 081007 15:37 106 TRF/BONUS III QUART      198.200,00
   BA-46931141 181207 181207 13:27 305 S/O/LEDGER FEES H.M          70,00-
   BA-46982342 311207 010108 23:59 308 CAPITALISED INTEREST       119,06-
   BA-47014235 080108 080108 11:58 303 MAINTENANCE FEES            25,00-
More Data Y                               Closing Balance       10.277,65
```

RUS000030

```
LISTINQ  CHOULDJA              STATEMENT INQUIRY        27/05/2011  17:21
                                                               Page 008
* Acct          94 01  RAIKOV ANDREI                           Ccy USD
  From 01/01/1955  To 27/05/2011        Opening Balance           0,00

     Transaction  Date  Value  Time  Typ    Description  Transaction Amount
     BA-47044276 150108 150108 10:06 304 STATEMENT REQUES.FEE        3,12-
     BA-47048106 160108 160108 08:39 304 STATEMENT REQUES.FEE        3,12-
     BA-47382663 280308 280308 09:36 305 S/O/DHL CHARGES            40,00-
     BA-47480516 160408 160408 13:40 303 MAINTENANCE FEES           20,00-
     BA-47838791 300608 300608 17:34 303 Annual Fee                 60,00-
     BA-47844668 010708 010708 14:45 303 MAINTENANCE FEES           20,00-
     BA-48032397 080808 080808 12:12 103 TTI009C362227/08        100.681,00
     BA-48111281 270808 270808 11:47 103 TTI009C375098/08        107.595,00
     BA-48285596 021008 021008 13:26 303 MAINTENANCE FEES           20,00-
     BA-48329546 091008 091008 10:34 103 TTI009C406154/08        120.370,00
     FD-00681310 221008 221008 09:25 303 FDEP 00681310          500.000,00-
     BA-48437360 311008 311008 18:13 307 URGENT STMT ISSUED          6,41-
     BA-48725481 231208 231208 13:25 305 CHG/HOLD MAIL 2008        200,00-
     BA-48777497 020109 020109 14:08 303 MAINTENANCE FEES           20,00-
     BA-49262009 310309 310309 14:21 303 MAINTENANCE FEES           30,00-
More Data Y                           Closing Balance            10.277,65
```

RUS000031

```
LISTINQ  CHOULDJA                    STATEMENT INQUIRY              27/05/2011  17:21
                                                                        Page 009
* Acct [████████] 94 01  RAIKOV ANDREI                                  Ccy USD
  From 01/01/1955  To 27/05/2011          Opening Balance                  0,00

  Transaction  Date   Value   Time  Typ    Description          Transaction Amount
  BA-49235298 060409 060409 10:10 103 TTI009C530451/09              129.935,00
  BA-49775702 290609 290609 00:00 303 MAINTENANCE FEES                  30,00-
  BA-50278956 180909 180909 10:57 103 TTI009C646044/09              111.419,00
  BA-50331638 290909 290909 04:27 303 MAINTENANCE FEES                  30,00-
  BA-50335330 290909 290909 11:02 119 1400850959402 CLOSED           6.195,33
  BA-50913332 311209 311209 04:49 303 MAINTENANCE FEES                  30,00-
  BA-50919081 311209 311209 08:50 119 [████]9408 CLOSED            501.845,37
  BA-50919086 311209 311209 08:50 119 [████]9405 CLOSED             61.487,12
  FD-00801864 311209 311209 10:38 303 FDEP 00801864                501.845,37-
  FD-00801869 311209 311209 10:38 303 FDEP 00801869                 61.487,12-
  BA-50925401 311209 311209 19:24 307 2009 HOLD MAIL FEES             144,06-
  BA-51517545 090410 090410 18:41 303 MAINTENANCE FEES                 33,00-
  BA-51722727 120510 120510 08:42 103 TTI009C830287/10              67.913,36
  BA-51722727 120510 120510 08:42 312 TTI009C830287/10                 40,00-
  BA-51731652 130510 130510 12:30 103 TTI009C832132/10              15.142,35
More Data Y                                  Closing Balance          10.277,65
```

RUS000032

```
LISTINQ  CHOULDJA                 STATEMENT INQUIRY          27/05/2011  17:21
                                                                      Page 010
*  Acct          94 01  RAIKOV ANDREI                                  Ccy USD
   From 07/01/1955  To 27/05/2011       Opening Balance                  0,00

   Transaction  Date  Value  Time  Typ    Description     Transaction Amount
   BA-51731652 130510 130510 12:30 312 TTI009C832132/10            34,02-
   FD-00851422 260510 260510 09:27 303 FDEP 00851422           450.000,00-
   BA-51857156 020610 020610 12:36 304 STATEMENT REQUES.FEE        3,66-
   BA-52028064 290610 290610 18:10 303 MAINTENANCE FEES           31,00-
   BA-52615106 290910 290910 18:10 303 MAINTENANCE FEES           34,00-
   BA-53294206 291210 291210 18:11 303 MAINTENANCE FEES           33,00-
   BA-53317868 311210 311210 18:15 307 2010 HOLD MAIL FEES       200,43-
   BA-53960876 300311 300311 18:11 303 MAINTENANCE FEES           35,00-




   More Data N                        Closing Balance           10.277,65
```

RUS000033

```
LISTINQ  CHOULDJA              FIXED DEPOSIT INQUIRY           02/06/2011  11:30

   Contract:   FD 801864      Date 31/05/2011    'rig Branch 140  Oper PANAYIOE
   Account Number            94 - 09  RAIKOV ANDREI
   Fixed Deposit Subtype FF1M FC FIXED DEPOSIT 1 MONTH

   Value Date 31/05/2011         Maturity Date 30/06/2011

# AMOUNT   USD              502.696,13   Int At Mat                   20,66

* DR Account              94 - 01   FC2D   RAIKOV ANDREI
  DR Date 31/12/2009                 Next Capital. Date
  Collect Int? N  Coll. A/C
  Auto Renewal? Y    Blocked for DR? N     Blocking Reason
  CR Category  652  Your Ref                     Wrong Address?   Alt.Address 0
  Employee CIF                  SF/PB                    New Deposit?

  Authorized by MIRALLAY  MIRALLAIS YIANNAKIS

          A/C Rate      Product      Customer      Base         Excess
  Debit:         %                  +  0,0000
  redit:   0,0500 %  TRFD1M  0,1500  -  0,1000  TRFD1M  0,1500
```

RUS000034

HB Emulation print screen                                                                    Page 1

LISTINQ  CHOULDJA              FIXED DEPOSIT INQUIRY           02/06/2011  11:30 .

   Contract:    FD 801869      Date 31/05/2011    Orig Branch 140  Oper PANAYIOE
   Account Number              94 - 10   RAIKOV ANDREI
   Fixed Deposit Subtype FF1M FC FIXED DEPOSIT 1 MONTH

   Value Date 31/05/2011           Maturity Date 30/06/2011

# AMOUNT   USD                61.591,37   Int At Mat                      2,53

* DR Account              94 - 01   FC2D   RAIKOV ANDREI
  DR Date 31/12/2009                      Next Capital. Date
  Collect Int? N  Coll. A/C
  Auto Renewal? Y    Blocked for DR? N    Blocking Reason
  CR Category  652  Your Ref                        Wrong Address?  Alt.Address 0
  Employee CIF                    SF/PB                  New Deposit?

  Authorized by MIRALLAY  MIRALLAIS YIANNAKIS

          A/C Rate       Product     Customer      Base          Excess
  Debit:          %                  +  0,3000
  Credit:  0,0500 %  TRFD1M  0,1500  -  0,1000  TRFD1M  0,1500

RUS000035

LISTINQ CHOULDJA          FIXED DEPOSIT INQUIRY          27/05/2011  17:03

Contract:    FD 851422     Date 29/04/2011    Orig Branch 140  Oper PANAYIOE
Account Number           94 - 11  RAIKOV ANDREI
Fixed Deposit Subtype FF1M FC FIXED DEPOSIT 1 MONTH

Value Date 29/04/2011          Maturity Date 31/05/2011

\# AMOUNT    USD              450.532,85  Int At Mat                    39,50

\* DR Account              94 - 01    FC2D   RAIKOV ANDREI
DR Date 26/05/2010                    Next Capital. Date
Collect Int? N  Coll. A/C
Auto Renewal? Y     Blocked for DR? N     Blocking Reason
CR Category  652  Your Ref                    Wrong Address?  Alt.Address 0
Employee CIF                    SF/PB                    New Deposit?

Authorized by SOLOMONA  SOLOMONIDES ANDREAS

|  | A/C Rate | Product | Customer | Base | Excess |
|---|---|---|---|---|---|
| Debit: | % |  | + 0,0000 |  |  |
| redit: | 0,1000 % | TRFD1M 0,2000 | - 0,1000 | TRFD1M 0,2000 |  |

RUS000036




 Ελληνική Τράπεζα – Αίτηση Ανοίγματος Λογαριασμού
Hellenic Bank – Application for Account Opening

| Όνομα Πελάτη/ Customer Name | ZAIKOV ANDREI | | |
|---|---|---|---|
| Αρ. Ταυτ./Διαβ./ Εγγραφής/ID/ Pass./Reg. Number | | Ημερομηνία/ Date | 25/05/2010 |
| Αριθμός/οι Λογαριασμού/ ών/ Account Number/s | 94-01 | Κατηγορία Λογαριασμού/ Account Category | current |
| | | Νόμισμα/ Currency | EUR |

| Σκοπός για το οποίο ανοίγεται/ ονται ο/ οι λογαριασμός/οι/ Purpose for which the account (s) is required | transfer funds from Mebeko/Monte-Karlo) |
|---|---|
| Ανάθεση ασφαλούς φύλαξης των πρωτότυπων πιστοποιητικών εμπρόθεσμων καταθέσεων στην Ελληνική Τράπεζα/ Place originals of Fixed Deposit Certificates under Bank's safe custody (Y/N?) | Y |

**Ταχυδρόμηση αλληλογραφίας/ Dispatch of correspondence** (σημειώστε √ σε ένα από τα πιο κάτω κουτάκια/ tick only one of the boxes below)

Η/Οι Κατάσταση/εις του/των λογαριασμού/ών μου/μας να ΜΗΝ εκτυπώνεται/ονται και μαζί με την αλληλογραφία να ΜΗΝ ταχυδρομείται/ούνται/ The statement/s of my/our account/s should NOT be printed and together my correspondence NOT be dispatched. N

Η/Οι Κατάσταση/εις του/των λογαριασμού/ών μου/μας να αποστέλλεται/ονται στο Κατάστημα ................. απ' όπου θα τις παραλαμβάνω προσωπικά/ The statement/s of my/our account/s should be dispatched to Branch .................. where I/we will receive it/them in person ☒

Η/Οι Κατάσταση/εις του/των λογαριασμού/ών μου/μας αποστέλλεται/ονται επείγοντως στο Κατάστημα ................. απ' όπου θα τις παραλαμβάνω προσωπικά/ The statement/s of my/our account/s should be dispatched urgently to Branch .................. where I/we will receive it/them in person ☒

Η/Οι Κατάσταση/εις του/των λογαριασμού/ών μου/μας θα παρακολουθούνται μέσω της Υπηρεσίας Net Banking (να ΜΗΝ εκτυπώνονται)/The statement/s of my/our account/s can be accessed through the Net Banking Service and should not be printed ☒

| Η/Οι Κατάσταση/εις του/των λογαριασμού/ών μου/μας εκτυπώνεται/ονται και να ταχυδρομείται/ούνται/ The statement/s of my/our account/s should be dispatched | Μηνιαία/ Monthly | Τριμηνιαία/ Quarterly | Εξαμηνιαία/ Semi Annually | Ετήσια/ Yearly |
|---|---|---|---|---|

Η/Οι Κατάσταση/εις του/των λογαριασμού/ών μου/μας να ταχυδρομείνούνται στην διεύθυνση/ The statement/s of my/our account/s should be dispatched to the following address

## ΔΗΛΩΣΕΙΣ ΠΕΛΑΤΗ/ CUSTOMER DECLARATIONS

Δια του παρόντος δηλώνω/ουμε ότι έχω/ουμε ενημερωθεί από την Ελληνική Τράπεζα για το περιεχόμενο της Οδηγίας της Κεντρικής Τράπεζας της Κύπρου αναφορικά με τη δημιουργία του Κεντρικού Αρχείου Πληροφοριών για Εκδότες Ακάλυπτων Επιταγών και με τις υποχρεώσεις μου/μας που απορρέουν από αυτή. Δηλώνω/ουμε ότι αναγνωρίζω/ουμε και ότι του παρόντος συμφωνώ/ούμε ότι σε περίπτωση που εκδώσω/ουμε επιταγή η οποία στη συνέχεια επιστραφεί απλήρωτη ως ακάλυπτη, τα προσωπικά μου/μας δεδομένα θα υποβληθούν στην Διαχειριστική Επιτροπή του Κεντρικού Αρχείου Πληροφοριών. Αναλαμβάνω/ουμε να παραδώσω/ουμε στην Ελληνική Τράπεζα όλες τις μη χρησιμοποιημένες επιταγές και βιβλιάρια επιταγών μόλις με ειδοποιήσει η Ελληνική Τράπεζα.

Δια του παρόντος δηλώνω/ουμε ότι δεν έχω/ουμε εκδώσει οποιαδήποτε ακάλυπτη επιταγή τους τελευταίους δώδεκα μήνες (αφορά μόνο τους λογαριασμού με δικαίωμα έκδοσης επιταγών).

Εξουσιοδοτώ την Ελληνική Τράπεζα να χρησιμοποιεί την/τις πιο κάτω υπογραφή/ές μου/μας ως δείγμα υπογραφής για να επιβεβαιώνει την γνησιότητα των οδηγιών που δίδονται από εμένα/εμάς στην Ελληνική Τράπεζα σε σχέση με τον/τους πιο πάνω λογαριασμό/ούς και οποιουσδήποτε λογαριασμούς ανοιχθούν από εμένα/εμας στο μέλλον, εκτός αν δοθούν διαφορετικές οδηγίες από εμένα/εμας.

I/we hereby declare that I/we have been informed by Hellenic Bank of the contents of the Directive of the Central Bank of Cyprus regarding the creation of the Central Information Registry for the Drawers of Dishonoured Cheques and my/our obligations arising therefrom. I/we declare that I/we recognize and hereby agree that in the event that I/we issue a cheque that is subsequently dishonoured, my/our personal details will be submitted to the Administrative Committee of the Central Information Registry. I/we undertake to surrender to Hellenic Bank all and any unused cheques as soon as Hellenic Bank call upon me/us in doing so.

I/We hereby declare that I/we have not issued any dishonoured cheques during the last 12 (twelve) months (applies ONLY to opening of account with ability to issue cheques).

I/We authorize Hellenic Bank to use my/our signature(s) below as specimen signature to verify the authenticity of instructions given by me/us to Hellenic Bank in relation to my/our above account(s) and any account(s) to be opened in the future unless otherwise instructed by me/us.

## ΥΠΟΓΡΑΦΗ ΠΕΛΑΤΗ/ ΔΕΙΓΜΑ ΥΠΟΓΡΑΦΗΣ/ CUSTOMER SIGNATURE/ SPECIMEN SIGNATURE

| Πελάτης/ Κάθετου / Επαγγελματίας/ 1ᵒˢ Κοινός Κάτοχος/ Custodian/ Guardian/ Professional/ 1ˢᵗ Joint Holder | 2ᵒˢ Κοινός Κάτοχος/ Υπογράφων/ 2ⁿᵈ Joint Holder/ Signatory | 3ᵒˢ Κοινός Κάτοχος/ Υπογράφων / 3ʳᵈ Joint Holder/ Signatory | 4ᵒˢ Κοινός Κάτοχος/ Υπογράφων/ 4ᵗʰ Joint Holder/ Signatory |
|---|---|---|---|
| | | | |
| Όνομα/ Name ZAIKOV ANDREI | Όνομα/ Name | Όνομα/ Name | Όνομα/ Name |
| Αρ.Ταυτ./Δια β. ID/Pass | Αρ.Ταυτ./Δια β. ID/Pass | Αρ.Ταυτ./Δι αβ.ID/Pass | Αρ.Ταυτ./Δι αβ.ID/Pass |
| CIF 529594 | CIF | CIF | CIF |

## Δικαιώματα Υπογραφών/ Signature Rights

| Οποιοσδήποτε/ Anyone | Και οι δυο/ Both | Οποιοδήποτε δύο/ Any Two | Οποιοδήποτε τρεις/ Any Three | Όλοι/ All |
|---|---|---|---|---|

## ΓΙΑ ΧΡΗΣΗ ΑΠΟ ΤΗΝ ΤΡΑΠΕΖΑ/ FOR USE BY THE BANK ONLY

### ΕΛΕΥΘΕΡΟ ΚΕΙΜΕΝΟ/ FREE TEXT

| Νέα/ New | Αλλαγή/ Change | | Διαγραφή/ Delete |
|---|---|---|---|
| Ετοιμάστηκε από/ Prepared By Joanna Ioannou MRS | Εγκρίθηκε από/ Approved by | | Ημερομηνία/ Date |
| 4/06/10 | 9/6/10 | 8/6/10 | 4/06/10 |

SIGNATURE CONFIRMED
Moscow Rep. Office
Yiannis Papadopoulos

RUS000037

RUS000038



## Ελληνική Τράπεζα – Έντυπο Πληροφοριών Πελάτη
## Hellenic Bank Customer Information Form

| Φυσικά Πρόσωπα, Κάτοχοι Κοινών Λογαριασμών, Εμπορικές Επωνυμίες Φυσικών Προσώπων/ Natural Persons, Joint Account Holders, Business Names of Individuals | | CIF | 509554 |
|---|---|---|---|

| Όνομα Πελάτη/ Customer Name | RAIKOU ANDREI | Ημερομηνία/ Date | |
|---|---|---|---|

### ΠΡΟΣΩΠΙΚΕΣ ΠΛΗΡΟΦΟΡΙΕΣ ΠΕΛΑΤΗ/ CUSTOMER PERSONAL INFORMATION

| Τίτλος/ Title | Mr. | Όνομα/ First Name | Andrei | Επίθετο/ Surname | Raikou |
|---|---|---|---|---|---|
| Μεσαίο/ Πατρογονικό όνομα Middle Name/ Father's Name/ Maiden Name | | | | Εθνικότητα/ Nationality | Russian |
| Ημερομηνία Γέννησης/ Date of Birth | 21/05/1962 | Τόπος Γέννησης/ Place of Birth | | Χώρα Καταγωγής/ Country of origin | |

### ΠΛΗΡΟΦΟΡΙΕΣ ΤΑΥΤΟΤΗΤΑΣ/ ΔΙΑΒΑΤΗΡΙΟΥ/ ID/ PASSPORT DETAILS

| Αριθμός/ Number | ████ 9685 | Ημερομηνία Λήξης/ Expiry Date | 27/04/2012 | Χώρα έκδοσης/ Country of issue | Russia |
|---|---|---|---|---|---|

### ΠΡΟΣΩΠΙΚΕΣ ΠΛΗΡΟΦΟΡΙΕΣ ΚΗΔΕΜΟΝΑ/ΕΚΛΕΙΠΟΝΤΑ/ΠΕΛΑΤΗ ΕΠΑΓΓΕΛΜΑΤΙΑ/ΚΟΙΝΟΥ ΚΑΤΟΧΟΥ/ PERSONAL INFORMATION OF MINOR'S GUARDIAN/ DECEASED/ CLIENT/ JOINT ACCOUNT HOLDER

| Όνομα/ First Name | | Επίθετο/ Surname | |
|---|---|---|---|
| Μεσαίο/ Πατρογονικό όνομα Middle Name/ Father's Name/ Maiden Name | | Εθνικότητα/ Nationality | |
| Ημερομηνία Γέννησης/ Date of Birth | | Τόπος Γέννησης/ Place of Birth | | Χώρα Καταγωγής/ Country of origin | |

### ΠΛΗΡΟΦΟΡΙΕΣ ΤΑΥΤΟΤΗΤΑΣ/ ΔΙΑΒΑΤΗΡΙΟΥ/ ID/ PASSPORT DETAILS

| Αριθμός/ Number | | Ημερομηνία Λήξης/ Expiry Date | | Χώρα έκδοσης/ Country of issue | |
|---|---|---|---|---|---|

### ΠΛΗΡΟΦΟΡΙΕΣ ΕΜΠΟΡΙΚΗΣ ΕΠΩΝΥΜΙΑΣ/ BUSINESS NAME DATA

| Όνομα/ Name | | Αρ. Εγγραφής/ Registration number | |
|---|---|---|---|
| Ημερ. Εγγραφής/ Registration date | | Χώρα Εγγραφής/ Registration country | |

### ΠΛΗΡΟΦΟΡΙΕΣ ΔΙΕΥΘΥΝΣΕΩΝ/ ΕΠΙΚΟΙΝΩΝΙΑΣ/ ADDRESS/ CONTACT INFORMATION

**Διεύθυνση Μόνιμης Διαμονής/ Permanent Residence Address**

| Οδός/ Street Name | Koltsevaya | Αριθμός/ Number | 10-20 | Δήμος/ Municipality | |
|---|---|---|---|---|---|
| Πόλη/ Town | khimki | Ταχ. Κώδικας/ Post Code | | Χώρα/ Country | Russia |

**Ταχυδρομική Διεύθυνση/ Mailing Address**

| Οδός/Τ.Θ/ Street Name/ P.O.Box | | Αριθμός/ Number | | Δήμος/ Municipality | |
|---|---|---|---|---|---|
| Πόλη/ Town | | Ταχ. Κώδικας/ Post Code | | Χώρα/ Country | |

**Τηλέφωνα/ Telephones**

| Σπίτι/Home | | Γραφείο/ Office | +74985982160 | Κινητό/ Mobile | 19857 | Διεθνές/ International | +7 495 9082160 |
|---|---|---|---|---|---|---|---|
| Φαξ/ Fax | | Email | andreyBr @hq.base.ru | | | | |

### ΑΠΑΣΧΟΛΗΣΗ/ EMPLOYMENT

| Όνομα Εργοδότη/ Employer's Name | United Oil Group. | Ημερομηνία Εργοδότησης/ Employment Start Date | in 2000 year | Τομέας Απασχόλησης/ Employment Sector | oil sector |
|---|---|---|---|---|---|
| Τηλέφωνο Εργασίας/ Work Telephone Number | | Ηλεκ. Ταχ. Εργασίας/ Work Email | andreybr@hq.base.ru | Επάγγελμα/ Profession | general director |

### ΟΙΚΟΝΟΜΙΚΑ ΔΕΔΟΜΕΝΑ/ FINANCIAL DETAILS

| Ετήσιο Εισόδημα (€)/ Annual Income (in €) | ≈ 1 m/n | Αναμενόμενος Ετήσιος Κύκλος Εργασιών (€)/ Expected Annual Turnover (in €) | ≈ 1 m/n |
|---|---|---|---|
| Πηγές Εισερχομένων/ Εμβασμάτων/ Expected Source of Incoming Transfers | transfer of own funds from personal a/c in Monte-Karlo (MONAKO) | | |
| Πηγές Χρηματοοικονομικών Πόρων/ Source of Financial Possessions | United Oil group -general director | | |
| Προορισμοί Εξερχομένων/ Εμβασμάτων/ Expected Destinations of Outgoing Transfers | acumulation of funds ovseas | | |

16

RUS000039